**No.** 26-11887-C

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

IN RE BRANDON CANUP,

*Petitioner*,

On Petition for Writ of Mandamus from the United States District Court
for the Northern District of Florida

No. 3:26-cv-03359-MCR-ZCB

---

## APPENDIX TO PETITION FOR WRIT OF MANDAMUS

### VOLUME I

---

Brandon Canup
4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314
canup.brandon@gmail.com

# INDEX TO APPENDIX

## Description

**Volume I**

Docket/
Tab No.

District Court Docket Sheet ................................................................................A

Case Management Order No. 66, MDL 2885 ........................................................B

Case Management Order No. 67, MDL 2885 ........................................................C

Plaintiff's Original Texas State Court Complaint .................................................. 1-1

Citation Served on Mostyn Law Firm, P.C. .......................................................... 9-1

Texas Secretary of State Records Identifying Mostyn Law Firm, P.C.'s
Registered Agent ............................................................................................... 9-3

Defendant Bryan Aylstock's Motion to Transfer Tag-Along Action to
MDL 2885 Before Judicial Panel on Multidistrict Litigation ("JPML") ...............23

AWKO Defendants' First Motion to Dismiss ........................................................27

Affidavit of Bryan Aylstock ............................................................................... 27-1

JPML Transfer Order ...........................................................................................30

Plaintiff's Motion for Recusal and Disqualification .............................................37

Excerpts from Transcript of 23rd Case Management Conference, MDL 2885 .... 37-4

Original Complaint, *Kelly v. Aylstock et al,* No. 3:25-cv-01649 .......................... 37-5

Judge Rodgers' Recusal Order, *Kelly v. Aylstock et al,* No. 3:25-cv-01649 ........ 37-6

Original Complaint, *Kelly v. Aylstock et al,* No. 3:25-cv-01947 .......................... 37-8

Judge Rodgers' Recusal Order, *Kelly v. Aylstock et al,* No. 3:25-cv-01947 ........ 37-9

AWKO Defendants' Response to Plaintiff's Motion to Amend Complaint ............46

FNJ Defendant' Response in Opposition to Plaintiff's Motion for Recusal ...........51

**Volume II**

AWKO Defendants' Response in Opposition to Plaintiff's Motion for Recusal ....56

Transcript, March 13,2024 Status Conference, *Canup v. 3M Co.* ........................ 56-1

Plaintiff's First Amended Complaint (Operative Complaint) .................................60

Order Denying Canup's Motion for Recusal and Disqualification ........................61

Appearance of Benjamin Stevenson for Mostyn Law Firm, P.C............................62

AWKO Defendants' Second Motion to Dismiss .....................................................66

Mostyn Law Firm P.C.'s Motion to Dismiss...........................................................67

Order Denying Remand ...........................................................................................70

# Tab A

# U.S. District Court
## Northern District of Florida (Pensacola)
## CIVIL DOCKET FOR CASE #: 3:26-cv-03359-MCR-ZCB

CANUP v AYLSTOCK et al                              Date Filed: 04/03/2026
Assigned to: JUDGE M CASEY RODGERS                 Jury Demand: Plaintiff
Referred to: MAGISTRATE JUDGE ZACHARY C BOLITHO    Nature of Suit: 190 Contract: Other
Lead case: 3:19-md-02885-MCR-HTC                   Jurisdiction: Diversity
Member case: (View Member Case)
Case in other court: Texas Northern, 4:25-cv-01255
Cause: 28:1332 Diversity-Notice of Removal

**Plaintiff**

**BRANDON CANUP**                     represented by   **BRANDON CANUP**
                                                       4812 HIDDEN OAKS LANE
                                                       ARLINGTON, TX 76017
                                                       972-762-4314
                                                       Email: canup.brandon@gmail.com
                                                       PRO SE

V.

**Defendant**

**BRYAN F AYLSTOCK**                  represented by   **GREGORY KENT RETTIG**
                                                       LLOYD GRAY WHITEHEAD &
                                                       MONROE - PENSACOLA FL
                                                       125 W ROMANA STREET
                                                       SUITE 330
                                                       PENSACOLA, FL 32502
                                                       850-777-3322
                                                       Fax: 850-777-3290
                                                       Email: grettig@lgwmlaw.com
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **JUSTIN TYLER KEETON**
                                                       LLOYD GRAY WHITEHEAD &
                                                       MONROE - PENSACOLA FL
                                                       125 W ROMANA STREET
                                                       SUITE 330
                                                       PENSACOLA, FL 32502
                                                       850-777-3322
                                                       Fax: 850-434-6491
                                                       Email: jkeeton@lgwmlaw.com

**Defendant**

**BOBBY BRADFORD**                    represented by   **GREGORY KENT RETTIG**
                                                       (See above for address)
                                                       *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**JUSTIN TYLER KEETON**
(See above for address)

**Defendant**

**MICHAEL BURNS**

**Defendant**

**CLIFF ROBERTS**                    represented by    **SKIPPER JONATHAN VINE**
COLE SCOTT & KISSANE PA - WEST
PALM BEACH FL
222 LAKEVIEW AVENUE
SUITE 500
WEST PALM BEACH, FL 33401
561-383-9200
Fax: 561-683-8977
Email: jonathan.vine@csklegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GREGORY BROWN**                    represented by    **SKIPPER JONATHAN VINE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALYSTOCK WITKIN KREIS &**          represented by    **GREGORY KENT RETTIG**
**OVERHOLTZ PLC**                                       (See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JUSTIN TYLER KEETON**
(See above for address)

**Defendant**

**FLEMING NOLEN & JEZ LLP**          represented by    **SKIPPER JONATHAN VINE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MOSTYN LAW FIRM PC**               represented by    **BENJAMIN JAMES STEVENSON**
STEVENSON LEGAL PLLC -
PENSACOLA BEACH FL
919 PANFERIO DRIVE
PENSACOLA BEACH, FL 32561
702-306-6708
Email: bjs@stevenson-legal.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

USCA11 Case: 26-11887     Document: 5-1     Date Filed: 06/05/2026     Page: 7 of 202

| | | |
|---|---|---|
| 11/06/2025 | 1 | NOTICE OF REMOVAL filed by Gregory Donald Brown, Alystock, Witkin, Kreis & Overholtz, PLL. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Exhibit(s) Plaintiff's State Court Petition, # 2 Exhibit(s) State Court Docket Sheet) (Sorrels, Randy) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/06/2025 | 2 | New Case Notes: A filing fee has not been paid. No prior sanctions found. (For court use only - links to the national and circuit indexes.) File to: appropriate staff attorney. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/06/2025 | 3 | Notice and Instruction to Pro Se Party (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/06/2025 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:2, 3. Thu Nov 6 09:37:25 CST 2025 (crt) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/10/2025 | 4 | NOTICE of Filing Executed Return of Service filed by Brandon Canup (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/10/2025) |
| 11/10/2025 | 5 | Appendix in Support filed by Brandon Canup re: 4 Notice of Filing Executed Return of Service (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/10/2025) |
| 11/10/2025 | 6 | CERTIFICATE OF SERVICE by Brandon Canup re 5 Appendix in Support, 4 Notice (Other) *Corrected Certificate of Service* (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/10/2025) |
| 11/21/2025 | 7 | SUMMONS Returned Unexecuted as to Gregory Brown, Cliff Roberts. (Attachments: # 1 Affidavit(s) Attempted Service on Defendant Gregory Brown, # 2 Affidavit(s) Attempted Service on Defendant Cliff Roberts) (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/21/2025) |
| 11/21/2025 | 8 | First MOTION to Remand filed by Brandon Canup with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/21/2025) |
| 11/21/2025 | 9 | Appendix in Support filed by Brandon Canup re 8 First MOTION to Remand (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/21/2025) |
| 12/01/2025 | 10 | MOTION to Dismiss filed by Gregory Brown, Fleming Nolen & Jez LLP Attorney Michael Steven Cedillo added to party Gregory Brown(pty:dft), Attorney Michael Steven Cedillo added to party Fleming Nolen & Jez LLP(pty:dft) (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/01/2025) |
| 12/09/2025 | 11 | NOTICE of Potential Tag-Along Actions filed by Bryan F. Aylstock (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/09/2025) |
| 12/09/2025 | 12 | NOTICE of Errata for Dkt. 2029, 11 Notice of Potential Tag-Along Actions filed by Bryan F. Aylstock (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/09/2025) |

USCA11 Case: 26-11887　　　Document: 5-1　　　Date Filed: 06/05/2026　　　Page: 8 of 202

| | | |
|---|---|---|
| 12/12/2025 | 14 | RESPONSE filed by Gregory Brown, Fleming Nolen & Jez LLP re: 8 First MOTION to Remand (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2) (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/12/2025) |
| 12/12/2025 | 15 | MOTION to Stay *Proceedings* filed by Gregory Brown, Fleming Nolen & Jez LLP (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/12/2025) |
| 12/15/2025 | 16 | RESPONSE filed by Brandon Canup re: 15 MOTION to Stay *Proceedings* (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/15/2025 | 17 | Appendix in Support filed by Brandon Canup re 16 Response/Objection (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/15/2025 | 18 | RESPONSE filed by Brandon Canup re: 10 MOTION to Dismiss (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/15/2025 | 19 | REPLY filed by Brandon Canup re: 8 First MOTION to Remand (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/23/2025 | 20 | Court's Copy of MOTION for Miscellaneous Relief Requesting Permission for Electronic Filing by Pro Se Litigant with JPML filed by Brandon Canup (jnp) Modified on 1/12/2026 (mmw). [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/23/2025) |
| 12/29/2025 | 21 | REPLY filed by Gregory Brown, Fleming Nolen & Jez LLP re: 15 MOTION to Stay *Proceedings* (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/29/2025) |
| 12/29/2025 | 22 | REPLY filed by Gregory Brown, Fleming Nolen & Jez LLP re: 10 MOTION to Dismiss (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/29/2025) |
| 12/29/2025 | 23 | Court's copy of documents filed by Bryan F. Aylstock at the JPML (jnp) (Main Document 23 replaced on 12/29/2025) (jnp). [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/29/2025) |
| 01/05/2026 | 24 | Court's copy of documents filed by Brandon Canup at the JPML (jnp) Modified filed on 1/12/2026 (mmw). [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/05/2026) |
| 01/11/2026 | 25 | CERTIFICATE OF SERVICE by Brandon Canup (Attachments: # 1 Exhibit(s) SOS Certificate of Service for Bryan Aylstock, # 2 Exhibit(s) SOS Certificate of Service for Bobby Bradford, # 3 Exhibit(s) SOS Certificate of Service for Michael Burns, # 4 Exhibit(s) SOS Certificate of Service for Aylstock, Witkin, Kreis & Overholtz, PLC, # 5 Exhibit(s) SOS Certificate of Service for Fleming, Nolen & Jez, LLP, # 6 Declaration(s) Declaration of Brandon Canup) (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/11/2026) |
| 01/12/2026 | 26 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-16110109) filed by Alystock Witkin Kreis & Overholtz PLC, Bryan F. Aylstock, Bobby Bradford Attorney Gregory Kent Rettig added to party Alystock Witkin Kreis & Overholtz PLC(pty:dft), Attorney Gregory Kent Rettig added to party Bryan F. Aylstock(pty:dft), Attorney Gregory Kent Rettig added to party Bobby Bradford(pty:dft) (Rettig, Gregory) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/12/2026) |
| 01/12/2026 | 27 | MOTION to Dismiss filed by Alystock Witkin Kreis & Overholtz PLC, Bryan F. Aylstock, Bobby Bradford (Attachments: # 1 Affidavit(s) Affidavit of Bryan Aylstock, # 2 Exhibit(s) Transcript) (Rettig, Gregory) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/12/2026) |

| 01/16/2026 | 28 | ORDER FOR ADMISSION PRO HAC VICE: The Court has considered the Application for Admission Pro Hac Vice of Gregory K. Rettig (doc. 26 ). The application is GRANTED. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Senior Judge Terry R Means on 1/16/2026) (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/16/2026) |
|---|---|---|
| 01/23/2026 | 29 | ORDER GRANTING 15 MOTION TO STAY AND ADMINISTRATIVELY CLOSING CASE: In an effort to more efficiently manage this Court's docket, this case is hereby ADMINISTRATIVELY CLOSED pending the JPML's decision. If this case is not ultimately transferred to the JPML, either party may move to reopen this case within thirty days of the JPML's final decision on the motion to transfer. (Ordered by Senior Judge Terry R Means on 1/23/2026) (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/23/2026) |
| 04/02/2026 | 30 | Transfer Order: The JPML has issued the attached order in MDL 2885, and that order has now been filed in the Northern District of Florida. (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 04/03/2026) |
| 04/03/2026 | 31 | Case transferred in from District of Texas Northern; Case Number 4:25-cv-01255. Original file certified copy of transfer order and docket sheet received. (Entered: 04/03/2026) |
| 04/03/2026 | 32 | NOTICE REGARDING ATTORNEY ADMISSION. re 31 Case Transferred In - District Transfer. (emailed to Michael S. Cedillo, counsel for Gregory Brown and Fleming Nolen & Jes LLP) (djb) (Entered: 04/03/2026) |
| 04/03/2026 | 33 | ORDER - The docket reflects case was transferred with several motions pending, including a Motion to Dismiss, ECF No. 27 , filed by Defendants Aylstock Witkin Kreis & Overholtz, PLC, Byran Aylstock, and Bobby Bradford, which Plaintiff has not yet responded to. Plaintiff must respond to the 27 Motion to Dismiss within 14 days of the date of this Order. Signed by JUDGE M CASEY RODGERS on 4/3/2026. (Response to motion due by **4/17/2026**.) (djb) (Entered: 04/03/2026) |
| 04/06/2026 | 34 | Plaintiff Brandon Canup's Motion for Leave to File First Amended Complaint and Memorandum in Support, by BRANDON CANUP. (alb) (Entered: 04/07/2026) |
| 04/06/2026 | 35 | (Proposed) FIRST AMENDED COMPLAINT against ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD, GREGORY BROWN, MICHAEL BURNS, FLEMING NOLEN & JEZ LLP, MOSTYN LAW FIRM PC, Cliff Lee Roberts, filed by BRANDON CANUP. (One service copy provided.) (alb) (Entered: 04/07/2026) |
| 04/07/2026 |  | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 35 First Amended Complaint, 34 Plaintiff Brandon Canup's Motion for Leave to File First Amended Complaint and Memorandum in Support. (alb) (Entered: 04/07/2026) |
| 04/07/2026 | 36 | ORDER re 34 Motion to File an Amended Complaint. Defendants must respond to the motion within 14 days of the date of this Order.(Internal deadline for referral to judge if response not filed earlier: **4/21/2026**). Signed by JUDGE M CASEY RODGERS on 04/07/2026. (alb) (Entered: 04/07/2026) |
| 04/14/2026 | 37 | Plaintiff Brandon Canup's Motion for Recusal and Disqualification and Memorandum in Support, by BRANDON CANUP. (alb) (Entered: 04/14/2026) |
| 04/14/2026 | 38 | Plaintiff Brandon Canup's Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation and Memorandum in Support, by BRANDON CANUP. (alb) (Entered: 04/14/2026) |

USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 10 of 202

| 04/14/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 37 Plaintiff Brandon Canup's Motion for Recusal and Disqualification and Memorandum in Support, 38 Plaintiff Brandon Canup's Motion for Suggestion of Remand to the Judicial Panel on Multi-district Litigation and Memorandum in Support. (alb) (Entered: 04/14/2026) |
|---|---|---|
| 04/14/2026 | | Set Deadlines as to 37 MOTION for Recusal and Disqualification, 38 MOTION for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation. (Internal deadline for referral to judge if response not filed earlier: **4/28/2026**). (djb) (Entered: 04/15/2026) |
| 04/16/2026 | 39 | Plaintiff Brandon Canup's MOTION for Permission to File Electronically by BRANDON CANUP. (djb) (Entered: 04/16/2026) |
| 04/16/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 39 MOTION for Permission to File Electronically (djb) (Entered: 04/16/2026) |
| 04/16/2026 | 40 | ORDER OF RECUSAL. MAGISTRATE JUDGE HOPE T CANNON recused. Case reassigned to MAGISTRATE JUDGE ZACHARY C BOLITHO for all further proceedings. Signed by MAGISTRATE JUDGE HOPE T CANNON on 4/16/2026. Motions referred to ZACHARY C BOLITHO. (djb) (Entered: 04/16/2026) |
| 04/16/2026 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 39 MOTION for Permission to File Electronically, See also, 40 Order of Recusal. Referred to ZACHARY C BOLITHO. (djb) (Entered: 04/16/2026) |
| 04/17/2026 | | Motions No Longer Referred to MAGISTRATE JUDGE ZACHARY C BOLITHO : 39 MOTION for Permission to File Electronically (djb) (Entered: 04/17/2026) |
| 04/17/2026 | 41 | ORDER - Plaintiff has filed 37 MOTION for Recusal and Disqualification, 38 MOTION for Suggestion of Remand. The motions do not include Defendants position. Accordingly, to the extent Defendants want to respond, their response is due within 14 days of the date of this Order. Signed by JUDGE M CASEY RODGERS on 4/17/2026. (Response to motions due by **5/1/2026**.) (djb) (Entered: 04/17/2026) |
| 04/17/2026 | 42 | ORDER - Canup's 39 MOTION for Permission to File Electronically is GRANTED. Any questions concerning the procedures for registering and filing documents electronically should be directed to Erica Smith, Erica_L_Smith@flnd.uscourts.gov, in the Northern District of Florida, Pensacola Division. Signed by JUDGE M CASEY RODGERS on 4/17/2026. (djb) (Entered: 04/17/2026) |
| 04/17/2026 | 43 | RESPONSE and MEMORANDUM IN OPPOSITION TO AWKO DEFENDANTS' 27 MOTION TO DISMISS, filed by BRANDON CANUP. (djb) (Entered: 04/17/2026) |
| 04/17/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 43 Response to Motion 27 Motion to Dismiss. (djb) (Entered: 04/17/2026) |
| 04/20/2026 | 44 | MOTION for Substituted Service on Defendants Michael Burns and Cliff Roberts by BRANDON CANUP. (djb) (Entered: 04/21/2026) |
| 04/21/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 44 MOTION for Substituted Service on Defendants Michael Burns and Cliff Roberts (djb) (Entered: 04/21/2026) |
| 04/21/2026 | 45 | NOTICE of Appearance by SKIPPER JONATHAN VINE on behalf of GREGORY BROWN, FLEMING NOLEN & JEZ LLP (VINE, SKIPPER) (Entered: 04/21/2026) |

USCA11 Case: 26-11887  Document: 5-1  Date Filed: 06/05/2026  Page: 11 of 202

| | | |
|---|---|---|
| 04/21/2026 | 46 | RESPONSE in Opposition re 34 MOTION to Amend/Correct filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 04/21/2026) |
| 04/21/2026 | 47 | RESPONSE to Motion re 34 MOTION to Amend/Correct *DEFENDANTS, GREGORY BROWN AND FLEMING NOLEN & JEZ LLP, RESPONSE TO PLAINTIFFS MOTION TO FILE FIRST AMENDED COMPLAINT* filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 04/21/2026) |
| 04/22/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 34 MOTION to Amend Complaint, 35 Amended Complaint, 46 Response in Opposition to Motion, 47 Response to Motion (djb) (Entered: 04/22/2026) |
| 04/28/2026 | 48 | MOTION for Leave to File re 46 Response in Opposition to Motion, 34 MOTION to Amend/Correct, 47 Response to Motion *Motion for Leave to File Reply Memorandum in Support of Motion to Amend Complaint* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 04/28/2026) |
| 04/28/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 48 MOTION for Leave to File Reply Memorandum re 46 Response in Opposition to Motion, 47 Response to Motion, re: 34 MOTION to Amend Complaint. (djb) (Entered: 04/28/2026) |
| 05/01/2026 | 49 | RESPONSE to Motion re 38 MOTION to Remand filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 05/01/2026) |
| 05/01/2026 | 50 | RESPONSE in Opposition re 38 MOTION to Remand filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/01/2026) |
| 05/01/2026 | 51 | RESPONSE in Opposition re 37 MOTION for Recusal MOTION to Disqualify Judge filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/01/2026) |
| 05/01/2026 | 52 | REPLY to Response to Motion re 37 MOTION for Recusal MOTION to Disqualify Judge filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 05/01/2026) |
| 05/04/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 51 Response in Opposition to Motion, 52 Reply to Response to Motion, re: 37 MOTION for Recusal and Disqualification and Memorandum in Support; 49 Response to Motion, 50 Response in Opposition to Motion, 38 MOTION for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation and Memorandum in Support. (djb) (Entered: 05/04/2026) |
| 05/05/2026 | 53 | MOTION for Leave to File re 52 Reply to Response to Motion, 51 Response in Opposition to Motion, 37 MOTION for Recusal MOTION to Disqualify Judge *Motion for Leave to File Reply Memorandum in Support of Motion for Recusal and Disqualification* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 05/05/2026) |
| 05/05/2026 | | Set Deadlines as to 53 MOTION for Leave to File Reply Memorandum in Support of Motion for Recusal and Disqualification. re 52 Reply to Response to Motion, 51 Response in Opposition to Motion. (Internal deadline for referral to judge if response not filed earlier: **5/19/2026**). (djb) (Entered: 05/07/2026) |
| 05/06/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 53 MOTION for Leave to File Reply, re 52 |

| | | Reply to Response to Motion for Recusal and Disqualification. (djb) (Entered: 05/06/2026) |
|---|---|---|
| 05/06/2026 | 54 | ORDER - Canup's 34 Motion for Leave to File First Amended Complaint is GRANTED. Defendants' Motions to Dismiss, ECF Nos. 10 , 27 , are DENIED as moot. Canup must file his amended complaint as a separate docket entry within 7 days of the date of this Order. Once filed as a separate docket entry, Canup's amended complaint will be the operative pleading and Defendants must respond to the amended complaint within **14 days** thereafter. Canups Motion for Leave to File Reply Memorandum in Support of his Motion to Amend Complaint, ECF No. 48 , is DENIED as moot. Signed by JUDGE M CASEY RODGERS on 5/6/2026. (Amended Complaint due by **5/13/2026**.) (djb). (Main Document 54 replaced on 5/6/2026) (djb). Modified on 5/6/2026 to note this order is amended (djb). (Entered: 05/06/2026) |
| 05/07/2026 | 55 | RESPONSE to Motion re 53 MOTION for Leave to File re 52 Reply to Response to Motion, 51 Response in Opposition to Motion, 37 MOTION for Recusal MOTION to Disqualify Judge *Motion for Leave to File Reply Memorandum in Support of Motion for Recusal and Disqualifica FNJ DEFENDANTS RESPONSE TO PLAINTIFFS MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECUSAL AND DISQUALIFICATION filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/07/2026)* |
| 05/08/2026 | 56 | ORDER denying 53 Motion for Leave to File Reply Memorandum in Support of His Motion for Recusal and Disqualification. Signed by JUDGE M CASEY RODGERS on 05/08/2026. (alb) (Entered: 05/08/2026) |
| 05/08/2026 | 57 | MOTION for Leave to File re 50 Response in Opposition to Motion, 38 MOTION to Remand *Motion for Leave to File Reply Memorandum in Support of Motion for Suggestion of Remand* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 05/08/2026) |
| 05/11/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 57 Motion for Leave to File Reply Memorandum in Support of Motion for Suggestion of Remand. (djb) (Entered: 05/11/2026) |
| 05/11/2026 | 58 | ORDER denying 57 Motion for Leave to File Reply Memorandum in Support of Motion for Suggestion of Remand. No extraordinary circumstances have been shown to justify a reply. The undersigned is fully capable of deciding whether the transfer order, prior transcripts, and/or prior orders of this Court have been mischaracterized, without further briefing. Signed by JUDGE M CASEY RODGERS on 5/11/2026. (djb) (Entered: 05/11/2026) |
| 05/12/2026 | 59 | Plaintiff Brandon Canup's Motion to Stay Proceedings and Memorandum of Law in Support, re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 Motion to Stay Pending Remand. (CANUP, BRANDON) Modified on 5/13/2026 to match title of document (alb). (Entered: 05/12/2026) |
| 05/12/2026 | 60 | FIRST AMENDED COMPLAINT against All Defendants All Defendants., filed by BRANDON CANUP. (CANUP, BRANDON) (Entered: 05/12/2026) |
| 05/12/2026 | | Set Deadlines as to 59 Plaintiff Brandon Canup's Motion to Stay Proceedings and Memorandum of Law in Support. (Internal deadline for referral to judge if response not filed earlier: **5/26/2026**). (djb) (Entered: 05/15/2026) |
| 05/13/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 60 Amended Complaint, 59 Plaintiff Brandon Canup's Motion to Stay Proceedings and Memorandum of Law in Support, re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 Motion to Stay Pending Remand. (alb) (Entered: 05/13/2026) |

| 05/17/2026 | 61 | ORDER denying 37 Motion for Recusal and Disqualification. Signed by JUDGE M CASEY RODGERS on May 17, 2026. (aow) (Entered: 05/17/2026) |
|---|---|---|
| 05/26/2026 | 62 | NOTICE of Appearance by BENJAMIN JAMES STEVENSON on behalf of MOSTYN LAW FIRM PC (STEVENSON, BENJAMIN) (Entered: 05/26/2026) |
| 05/26/2026 | 63 | MOTION for Extension of Time to File Response/Reply *FNJ DEFENDANTS MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFFS FIRST AMENDED PETITION WITH MEMORANDUM OF LAW* by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/26/2026) |
| 05/26/2026 | 64 | RESPONSE in Opposition re 59 MOTION to Stay re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 *Motion to Stay Pending Remand FNJ DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFFS MOTION TO STAY PROCEEDINGS WITH MEMORANDUM OF LAW* filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/26/2026) |
| 05/26/2026 | 65 | RESPONSE in Support re 59 MOTION to Stay re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 *Motion to Stay Pending Remand* filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 05/26/2026) |
| 05/26/2026 | 66 | MOTION to Dismiss *Plaintiff's Amended Complaint* by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (Internal deadline for referral to judge if response not filed earlier: **6/9/2026**). (RETTIG, GREGORY) (Entered: 05/26/2026) |
| 05/26/2026 | | Set Deadlines/Hearings re 63 Motion for Enlargement of Time to Respond to Plaintiff's First Amended Petition. (Internal deadline for referral to judge if response not filed earlier: **6/9/2026**). (alb) (Entered: 05/27/2026) |
| 05/27/2026 | 67 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by MOSTYN LAW FIRM PC. (STEVENSON, BENJAMIN) (Entered: 05/27/2026) |
| 05/27/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 64 Response in Opposition to 59 Motion to Stay, 65 Response in Support of 59 Motion to Stay. (alb) (Entered: 05/27/2026) |
| 05/27/2026 | 68 | ORDER re 63 Motion for Enlargement of Time to Respond to Plaintiff's First Amended Petition. Defendants Brown and Fleming Nole & Jez LLP must file their response to the amended complaint on or before June 5, 2026. (Internal deadline for referral to judge if response not filed earlier: **6/5/2026**). Signed by JUDGE M CASEY RODGERS on 05/27/2026. (alb) (Entered: 05/27/2026) |
| 05/29/2026 | 69 | ORDER - The 44 MOTION for Substituted Service on Defendants Michael Burns and Cliff Roberts is GRANTED, as requested. Plaintiff is authorized to effect substitute service on Defendants Michael Burns and Cliff Roberts by the methods stated in the motion. Signed by JUDGE M CASEY RODGERS on 5/29/2026. (djb) (Entered: 05/29/2026) |
| 05/29/2026 | 70 | ORDER - Canup's 8 Motion for Remand, is DENIED. Canup's 38 Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation, is DENIED. Canup's 59 Motion to Stay Proceedings, is DENIED as MOOT. Signed by JUDGE M CASEY RODGERS on 5/29/2026. (djb) (Entered: 05/29/2026) |
| 06/02/2026 | 71 | NOTICE *of Filing Summons Request* by BRANDON CANUP (CANUP, BRANDON) (Entered: 06/02/2026) |

| 06/02/2026 | 72 | NOTICE *of Filing Summons Request* by BRANDON CANUP (CANUP, BRANDON) (Entered: 06/02/2026) |
| 06/02/2026 | 73 | NOTICE *of Filing of Petition for Writ of Mandamus in the U.S. Court of Appeals for the Eleventh Circuit* by BRANDON CANUP (Attachments: # 1 Exhibit Petition for Writ of Mandamus) (CANUP, BRANDON) (Entered: 06/02/2026) |
| 06/03/2026 | 74 | Summons Issued as to MICHAEL BURNS, # 1 CLIFF ROBERTS. (djb) Modified on 6/3/2026 (djb). (Entered: 06/03/2026) |
| 06/03/2026 | 75 | MOTION Accept Motion to Dismiss as Timely re 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by MOSTYN LAW FIRM PC. (STEVENSON, BENJAMIN) (Entered: 06/03/2026) |
| 06/03/2026 | | Set Deadlines as to 75 MOTION Accept Motion to Dismiss as Timely re 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Internal deadline for referral to judge if response not filed earlier: **6/17/2026**). (djb) (Entered: 06/03/2026) |
| 06/04/2026 | 76 | NOTICE of Appearance by SKIPPER JONATHAN VINE on behalf of CLIFF ROBERTS (VINE, SKIPPER) (Entered: 06/04/2026) |
| 06/05/2026 | 77 | Plaintiff Brandon Canup's Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings re 70 Order, by BRANDON CANUP. (CANUP, BRANDON) Modified on 6/5/2026 (djb). (Entered: 06/05/2026) |
| 06/05/2026 | | Set Deadlines as to 77 MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings, re 70 Order. (Internal deadline for referral to judge if response not filed earlier: **6/22/2026**). (djb) (Entered: 06/05/2026) |
| 06/05/2026 | 78 | MOTION *Motion for Clarification* by BRANDON CANUP. (Attachments: # 1 Exhibit Email with attachments from Diana Rafael of CSK to Brandon Canup on behalf of Cliff Roberts, # 2 Exhibit Emails between Brandon Canup and Benjamin Stevenson on behalf of Mostyn Law Firm, PC, # 3 Exhibit Declaration of Brandon Canup) (CANUP, BRANDON) (Entered: 06/05/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/05/2026 13:53:53 | | | |
| **PACER Login:** | bcanup1986 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:26-cv-03359-MCR-ZCB |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

# Tab B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

**CASE MANAGEMENT ORDER NO. 66**
**(Termination of Plaintiff Leadership Structure)**

As a result of the recent Combat Arms Master Settlement Agreement, the litigation has entered a new and different phase. The focus has largely shifted from omnibus advocacy for the common benefit of all MDL plaintiffs to the work of implementing and administering the Settlement Program, much of which is highly individualized, and of course work on behalf of any who elect not to participate in the Settlement Program will be exclusively individualized. It is precisely because of the exemplary contributions of the entire leadership team that the litigation achieved a global resolution; however, given the nature of this new phase, the existing leadership structure is no longer necessary or appropriate going forward, and is therefore terminated. As of the date of this Order, no further work performed or expenses incurred in connection with a leadership role will be considered for

Case 3:19-md-02885-MCR-HTC    Document 3863    Filed 09/11/23    Page 2 of 2
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 17 of 202

Page 2 of 2

common benefit compensation, except to the extent expressly authorized by the Court.[1]

A separate order will be entered identifying the limited number of firms authorized to continue performing common benefit work in connection with settlement administration, including work required for the stock transfer and the anticipated fairness hearing.

SO ORDERED, on this 11th day of September, 2023.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[1] With that said, Bryan Aylstock will continue in his lead counsel role for purposes of discussing all aspects of the settlement with 3M, the Court, and any special master.

# Tab C

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

**CASE MANAGEMENT ORDER NO. 67
(Common Benefit Time & Expenses for
Settlement Implementation & Administration)**

Achieving the goals of the Settlement Program will require considerable time and effort from all plaintiffs' attorneys in this litigation, as well as the Special Masters. This Order expressly limits the extent to which work performed and/or expenses incurred in furtherance of the Settlement Program are eligible for common benefit consideration.

Common benefit time and expenses in connection with the Settlement Program fall into one of two categories, either Settlement Implementation or Settlement Administration. Settlement Implementation refers to authorized time and expenses involved in establishing the Settlement Program, which includes negotiating and finalizing the Master Settlement Agreements, communicating with counsel about the Settlement Program, working with ARCHER Systems, LLC and BrownGreer PLC to launch the Settlement Program, and similar work performed on

or before Case Management Conference No. 23 on September 8, 2023. Firms that were authorized to perform Settlement Implementation work during the relevant period may submit the associated time and expenses for common benefit consideration.

Settlement Administration, in contrast, encompasses authorized work performed and expenses incurred in connection with administering the Settlement Program after September 8, 2023. Consistent with Case Management Order No. 66, which terminated the plaintiff leadership structure, only the following firms are authorized to perform common benefit work and incur common benefit expenses in connection with the administration of the Settlement Program for this litigation, including work required for the stock transfer and the anticipated fairness hearing: Aylstock, Witkin, Kreis & Overholtz, PLLC; Seeger Weiss LLP; Pittman Dutton Hellums Bradley & Mann, P.C.; and Cory Watson.

To the extent issues and/or disputes arise related to the Combat Arms Master Settlement Agreement ("MSA"), work performed and expenses incurred by individual  members of the "Negotiating Plaintiffs' Counsel" (as defined in the MSA) in connection with resolving such issues and/or disputes is authorized common benefit work. Additionally, Special Master David R. Herndon is authorized to perform settlement administration work, to the extent necessary, and his work in that regard will be paid from the Common Benefit Qualified Settlement Fund.

**No other firms or individual attorneys may perform work or incur expenses for common benefit consideration after the date of this Order, unless expressly preauthorized by the Court**.

As set forth in prior Orders, Special Master Herndon will prepare a Report and Recommendation for the Court regarding common benefit fee allocations, with the assistance of Special Master Randall Sansom, CPA, according to protocols and procedures that will be established by separate order.  *See* Common Benefit Order Nos. 2 & 3, ECF No. 900 & 1659.  Special Masters Herndon and Sansom's time and expenses in fulfilling these roles will be paid from the Common Benefit Qualified Settlement Fund.  Individual lawyers' time and/or expenses incurred in connection with preparing and/or presenting a claim for compensation and/or reimbursement from the Common Benefit Qualified Settlement Fund is not compensable as common benefit work.

**SO ORDERED**, on this 11th day of September, 2023.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# Tab 1-1

FILED
TARRANT COUNTY
10/27/2025 1:29 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO.** 067-371499-25 _____

|  |  |
|---|---|
| BRANDON CANUP, | IN THE _____ |
| Plaintiff | DISTRICT COURT |
| v. | |
| BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC, | TARRANT COUNTY,  TEXAS |
| Defendants | |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW Plaintiff, Brandon Canup, appearing pro se, and files this Original Petition against the Defendants named herein. Plaintiff makes this filing based on personal knowledge as to all matters concerning himself and upon information and belief as to all other matters. In support thereof, Plaintiff respectfully shows the Court as follows:

### I.

### DISCOVERY CONTROL PLAN

1.1    Plaintiff pleads that discovery should be conducted in accordance with discovery control plan, level 3, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

## II.

## PARTIES

### A.    Plaintiff

2.1    Brandon Canup ("Canup") is an individual residing in Tarrant County, Texas.

### B.    Defendants

2.2    Aylstock, Witkin, Kreis & Overholtz, P.L.C. ("AWKO") is a foreign professional limited liability company formed under the laws of Florida, doing business in Texas. Its principal office is located at 17 East Main Street, Suite 200, Pensacola, Florida 32502. AWKO may be served via its registered agent for service of process: Justin Witkin, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever it may be found. In the event AWKO does not maintain a registered agent or cannot otherwise be located with reasonable diligence, it may be served through the Texas Secretary of State as provided by *Tex. Bus. Orgs. Code § 5.251* and *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.045*.

2.3    Mostyn Law Firm, P.C. ("Mostyn") is a Texas professional corporation formed under the laws of Texas, with its principal office at 3810 W. Alabama Street,

Houston, Texas 77027-5204. Mostyn may be served via its registered agent for service of process: Andrew Browning, at the same address, or wherever it may be found.

2.4    Fleming, Nolen & Jez, L.L.P. ("FNJ") is a Texas limited liability partnership with its principal office located at 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128. FNJ may be served via a General Partner for service of process: George Fleming, at the same address, or wherever it may be found. Because FNJ does not have a registered agent listed on file with the Texas Comptroller as of the date of this filing, it may also be served with process through the Texas Secretary of State pursuant to *Tex. Bus. Orgs. Code § 5.251*, who shall forward process to FNJ's last known address on file.

2.5    Bryan Frederick Aylstock ("Aylstock") is an attorney licensed in the State of Florida (Florida Bar No. 78263), and a founding partner of AWKO. He may be served at his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.6    Bobby J. Bradford ("Bradford") is an attorney licensed in the State of Florida (Florida Bar No. 173223) and a partner at AWKO. He may be served at at

ORIGINAL PETITION    **PAGE**    3

his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.7    Michael Andrew Burns ("Burns") is an attorney licensed in the State of Florida (Florida Bar No. 973130). At all times relevant to this case, he was affiliated with Mostyn Law Firm, a Texas-based law firm. He may be served at his Florida business address: Burns Law LLC, 362 Gulf Breeze Parkway, #294, Gulf Breeze, Florida 32561-4492, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.8    Gregory Donald Brown ("Brown") is an attorney licensed in the State of Texas (Texas Bar No. 24078266). At all times relevant to this case, he was affiliated with FNJ. Brown is listed as an attorney at FNJ on their website and as an attorney at Sorrels Law on his Texas State Bar profile. He may be served at his primary business address: Sorrels Law, 230 Westcott St., Ste. 100, Houston, Texas 77007, or at Fleming, Nolen & Jez, LLP, 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128, or wherever he may be found.

2.9    Cliff Lee Roberts ("Roberts") is an attorney licensed in the State of Texas (Texas Bar No. 17002900). He may be served at his business address: 8191 Southwest Freeway, Suite 116, Houston, Texas 77074-1700, or wherever he may be found.

2.10    For ease of reference, Defendants AWKO, Mostyn, Aylstock, Bradford, and Burns may collectively be referred to as the ("Florida Defendants"). Although Mostyn is a Texas law firm, it is included in this group because of its affiliation with Burns, a Florida-based attorney, and its role in the conduct giving rise to this case.

2.11    Defendants FNJ, Brown, and Roberts may collectively be referred to as the ("Texas Defendants").

2.12    All Defendants may collectively be referred to as the ("Defendants").

## III.

## JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction over this action pursuant to Section 24.007, et seq. of the Texas Government Code. The amount in controversy exceeds the Court's minimum jurisdictional requirements, exclusive of interest and costs, and the relief sought is within the jurisdictional limits of this Court.

3.2    This Court has personal jurisdiction over all named Defendants. One or more Defendants are residents of Texas, maintain their principal place of business

ORIGINAL PETITION    **PAGE**    5

in Texas, and/or regularly conduct business in Texas. Additionally, pursuant to the Texas Long-Arm Statute, *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.069*, this Court may exercise jurisdiction over out-of-state Defendants who have purposefully directed activities toward Texas. Out-of-state Defendants purposefully directed activities toward Texas, including but not limited to: providing legal services to a Texas resident, accessing confidential records of a Texas resident, and appearing and purporting to act on behalf of a Texas resident in litigation proceedings connected to Texas, including matters designated for trial in the Northern District of Texas. Furthermore, all out-of-state Defendants performed common benefit work in the underlying litigation entitling them to collect fees from thousands of Texas Residents. Out-of-state Defendants have purposefully availed themselves of the privileges and benefits of conducting business in Texas and are subject to the jurisdiction of this Court. These actions demonstrate the Defendants' purposeful involvement in matters connected to Texas, making it both appropriate and consistent with due process for a Texas court to exercise jurisdiction over them.

3.3    Venue is proper in this Court pursuant to Section 15.001, *et seq.* of the Texas Civil Practice and Remedies Code.  All or a substantial part of the harm resulting from Defendants' conduct was suffered by Plaintiff in Tarrant County, Texas, where Plaintiff resides and relied upon Defendants' actions and representations. Additionally, this lawsuit concerns contracts and attorney-client

relationships that were to be performed, in whole or in part, in Tarrant County. Plaintiff's case was designated for trial in the United States District Court for the Northern District of Texas, and Tarrant County was the central location of Plaintiff's litigation preparation, reliance on Defendants, and resulting injury.

## IV.

## STATEMENT PURSUANT TO RULE 47

4.1    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that he seeks monetary relief of less than $250,000, including damages of any kind, penalties, costs, expenses, pre and post-judgment interest. Plaintiff further affirms that he seeks less than $75,000 in monetary damages, exclusive of interest and costs.

## V.

## BACKGROUND FACTS

5.1    On April 3, 2019, the United States Judicial Panel on Multidistrict Litigation transferred multiple actions to the Northern District of Florida for coordinated pretrial proceedings in *In re: 3M Combat Arms Earplug Products Liability Litigation*, Cause No. 3:19-md-02885 ("MDL").

5.2    On May 22, 2019, the MDL court issued Pretrial Order No. 7, appointing various plaintiffs' attorneys to leadership roles ("PSC") to conduct common benefit

work on behalf of all claimants in the MDL. These appointments were set to expire after one year unless renewed.

5.3    On June 21, 2019, Canup retained Texas Defendants Brown, FNJ, and Roberts, to investigate, develop, and litigate his claims in the MDL. Despite this agreement, Texas Defendants failed to meaningfully investigate Canup's injuries or develop his case during their years of representation.

5.4    On August 29, 2023, a global settlement agreement ("MSA") was announced between 3M and Plaintiffs' Leadership in the MDL. The agreement imposed obligations on plaintiffs' attorneys to recommend settlement to 100% of their clients, to withdraw from representation of any claimant who declined to participate and other terms that were hidden from Plaintiffs in the MDL in Exhibit 10 of the MSA. These provisions created undisclosed conflicts of interest between attorneys and their clients.

5.5    Canup received several letters and emails from Texas Defendants pressuring him to accept the settlement, warning that rejection would result in withdrawal of representation, delayed access to trial, and onerous litigation deadlines. However, Texas Defendants never disclosed the full terms of the settlement, including Exhibit 10, which contained material provisions.

5.6    Following multiple communications from Texas Defendants indicating their intent to withdraw if Canup declined to participate in the global settlement,

Canup retained attorney David Gamble ("Gamble") in January 2024. At the time, Texas Defendants were still counsel of record for Canup in the MDL but did not provide substantive legal support. Canup retained Gamble to preserve his ability to litigate, anticipating Texas Defendant's formal withdrawal and recognizing their abdication of duty.

5.7    On January 21, 2024, Canup officially opted out of the MSA triggering his production obligations under Case Management Order 57 ("CMO 57"). Canup and Gamble immediately began preparing for the CMO 57 production requirements which included gathering, organizing, and submitting over 25 GB of data within 30 days under threat of dismissal with prejudice. Despite knowing of these requirements for months, Texas Defendants did not assist in meeting these obligations. Brown filed a motion to withdraw as counsel of record for Canup in the MDL within a week of Canup's CMO 57 production deadline. His motion was granted one day before the CMO 57 deadline.

5.8    Canup requested his file from FNJ in January of 2024. Canup received a few documents but never his full file. FNJ sent Gamble Canup's file which only contained a single four-page pdf.

5.9    On February 5, 2024 Canup was ordered by the MDL Court to appear "in person, with counsel" at a status conference in Pensacola, Florida scheduled for March 13, 2024. In preparation for the March 13, 2024 status conference Bradford

ORIGINAL PETITION                                                    **PAGE**        9

contacted Gamble seeking privileged and confidential information about Canup and his case against 3M and to give advice about the settlement programs in the MSA. Gamble and Bradford spoke several times about Canup's case including but not limited to his medical claims and potential recovery. Bradford informed Gamble that Aylstock and Bradford would be present at the status conference but never informed Gamble of Florida Defendants' intent to make a formal appearance.

5.10    Unbeknownst to either Canup or Gamble, Florida Defendants made a formal appearance in the MDL Court on Canup's behalf at the March 13, 2024 status conference. The hearing transcript lists Aylstock and Bradford from AWKO and Burns from Mostyn as appearing "FOR THE PLAINTIFF." Aylstock participated in the hearing by addressing the MDL Court on the record speaking about the MSA in an attempt to convince Canup to accept the global settlement offer.

5.11    Following the first hearing, Canup and Gamble were led to a conference room where Magistrate Judge Hope Cannon conducted a closed-door settlement conference. This settlement conference was a second official proceeding on March 13, 2024. Judge Cannon brought in Aylstock, Bradford, and Burns, who then gave individual legal advice, reviewed Canup's medical records and discussed Canup's case directly with Canup. The medical documents that were already in Florida Defendants' possession when they entered the room included but were not limited to audiograms and post-deployment health assessments from Canup's time in the US

ORIGINAL PETITION                                                                    **PAGE**    10

Army. These confidential and privileged documents were not provided to Florida Defendants by Canup or Gamble. Florida Defendants had gained access to these confidential and privileged documents from another source unknown to Canup or Gamble.

5.12    During that discussion, Aylstock, Bradford, and Burns attempted to pressure Canup to accept the MSA which Canup had already expressly rejected. Florida Defendants were formerly part of the PSC in the MDL and were bound by the terms of the MSA. Florida Defendants did not disclose that their continued compensation was contingent upon claimant participation levels in the MSA, they did not disclose the full terms of the MSA including Exhibit 10, nor did they inform Canup of the conflict created by the MSA's provisions requiring them to recommend settlement to 100% of claimants and to withdraw from clients who opted out. They also failed to disclose that they were making another formal appearance in this second proceeding in the MDL Court on Canup's behalf.

5.13    Florida Defendants' conduct and formal appearances as Canup's counsel created, at minimum, an implied attorney-client relationship, and arguably an express attorney-client relationship. Bradford reached out to Gamble to obtain confidential and privileged information and to discuss Canup's case strategy prior to the proceedings, conduct consistent with representation. At the hearing itself, Defendants Aylstock, Bradford, and Burns formally appeared "FOR THE

PLAINTIFF" on the record, communicated directly with Plaintiff, gave individualized legal advice, and attempted to pressure him into accepting the MSA. These actions, individually and collectively, establish an implied attorney-client relationship, because they would cause any reasonable client to believe Florida Defendants were acting as his attorneys. The formal appearance on the record not only arguably created an express attorney-client relationship but, at the very least, reinforced and confirmed the implied relationship already created by Florida Defendants' conduct. This imposed fiduciary duties including, but not limited to, the duties of loyalty, candor, honesty, disclosure, and conflict avoidance. Despite these obligations, Defendants failed to disclose their intent to appear, their actual formal appearance, their roles in the settlement conference, or their financial stake in maximizing claimant participation.

5.14    Had Canup known that Florida Defendants would appear on his behalf, he could have satisfied the MDL Court's order to appear "in person, with counsel" without transporting Gamble to Florida. Canup incurred substantial costs for Gamble's airfare, lodging, and time. These are expenses he would not have borne had Florida Defendants fulfilled their duty to disclose their participation.

5.15    After the March hearing, Aylstock, Bradford, and Burns took no further action on Canup's behalf, never filed a notice of withdrawal, and never

explained their involvement. Canup did not become aware of their official appearance until he obtained a transcript of the hearing in January 2025.

5.16    Meanwhile, Canup encountered roadblocks accessing the unredacted Master Long Form Complaint ("Master Complaint"). The master complaint was filed on behalf of all claimants and was referenced by all Short Form Complaints filed by the Plaintiffs in this MDL. When the motion to file this document under seal was filed in 2019 it stated that all counsel of record were sent an unredacted copy. Canup was denied access to this document by FNJ. FNJ later contacted Gamble and recommended that he reach out to the PSC to ask for permission to access the master complaint from PSC.

5.17    In April of 2024 Gamble contacted Bradford to get access to the master complaint. On April 24, 2024, Bradford informed Gamble that he would only release the unredacted complaint if Gamble signed a Common Benefit Work Participation Agreement assigning a 9% interest in any future recovery in Canup's case to the PSC. Canup consented to Gamble's signing the agreement to move forward with the litigation.

5.18    On May 1, 2024, Canup filed an amended complaint and Lexecon non-waiver statement as ordered by the MDL Court on April 17, 2024. The order requiring Canup to amend his pleadings stated that he could not add new allegations or causes of action. 3M moved to dismiss. On July 18, 2024, the MDL Court granted

the motion in part, dismissing Canup's hearing-loss-related claims as procedurally barred because they were new allegations and/or causes of action.

5.19   The MDL Court's order stated that Canup's former attorneys never attempted to amend his pleadings to include hearing loss claims, despite representing him for years. The MDL Court cited this as a reason that Canup should not be allowed to add new allegations or causes of action. Canup was harmed by being forced to retain expert witnesses whose work became worthless due to the dismissal of the hearing-loss-related claims, harm that would have been avoided had the Texas Defendants investigated and developed Canup's case as they were legally obligated to do.

5.20   On September 30, 2024, Canup entered into a direct settlement agreement with 3M. Canup's ability to reach this resolution was made possible only through his efforts and the efforts of independent counsel, despite the harm caused by the misconduct of the attorneys named herein.

## VI.

## CAUSES OF ACTION

Alternative Pleadings.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### A.    CLAIMS AGAINST TEXAS DEFENDANTS

**Claim 1:  Fraud and Failure to Disclose Facts (pled alternatively
as Fraudulent Inducement)**

6.1    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.2    **Material Misrepresentation:** Texas Defendants Brown, Roberts, and FNJ made material representations to Canup, including that they would actively pursue Canup's claims in the MDL and litigate the case on his behalf. These representations were expressly contained in the written contingency fee retainer agreement executed between Canup and Texas Defendants, which promised diligent investigation, development, and prosecution of Canup's claims. These representations were made to induce Canup to sign the agreement and place exclusive control of his case with Texas Defendants.

6.3    **Knowledge of Falsity:** At the time these representations were made, Texas Defendants knew they were false, or at minimum had no reasonable basis to believe them true. FNJ had prior MDL experience and knew that their business model involved securing clients for global settlements without undertaking individualized litigation. Their subsequent conduct, failing to advance Canup's claims for four years, not amending pleadings to preserve critical causes of action, and abandoning Plaintiff just one day before the CMO 57 production deadline, confirms they never intended to perform the promised litigation services.

6.4    **Intent to Induce Reliance:** Texas Defendants made these misrepresentations with the intent and purpose of inducing Canup to rely on them

and execute the contingency fee agreement, thereby binding Canup to pay them a percentage of any recovery while avoiding the cost and effort of actively litigating his claims.

6.5    **Justifiable Reliance:** Canup justifiably relied on these representations by signing the retainer agreement and allowing Texas Defendants to control and manage his claims in the MDL for approximately four years, without seeking alternative representation or taking independent action, in the belief that Texas Defendants were diligently working on his behalf.

6.6    **Injury Caused by Reliance**: As a direct and proximate result of Canup's reliance on Texas Defendants' misrepresentations, Canup suffered injury. The MDL court cited Texas Defendants' failure to amend pleadings and advance his case as a basis for dismissing Canup's hearing-loss claims, which diminished the value of expert reports prepared for the litigation. Texas Defendants' abandonment of Canup before the CMO 57 compliance deadline caused significant stress, confusion, inconvenience, and anxiety, disrupted Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.7    Texas Defendants' conduct also contradicts the terms of the written agreement, which stated that Canup retained ultimate authority over settlement decisions and that Texas Defendants would provide full legal support. Instead, Texas

Defendants used the contract to obtain control of Canup's claims, then abandoned those claims for financial reasons when he exercised his right to opt out of the settlement.

6.8     Texas Defendants violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Texas Defendants acted knowingly and intentionally. Such violations constitute fraud.

6.9     To the extent FNJ is not found directly liable for its own independent misconduct, FNJ is also vicariously liable for any wrongful acts or omissions committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.10    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.11    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 2:  Breach of Fiduciary Duty

6.12    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.13   **Existence of a Fiduciary Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup fiduciary duties of loyalty, candor, disclosure, and zealous representation among others. These duties included the obligation to place Plaintiff's interests above their own, to fully inform Plaintiff of all material facts affecting his case, and to diligently pursue his claims.

6.14   **Breach of the Duty:** Texas Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.15    **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.16    **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.17    To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.18    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.19    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 3: Negligence (pled in the alternative)

6.20    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.21    **Existence of a Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup a duty to exercise reasonable care, skill, and diligence commonly possessed and exercised by attorneys similarly situated in the State of Texas. This duty included, but was not limited to, properly investigating and preparing Canup's claims, maintaining adequate communication with the client, meeting applicable court deadlines, and taking reasonable steps to protect Plaintiff's interests before, during, and after withdrawal of representation.

6.22    **Breach of the Duty:** Texas Defendants breached their duty of care in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including

ORIGINAL PETITION                                        **PAGE**    20

Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.23  **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.24  **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.25   To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.26   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

## B.    CLAIMS AGAINST FLORIDA DEFENDANTS

### Claim 1:  Fraud by Non-Disclosure

6.27   Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.28   **Failure to Disclose:** Florida Defendants deliberately failed to disclose material facts. Florida Defendants Aylstock, Bradford, and Burns, while acting on behalf of their respective firms AWKO and Mostyn, deliberately failed to disclose that they intended to formally appear as counsel for Canup at the March 13, 2024 status conference and that they intended to formally appear and participate in a closed-door settlement conference concerning Canup's case. By withholding these facts, Florida Defendants concealed their involvement in Canup's case. These omissions occurred despite their knowledge of a court order requiring Canup to appear "in person, with counsel" if represented.

6.29  **Duty to Disclose:** The Defendants had a duty to disclose such facts to Canup. The Florida Defendants' duty to disclose arose from multiple sources:

a) By making a formal appearance on the record, Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup, triggering fiduciary duties of candor, loyalty, and disclosure. They had a duty to disclose their intent to make a formal appearance.

b) By partially disclosing their intent to attend the March 13, 2024 status conference to Canup through Gamble while concealing their intent to formally appear, Florida Defendants created a duty to disclose the full scope of their role.

c) By seeking privileged and confidential information about Canup and his case against 3M prior to the March 13, 2024 status conference and by obtaining and using Canup's confidential medical records, Defendants assumed fiduciary-like duties of confidentiality and fair dealing, requiring them to disclose their access and intent.

6.30  **Canup's Ignorance:** Canup was ignorant of the facts and did not have an equal opportunity to discover them. Canup had no knowledge that Florida Defendants intended to appear in court on his behalf, nor that they had accessed his private medical records from an undisclosed source. Because these actions were being concealed and misrepresented Canup had no equal opportunity to discover their conduct or protect his own interests before incurring unnecessary expenses and attending the conference under false pretenses.

6.31    **Intent to Induce:** Florida Defendants intended Canup to act or refrain from acting based on the nondisclosure. Florida Defendants knew that the MDL Court's order required Canup to appear "in person, with counsel." Their nondisclosure was calculated to induce Canup to continue treating Gamble as his sole counsel and to incur the costs of transporting and compensating him to attend the status conference in Florida. By concealing their intention to appear "FOR THE PLAINTIFF," Florida Defendants prevented Canup from making an informed choice such as declining to bring Gamble, objecting to their unauthorized involvement, or challenging their improper access to his records. Their concealment ensured that Canup remained unaware and passive while Florida Defendants acted in ways that advanced their own interests in the MDL.

6.32    **Reliance and Injury:** Canup relied on the Florida Defendants' nondisclosure, which directly resulted in injury. In reliance on their concealment, Canup unnecessarily paid for Gamble's travel, lodging, and appearance at the Florida status conference, expenses that would not have been incurred had he known Florida Defendants would appear as his counsel. Florida Defendants also accessed and used his confidential medical records without consent, depriving him of control over his case and the opportunity to make informed legal decisions with full knowledge of who was acting on his behalf. These harms, including financial costs and disruption of his autonomy, were the direct and foreseeable result of Florida

Defendants' deliberate concealment of material facts they had a duty to disclose.

6.33   Bryan Aylstock, as a founding partner of AWKO, had actual authority to bind the firm. AWKO and Mostyn Law benefitted directly from the concealment and actions of their employees and partners. As such, both firms are directly liable for the misconduct described herein.

6.34   Florida Defendants' omissions and concealments were intentional, material, and calculated to mislead Canup during a critical phase of litigation. This conduct constitutes actionable fraud by non-disclosure under Texas law.

6.35   To the extent AWKO and Mostyn Law are not found directly liable, they are vicariously liable for the acts and omissions of Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.36   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.37   Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

**Claim 2:  Breach of Fiduciary Duty**

6.38    Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.39    **Existence of Fiduciary Duty:** By formally appearing on the record as counsel "FOR THE PLAINTIFF" at the March 13, 2024 status conference, and by participating in a closed-door settlement discussion regarding Canup's case, the Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup. This appearance, coupled with their access to Canup's confidential medical records, imposed fiduciary duties of loyalty, candor, and full disclosure. Having assumed the role of Canup's representatives in court and in private negotiations, Florida Defendants were obligated to act in Canup's best interests, disclose material facts, and avoid self-dealing or deception.

6.40    **Breach of Duty:** Florida Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. Florida Defendants breached these fiduciary duties in multiple ways. They deliberately failed to inform Canup of their intent to appear as his counsel, concealed their formal appearance in settlement negotiations, and accessed Canup's confidential medical records without authorization. They further failed to disclose material conflicts of interest, including their obligations under the MSA to secure 100% plaintiff participation and the financial penalties they faced if Canup declined to settle. Florida Defendants also

failed to disclose Exhibit 10 to the MSA which contained material terms to the agreement. Instead of candor and loyalty, Florida Defendants acted in their own financial interests by pressuring Canup toward settlement while depriving him of the opportunity to make informed decisions about his representation and case strategy.

6.41   **Causation:** Florida Defendants' breaches directly caused Canup to act and incur expenses that he otherwise would not have. Because Florida Defendants concealed their intent to formally appear as counsel, Canup reasonably believed Gamble was his only representative and paid to transport and lodge Gamble in Florida for the status conference. Canup was further deprived of the ability to object to Florida Defendants' unauthorized access to his confidential medical records, or to challenge their improper participation in court and settlement proceedings. Their concealment and deception stripped Canup of control over his own case and forced him to rely on incomplete and misleading information.

6.42   **Damages:** As a direct and proximate result of Florida Defendants' misconduct, Canup suffered both financial and significant inconvenience damages. He incurred unnecessary out-of-pocket expenses for Gamble's travel and representation. Florida Defendants' concealment and breaches also forced Canup to spend substantial time, energy, and effort to learn about the role and duties of a lawyer, MDL procedures, settlement structures, and fiduciary obligations, simply to understand how his rights were being compromised. Instead of being able to trust

Defendants, Canup was required to divert time away from his personal and professional life to protect himself from those who owed him loyalty and candor. This disruption and burden are concrete injuries that flow directly from Florida Defendants' breaches of fiduciary duty.

6.43   To the extent AWKO and Mostyn Law are not found directly liable, they are also vicariously liable for the fiduciary breaches committed by Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.44   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate it for the harm sustained.

6.45   Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

### Claim 3:  Fraudulent Inducement

6.46   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.47   **Material Misrepresentation:** Defendants Bradford and AWKO represented to Canup, through Gamble, that if Gamble agreed to allocate a 9%

ORIGINAL PETITION                                                    **PAGE**      28

interest in Canup's recovery in the MDL to PSC, Canup and Gamble would receive full access to the MDL's common benefit work, including the master complaint and other litigation materials. This promise was material because access to the common benefit work was essential for evaluating Canup's claims, preparing pleadings, and ensuring that Canup's case was prosecuted on equal footing within the MDL.

6.48 **Knowledge of Falsity:** At the time Bradford made these representations, he and AWKO had no intention of providing the promised access beyond the master complaint. Bradford and AWKO also knew their representation was false because the master complaint had been filed on behalf of all Plaintiffs in the MDL, and the motion to file it under seal expressly stated that an unredacted copy had already been provided to all counsel of record, making all Plaintiffs in the MDL, including Canup, entitled to it without additional conditions. Bradford and AWKO's subsequent refusal to respond to Canup's request for the remaining common benefit materials demonstrates they knowingly misrepresented their willingness to perform and concealed their true intent.

6.49 **Intent to Induce Reliance:** Defendants Bradford and AWKO made these false promises for the purpose of inducing Canup and or Gamble as an agent of Canup to agree to the 9% common benefit interest. By doing so, Bradford and AWKO sought to secure both financial gain and strategic leverage within the MDL, binding Canup to terms that benefitted Bradford, AWKO and PSC as a whole while

ORIGINAL PETITION                                                    **PAGE**        29

depriving Canup of the resources promised.

6.50   **Reliance:** Canup, through Gamble, reasonably relied on Bradford and AWKO's misrepresentations by entering into the agreement and granting PSC a 9% interest in his recovery. Canup through Gamble did so in the belief that he would receive the full scope of common benefit materials, which were essential to advancing his claims in the MDL.

6.51   **Injury:** As a direct and proximate result of Bradford and AWKO's fraudulent inducement, Canup suffered injury. He incurred the financial burden of allocating 9% of his recovery to PSC while receiving only the master complaint, which he was entitled to without further conditions, and being deprived of the other promised materials. This left Canup disadvantaged in prosecuting his claims, forced him to expend additional time and effort to understand the underlying issues without the benefit of the promised work product, and unjustly enriched Bradford and AWKO at his expense.

6.52   Defendants Bradford and AWKO violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Defendants Bradford and AWKO committed this conduct knowingly and intentionally. Such violations constitute fraud.

6.53   To the extent AWKO is not found directly liable, it is also vicariously liable for the fraudulent inducement committed by Bradford within in the course and

scope of his employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.54   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.55   Because Bradford and AWKO's conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## C.    CLAIMS AGAINST ALL DEFENDANTS

### Claim 1:  Civil Conspiracy

6.56   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.57   **Combination of two or more persons:** Defendants FNJ, Brown, Roberts, Aylstock, Bradford, Burns, AWKO, and Mostyn Law combined and acted together in connection with the MDL. Their actions were coordinated, not isolated, and each Defendant assumed complementary roles under the framework of the MSA which tied their compensation to Plaintiff participation thresholds and withdrawal requirements. This combination reflects a deliberate, concerted effort to protect their financial interests at Canup's expense.

6.58   **Common object or course of action:** The common object of the conspiracy was to secure maximum Plaintiff participation in the MSA, protect Defendants' fees, and eliminate or marginalize clients unwilling to settle. To accomplish this, Defendants withheld material settlement terms, including Exhibit 10 of the MSA and provisions tying attorney compensation to client participation and mandatory withdrawals, while conditioning access to critical litigation documents on Canup's compliance. The Florida Defendants also concealed their formal appearance as Canup's counsel, depriving him of notice that they were representing him in court and settlement discussions. These coordinated acts were calculated to undermine Canup's autonomy, deprive him of full disclosure, and coerce his participation in the settlement program.

6.59   **Meeting of the minds:** Defendants reached a meeting of the minds through coordinated conduct. Texas defendants abandoned Canup for not agreeing to participate in the MSA. Florida Defendants then formally appeared "FOR THE PLAINTIFF" in court allowing them to pressure Canup, in person, to participate in the MSA. Florida Defendants did this without disclosing their intent to formally appear forcing Canup to take Gamble from Texas to Florida to comply with the MDL Court's order to appear "in person, with counsel" resulting in unnecessary economic pressure on Canup. Texas Defendants then withheld the master complaint, a document that was part of Canup's file, and directed Gamble to obtain it from the

PSC. Bradford and AWKO then conditioned its release on signing a fraudulent

participation agreement giving PSC a 9% interest in any recovery in Canup's case.

These coordinated acts evidence agreement, whether formal or informal, to act in

unison toward their shared objective.

6.60 **Unlawful overt acts:** In furtherance of the conspiracy, Defendants

engaged        in        multiple        unlawful        overt        acts,        including:

a) concealing material settlement terms from Canup;

b) concealing their intent to appear, and then appearing as Canup's counsel without authority or disclosure;

c) accessing and reviewing Canup's confidential medical records without authorization;

d) concealing their financial and ethical conflicts tied to the MSA; and

e) requiring Canup's counsel to sign a fraudulent 9% participation agreement as the condition for obtaining the master complaint.

Each of these acts breached duties of candor, loyalty, and disclosure owed to

Canup, and unlawfully advanced Defendants' scheme to manipulate settlement

participation.

6.61 **Damages:** As a direct and proximate result of this conspiracy, Canup

suffered damages. He incurred unnecessary expenses transporting substitute counsel

to Florida for a hearing where Florida Defendants secretly appeared on his behalf,

was deprived of access to promised common benefit work, and saw his recovery reduced by the 9% diversion of settlement funds. Canup also suffered significant inconvenience by being forced to investigate and learn about complex legal processes in order to uncover and counteract Defendants' scheme, burdens that arose solely because of Defendants' coordinated misconduct.

6.62   To the extent the law firms named herein are not found directly liable, they are also vicariously liable for the actions of their partners, associates, employees, or agents committed within the scope of employment and in furtherance of the conspiracy.

6.63   Additionally, because Canup's injuries were caused by the joint and concerted actions of multiple Defendants, including acts of fraud, breach of fiduciary duty, and conspiracy, all Defendants are jointly and severally liable under Texas law.

6.64   For the avoidance of doubt, Canup pleads that if any law firm named herein is not found directly liable, it is nonetheless vicariously liable under the doctrine of respondeat superior for the conduct of its partners, agents, or employees acting within the course and scope of their duties.

6.65   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.66   Because Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be

determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## VII.

## DAMAGES

7.1     For each of his claims, Canup demands recovery of all of the following categories of damages as a direct and proximate result of the Defendants' wrongful conduct, which include:

7.2     **Actual Damages**

Canup suffered actual damages totaling **$19,807.35 + common benefit fee set aside from settlement in underlying litigation (common benefit fee is less than $20,000)**, including:

(a) $6,520.00 for representation by David Gamble at the March 13, 2024 status conference in Pensacola, Florida;

(b) $884.59 in related travel and lodging expenses;

(c) $11,925.00 for expert reports and litigation preparation rendered futile by Defendants' misconduct; and

(d) $477.76 in miscellaneous litigation costs;

(e) amount set aside from settlement to cover common benefit fee

These damages are recoverable under all applicable causes of action, including fraud and breach of fiduciary duty.

### 7.3    Inconvenience Damages

Defendants' misconduct forced Canup to learn about and understand duties that competent counsel should have performed, including analyzing complex legal issues as well as studying fiduciary duties owed by attorneys, and uncovering fraud and concealment theories that revealed how his own counsel had deceived him. These burdens disrupted Canup's daily life, imposed unnecessary strain, and deprived him of reliable representation. Canup seeks damages for loss of time, disruption, and inconvenience. The amount is left to the discretion of the trier of fact.

### 7.4    Exemplary Damages

Defendants acted with fraud, malice, and conscious disregard of Canup's rights by:

(a) appearing as counsel without consent;

(b) accessing confidential medical records without authorization;

(c) concealing material terms and conflicts of interest;

(d) withdrawing or refusing to act during critical litigation phases; and

(e) pressuring Canup toward an unfair settlement.

Canup seeks exemplary damages under *Tex. Civ. Prac. & Rem. Code ch. 41.003*, in an amount sufficient to punish and deter.

### 7.5    Disgorgement

Canup seeks disgorgement of any common benefit fees traceable to his settlement, Florida Defendants as former members of the PSC in the MDL obtained such benefits through fraud and in breach of duty.

### 7.6    Interest and Costs

Canup seeks pre- and post-judgment interest as authorized by law, together with all taxable court costs and litigation expenses.

## VIII.

## JURY DEMAND

8.1    Canup requests a jury trial on all claims and issues so triable.

## IX.

## CONDITIONS PRECEDENT

9.1    All conditions precedent have occurred and been satisfied.

## X.

## NOTICE PURSUANT TO T.R.C.P. 193.7

10.1    Canup provides notice to Defendants pursuant to Rule 193.7 of the Texas Rules of Civil Procedure that Canup may utilize as evidence during the trial of this lawsuit all documents exchanged by the parties in discovery in this case.

## XI.

## PRAYER

11.1   ACCORDINGLY, Canup respectfully requests that Defendants be cited to appear and answer, and that Canup be granted judgment against Defendants awarding Canup all damages he is entitled to, including all damages and other relief (at law or in equity) pled in the causes of action and other parts of this instrument above, actual damages and losses, economic damages, compensatory damages, exemplary damages, costs, pre- and post-judgment interest, disgorgement of any fees or benefits wrongfully obtained by Defendants, and all other damages Canup is entitled to in equity or by other applicable law.

11.2   Canup further requests such other and further relief, general or special, at law or in equity, to which Canup may show himself justly entitled.

Dated October 27, 2025

Respectfully submitted,

*/s/ Brandon Canup*
Brandon Canup

4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314

canup.brandon@gmail.com

pro se

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107325134
Filing Code Description: Petition
Filing Description: Original Petition
Status as of 10/27/2025 4:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brandon Canup | | canup.brandon@gmail.com | 10/27/2025 1:29:54 PM | NOT SENT |

# Tab 9-1

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

CITATION                    Cause No. 067-371499-25

BRANDON CANUP
VS.
BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, ET AL

TO: MOSTYN LAW FIRM PC

B/S REG AGT-ANDREW BROWNING
3810 W ALABAMA ST
HOUSTON, TX 77027-5204

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 67th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFF being

BRANDON ALLEN CANUP

Filed in said Court on October 27th, 2025 Against
AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, MOSTYN LAW FIRM PC, FLEMING NOLEN & JEZ LLP, BRYAN FREDERICK AYLSTOCK, BOBBY J
BRADFORD, MICHAEL ANDREW BURNS, GREGORY DONALD BROWN, CLIFF LEE ROBERTS
For suit, said suit being numbered 067-371499-25 the nature of which demand is as shown on said
PLAINTIFF'S ORIGINAL PETITION  a copy of which accompanies this citation.

PRO SE
Attorney for BRANDON ALLEN CANUP Phone No. (972)762-4314
Address     4812 HIDDEN OAKS LN ARLINGTON, TX 76017

_____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 29th day of October, 2025.

By _____
AMANDA DURAN

A CERTIFIED COPY
ATTEST: 10/29/2025
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Duran

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of
twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures
to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

OFFICER'S RETURN  *06737149925000006*
Received this Citation on the 29th day of October , 2025 at 10.16 o'clock A M, and executed at
10000 Memorial Dr Str 740 Houston TX within the County of Harris , State of TX at 11.05 o'clock A M
on the 4th day of November , 2025 by delivering to the within named (Def.): Mostyn Law Firm PC through
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION Registered Agen
, having first endorsed on same the date of delivery.                                                              Andrew Browning

Authorized Person/Constable/Sheriff: Christina Edwards                                    Process Server
County of Harris     State of TX By PSC#13296 Exp 10/31/27     Deputy be
Fees $_____
State of TX County of Harris     (Must be verified if served outside the State of Texas)
Signed and sworn to by the said Christina Edwards before me this 6th day of November 2025
to certify which witness my hand and seal of office
(Seal),                                        County of Harris , State of Texas

TIFFANY B LARA
Notary ID #12292798
My Commission Expires
October 27, 2026

2

# Tab 9-3

# FRANCHISE TAX ACCOUNT STATUS

This record as of November 4, 2025 at 11:49:20

# MOSTYN LAW FIRM P.C.

| | |
|---|---|
| **Texas Taxpayer Number:** | 17605902364 |
| **Mailing Address:** | 3810 W ALABAMA ST<br>HOUSTON, TX 77027 - 5204 |
| **Right to Transact Business in Texas:** | ACTIVE |
| **State of Formation:** | TX |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 12/17/1998 |
| **Texas SOS File Number:** | 0092487502 |
| **Registered Agent Name:** | ANDREW BROWNING |
| **Registered Office Street Address:** | 3810 W. ALABAMA<br>HOUSTON, TX 77027 |

## Public Information Report for Year

6

**2023**

| Title | Name and Address | |
|-------|------------------|---|
| PRESIDENT | **AMBER MOSTYN**<br>3810 WEST ALABAMA<br>HOUSTON, TX 77027 | |

# Tab 23

**FILED**

**December 29, 2025**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: 3M COMBAT ARMS EARPLUG
PRODUCTS LIABILITY LITIGATION

MDL No.: 2885

## MOTION TO TRANSFER TAG-ALONG ACTION
### *BRANDON CANUP V. BRYAN F. AYLSTOCK, ET AL.* TO THE *IN RE 3M* COMBAT ARMS EARPLUG PRODUCTS LIBAILITY LITIGATION MDL

Pursuant to Judicial Panel on Multi-District Litigation Rule 7.1(b)(i), Defendant Bryan F. Aylstock respectfully moves the Panel for an Order transferring *Brandon Canup v. Bryan F. Aylstock, et al.*, No. 4:25-cv-01255 (N.D. Texas) as a tag-along action to the United States District Court for the Northern District of Florida for inclusion in MDL No. 2885. Despite being labeled as a legal malpractice action, the *Canup* complaint is nothing of the sort. Rather, Canup is clearly attempting to use his complaint as a trojan horse to collaterally attack the orders of the MDL Court. Indeed, even a cursory reading of the *Canup* complaint is replete with attacks on the MDL Court's orders, the MDL Settlement in the MDL overseen by the Honorable M. Casey Rodgers, and the opt out provisions of that settlement. More importantly, the entire basis of his lawsuit is based upon the fact that Defendants, Aylstock, Bradford, and Burns appeared in their capacity as appointed leadership of the MDL Court at an MDL hearing, an appearance that the official MDL transcript clearly reveals was at the request of the MDL Court, and only in their appointed roles as MDL leadership.

Indeed, the *Canup* complaint falsely alleges that Bryan F. Aylstock, Bobby Bradford and the lawyers at Aylstock, Witkin, Kreis and Overholtz, PLLC, were his lawyers – but the official MDL transcript directly contradicts that allegation and makes clear that their only interaction with

Mr. Canup or the attorney who appeared with him at the MDL hearing, was in their appointed roles as MDL leadership. Any fair reading of the underlying complaint would reveal that what is actually happening is that these lawyers, and the MDL Court itself, are being attacked for their roles related to a hearing held by the MDL Court on March 13, 2024.[1] At no point did Aylstock or any member of his firm represent Mr. Canup. As such, this so-called "malpractice case" is not only "related to" the MDL 2885, but the MDL Court and the interpretation of its orders (and even the meaning of the official MDL transcript of the March 13, 2024, hearing) are central to every claim alleged. Any other Court deciding these issues would therefore be attempting to interpret the orders of the MDL Court itself, which would make no sense; rather transfer of this proceeding to MDL 2885 would clearly "promote the just and efficient conduct" of the *Canup* action and serve the interests of justice. *See* 28 U.S.C. 1407(a).

Finally, it is worth noting that on September 19, 2025, the MDL Court recommended termination of this MDL "subject to this Court's continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration of these cases." The MDL Court further provided it, "would welcome the reopening of the MDL docket and transfer of any such action to this Court for further proceedings, given the Court's familiarity and experience with this litigation" (see JPML Dkt. 2027). As such, transfer is not only appropriate, but necessary. The MDL Court has important institutional knowledge about the litigation, settlement and the MDL Court's Orders at issue in this lawsuit. The *Canup* case provided in the attached Schedule of Action clearly qualifies for transfer under the MDL Court's Order and 28 U.S.C 1407.

---

[1] See Status Conference Hearing Transcript Dated March 13, 2024, attached as Exhibit 3 to the memorandum in support of this motion, and see also Pretrial Order No. 7 (Dkt. 376), Plaintiff Leadership Appointments, In Re: 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, May 22, 2019.

The motion is supported by the accompanying memorandum of law and exhibits, a

Schedule of Action, a copy of the docket sheet and petition, and a proof of service.

DATE: December 10, 2025   Respectfully submitted,

        /s/ *Bryan F. Aylstock*
        Bryan F. Aylstock, Florida Bar No. 782634
        AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
        17 East Main Street, Suite 200
        Pensacola, FL 32502
        Phone: (850) 202-1010
        Facsimile: (850) 916-7449
        Email: baylstock@awkolaw.com

        *Plaintiffs' Counsel*

Case 3:26-cv-03359-MCR-ZCB    Document 23    Filed 12/29/25    Page 4 of 234

USCA11 Case: 25-11987    Case: MDL No. 2885    Document: 3-2    Document 2033    Date Filed: 12/10/25    Date Filed: 06/05/2026    Page: 71    Page 1 of 9    of 202

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

<table>
<tr><td>IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION</td><td>MDL No.: 2885</td></tr>
</table>

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER TAG-ALONG ACTION *BRANDON CANUP V. BRYAN F. AYLSTOCK, ET AL.* TO THE *IN RE 3M* COMBAT ARMS PRODUCT LIABILITY LITIGATION MDL

### I.    INTRODUCTION

This purported "legal malpractice" lawsuit, which falsely alleges that the undersigned was his attorney, is nothing more than a full-throated attack on the 3M Combat Arms Earplug MDL Court's ("MDL Court") orders and the 3M Combat Arms global settlement ("MDL Settlement"). *See* Plaintiff's Original Petition ("Petition") (attached as Exhibit 1).  Plaintiff's Complaint is replete with allegations regarding the interpretation and implementation of the MDL Court's Orders, and its sole basis for the alleged "malpractice" by Aylstock and Bradford (and Burns) is based upon their appearance at an MDL hearing wherein the official MDL transcript clearly states that the MDL asked for their attendance as only on behalf "Plaintiffs' Leadership."  Indeed, Canup's own attorney was present and represented him at the MDL hearing, as reflected in that transcript.

What this case is really about is the MDL Settlement, and the MDL Court's implementation of that settlement and management of its docket, including Case Management Order No. 57 wherein the MDL Court created a specific framework for those litigants like this Plaintiff who opted not to participate in the Settlement Program as outlined in the MDL Settlement. Also directly referenced and challenged by this lawsuit are the MDL Courts' Common Benefit Order No. 3,

1

Pretrial Order No. 9 Stipulated Order Governing Confidentiality and Privilege, and the Orders granting withdrawal of Plaintiff's actual former counsel, Cliff Roberts, Gregory Brown and Fleming, Nolen & Jez.[1] Plaintiff's complaint then falsely impugns the MDL Settlement and the MDL Court, alleging that the MDL Settlement's terms cause material conflicts of interest between Plaintiffs and Defendants. Finally, the complaint then falsely states that Aylstock and Bradford were his attorneys based solely upon their appearance on behalf of MDL Leadership and at the explicit request of the MDL Court as reflected in the official MDL transcript of those proceedings – proceedings in which Canup himself brought his own attorney who appeared on the record specifically on behalf of Canup.

It goes without saying that the Orders of the MDL Court, and the MDL Settlement overseen by the Court, are common to all 3M MDL cases. Further, it would be contrary to judicial efficiency to allow 3M claimants, such as *Canup*, to litigate the propriety and interpretation of the MDL Court's orders and MDL Settlement implementation in courts other than the MDL Court. As such, transfer is proper to promote centralization and the efficient conduct of this case and of the litigation overall. *See* 28 U.S.C. § 1407(a).

## II.     ARGUMENT

The facts that give rise to this case stem from one of the largest mass torts cases ever handled by the Federal Court system – the 3M combat arms earplug litigation – with more than 350,000 individual claimants at its peak. A global settlement of all cases was reached in MDL

---

[1] *See* Case Management Order No. 57 (Dkt. 3811), Case Management Order for Any Ongoing Litigation Against Defendants, In Re: 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, August 29, 2023; Common Benefit Order No. 3 (Dkt. 1659), 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, February 17, 2021; and Pretrial Order No. 9 (Dkt. 442), Stipulated Order Governing Confidentiality and Privilege, 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, June 17, 2019.

2885 in August of 2023, which ultimately covered more than 252,000 claimants. The Honorable

M. Casey Rodgers made the following comments at the September 8, 2023, Case Management

Conference (*See* Twenty-Third Case Management Conference transcript attached as Exhibit 2):

> But the message here this morning, aside from thanking people for their efforts in getting to the litigation – and getting the litigation to this result, and **I will be thanking some people here in just a moment, but what I want to say on the record this morning, once and for all, is that this settlement is fair. It is fair to the 250,000-plus plaintiffs in the MDL.** (emphasis added). … [But] I also believe it is fair to 3M. And I say this from the perspective of someone who is rather uniquely positioned. I'm positioned as a neutral. And I don't think there's anyone who knows and understands this litigation, both its intricacies and broader whole of it, as well as its risks, more thoroughly as I do as a neutral.
>
> I've been in the trenches of the litigation with the parties since day one, April 3rd, 2019. I've dealt with discovery. I've worked with the government. I've reviewed and ruled on thousands of motions, thousands of objections. I've presided over six trials with nine plaintiffs and listened to the record of ten other trials. I followed closely the appeals of the bellwethers and the Aearo defendant's bankruptcy. No one is in a better position or more credible position to evaluate this settlement than I am. And again I say to all of you that the settlement is fair and the settlement is smart. (Transcript at 6:10 – 7:8)
> ***
> And importantly, those who criticize the settlement, they have no knowledge of the extraordinary risk and extraordinary costs associated with continued litigation of any Combat Arms Earplug claim, much less the costs and the risk of litigating hundreds of thousands of claims; and to criticize it based simply on jury verdicts, theoretical ideals, or market vagaries is just simply not to understand this uniquely complex litigation at all. (Transcript at 8:2-9)
> ***
> And also thank the mediators -- Judge Herndon, Judge Cannon, Judge Keyes -- for bringing us to this resolution. And I also want to thank the negotiating plaintiffs' counsel -- Bryan Aylstock, Clayton Clark, Chris Seeger, Dan Gustafson -- and their teams for working with 3M and Aearo, both to bring this settlement to fruition but also in the coming months as we go forward to work together to successfully reach the participation levels set forth in the Settlement Agreements. I think, as Judge Jones said, this is going to be a long-term commitment for both sides to work together. (Transcript at 25:15-24).

The MDL Settlement was posted on the official website for MDL 2885. *See https://www.uscourts.gov/courts/flnd/3M-MSA_1.pdf* (last accessed Dec. 10, 2025). The MDL Court issued multiple orders implementing the settlement, and explained the process for those claimants who chose to opt-out of the settlement. *See https://www.uscourts.gov/courts/flnd/3M-Case_Management_Order_No_57_Docket_Control_Order_and_Exhibits_1-3.pdf* (last accessed Dec. 10, 2025). As part of the process under CMO 57, the MDL Court ordered Plaintiff *Canup* to appear at an official hearing to discuss his decision to opt out of the MDL settlement. Following that MDL hearing, *Canup* voluntarily settled his lawsuit against 3M during the CMO 57 opt out process on September 30, 2024. Petition at ¶ 5.20. Plaintiff was represented by attorney David Gamble at the MDL hearing and when he settled his 3M lawsuit. *Id.* at ¶ 5.6.

After voluntarily settling his 3M case, Plaintiff filed this action on October 27, 2025. *See* Petition (Exhibit 1). Plaintiff's lawsuit contains allegations against eight Defendants which Plaintiff identified as two separate groups, the "Texas Defendants" and the "Florida Defendants". *Id.* at ¶¶ 2.10-2.11. The "Texas Defendants" are Cliff Robert, Gregory Brown and Fleming, Nolan & Jez LLP. Those lawyers and law firm were hired by Plaintiff and represented him in the 3M litigation until the MDL Court granted their withdrawal motion in January 2024. *Id.* at ¶ 5.6. The "Florida Defendants" are Aylstock, Bradford, Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), Burns and Mostyn Law. Aylstock was appointed as Plaintiffs' Lead Counsel by the MDL Court. *See* https://www.flnd.uscourts.gov/sites/flnd/files/mdl/Pretrial_Order_No._7.pdf (last accessed Dec. 10, 2025). Burns of Mostyn Law was appointed Plaintiffs' Liaison Counsel by the MDL Court. *Id.* It is undisputed that the Florida Defendants were never hired by *Canup* to represent him. Their only involvement and interactions with Plaintiff were on behalf of Plaintiffs' MDL Leadership at the request of the MDL Court, specifically leading up to the March 13, 2024,

4

MDL Court-ordered Status Conference and subsequent settlement conference.    *See* Petition (Exhibit 1) and Status Conference Transcript (attached as Exhibit 3).[2]

Despite the fact that the MDL Court granted the Texas Defendants' withdrawal motion, the fact that the Florida Defendants' only involvement in Plaintiff's case was their appearance at hearing on behalf of Plaintiffs' MDL Leadership at the request of the MDL Court, the fact that Plaintiff hired new counsel, David Gamble, who appeared on his behalf at that conference before the MDL Court, and the fact that Plaintiff voluntarily settled his case against 3M during the opt-out process, Plaintiff *Canup* filed this action under the false pretense of a legal malpractice claim,[3] and in so doing seeks to collaterally attack the Orders of the MDL Court, appointed leadership for the MDL for fulfilling their duties under the MDL Court's Orders, and the MDL Settlement.

Specifically, Plaintiff's allegations against the Texas Defendants are premised upon criticisms of the MDL Settlement terms and the disclosure thereof, the MDL Court's Settlement Implementation Orders (including CMO 57), and the Texas Defendants withdrawal motion which was granted by the MDL Court. None of these Orders of the MDL Court were ever opposed by Plaintiff *Canup* in the MDL, and none was ever appealed. *See* Petition at ¶¶ 5.5, 5.6, 5.7, 6.1-6.26.

---

[2] The status conference began with the Court welcoming Mr. Canup and his attorney Mr. Gamble, introducing herself, and then telling Mr. Canup: "Also in the courtroom today from plaintiffs' leadership there's Mr. Bryan Aylstock, Mr. Brad Bradford and Mr. Mike Burns." Exhibit 3, Status Conference Transcript at 3:8-9. The MDL Court continued by explaining why she thought it was important to meet with those plaintiffs litigating their cases (like Mr. Canup) so that she could give her perspective of the litigation having overseen it for 5 years, stating: "Also, as you can see, leadership counsel from the plaintiffs' side is here if you have questions of them." *Id.* at 4:23-25. The MDL Court continued by explaining why she thought it was important to meet with those plaintiffs litigating their cases (like Mr. Canup) so that she could give her perspective of the litigation having overseen it for 5 years, stating: "Also, as you can see, leadership counsel from the plaintiffs' side is here if you have questions of them." *Id.* at 28:25-29:1.

[3] Plaintiff's counts for Fraud, Failure to Disclose Facts, Fraudulent Inducement, Breach of Fiduciary Duty, Fraud by Non-Disclosure and Civil Conspiracy are simply legal malpractice allegations under attempted different names.

Plaintiff's allegations against the Florida Defendants are similarly based upon criticisms of the MDL Settlement terms, the MDL Court's Settlement Implementation Orders (including CMO 57), and most importantly, the Florida Defendants' appearance at the March 13, 2024 status conference and review of Plaintiff's information at the MDL Court's request, and the requirement that Plaintiff comply with the MDL Courts Orders, including MDL Common Benefit Order No. 3, and MDL Pretrial Order No. 9 Stipulated Order Governing Confidentiality and Privilege allowing Plaintiff to access common benefit work product.

## A.    The MDL Settlement

Plaintiff's allegations of there being actionable misconduct by Plaintiff's Leadership in the MDL Settlement structure, terms, and disclosure has potentially broad implications because the MDL Settlement terms apply to all 252,000 of the settled cases in the 3M MDL.    After many years of litigation in the MDL, including no less than 16 bellwether trials, the MDL Settlement was brought about under the guidance of the MDL Court, and specifically negotiated under the watchful eyes of the Honorable David Herndon (Ret.), who was the Court-appointed special master, and the Honorable Hope Cannon – the magistrate judge assigned by the MDL Court. Further, it goes without saying that the MDL Court is intimately familiar with the MDL Settlement's terms and has remained active in the administration of the settlement.    Given the MDL Court's "familiarity and experience with this litigation" and the potential implications of Plaintiff's allegations to the MDL Settlement, transfer is warranted.    *See* JPML Dkt. 2027; 18 U.S.C. 1407.

## B.    CMO 57 and Florida Defendants role in Plaintiff's case

Case Management Order No. 57 outlines the process and procedures for claimants who chose to opt out of the MDL Settlement. *See https://www.uscourts.gov/courts/flnd/3M-*

*Case_Management_Order_No_57_Docket_Control_Order_and_Exhibits_1-3.pdf* (last accessed Dec. 10, 2025). Part of that Court-ordered process includes a required in-person status conference before the MDL Court and a subsequent settlement conference. The MDL Court requested Florida Defendants, on behalf of Plaintiffs' MDL leadership, to review the specific case facts for those claimants, including Plaintiff, who chose to opt out of the Global Settlement and litigate their cases (Exhibit 3, Status Conference Transcript at 33:19-25). The MDL Court wanted Florida Defendants to familiarize themselves with the case-specific information to assist those Plaintiffs who were considering whether or not to opt out of the settlement program with the pros and cons of litigating their cases, how the specific facts of their cases would pertain to the litigation generally and how the specific facts of their cases could apply to both parts of the settlement program, the expedited or deferred pay portion, and the extraordinary injury fund (Exhibit 3, Status Conference Transcript at 4:6-12, 5:7-15). The MDL Court also asked Florida Defendants to attend Plaintiff *Canup*'s Status Conference on March 13, 2024, and to be available if requested during the subsequent settlement conference (Exhibit 3, Status Conference Transcript at 4:20-5:6). The MDL Court is intimately familiar with CMO 57 and the circumstances surrounding Plaintiff's Status Conference and Settlement Conference and is certainly in the best position to address Plaintiff's allegations involving both (see JPML Dkt. 2027).

**C.     Common Benefit Order No. 3, Pretrial Order No. 9 Stipulated Order Governing Confidentiality and Privilege**

Finally, *Canup* criticizes Florida Defendants for their roles on behalf of MDL Leadership for requiring Plaintiff and his lawyer, David Gamble, to review, execute and comply with Orders of the MDL Court related to common benefit, confidentiality and privilege. Each of these Orders required a claimant (or his attorney) to execute of documents before access could be granted to

Case 3:26-cv-03359-MCR-ZCB    Document 23    Filed 12/29/25    Page 11 of 234

USCA11 Case: 26-11887    Case: MDL No. 2885    Document: 6-1    Document 2033-1    Date Filed: 06/05/2026    Filed: 12/10/25    Page: 78    Page 8 of 9    78 of 202

any confidential information or work product generated in the context of the 3M Combat Arms MDL.

*See* https://www.flnd.uscourts.gov/sites/flnd/files/mdl/Pretrial_Order_No._9.pdf and https://www.flnd.uscourts.gov/sites/flnd/files/mdl/Common_Benefit_Order_No._3_and_Exhibit_A.pdf (last accessed Dec. 10, 2025). As stated above, the MDL Court is certainly in the best position to determine the rights and requirements of its Orders and address *Canup*'s allegations involving those Orders.

### III.    CONCLUSION

If plaintiffs could challenge MDL Orders or MDL Settlement terms by filing in separate courts throughout the state and federal systems, every adverse order in a nationwide MDL could be sidestepped simply by filing a "malpractice" claim against appointed MDL leadership and asking those courts to "take a different view." Such would defeat the essential purpose of MDL consolidation and undermine nationwide judicial management of the 3M Combat Arms Product Liability Litigation.

The MDL Court specifically retained jurisdiction for circumstances just like this one, recommending termination of the MDL, "subject to this Court's continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration of these cases." The MDL Court further provided it "would welcome the reopening of the MDL docket and transfer of any such action to this Court for further proceedings, given the Court's familiarity and experience with this litigation" (see JPML Dkt. 2027).

8

Because Plaintiff's claims hinge on attacking or revisiting MDL Orders and the MDL Settlement, the only appropriate forum is the MDL Court.  For the reasons discussed above, the panel should grant this Motion and transfer the above-captioned case into the MDL.

Dated: December 10, 2025

/s/ *Bryan F. Aylstock*

Bryan F. Aylstock, Florida Bar No. 782634
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449
Email: baylstock@awkolaw.com

*Plaintiffs' Counsel*

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | MDL No.: 2885 |

## SCHEDULE OF ACTION

| CASE CAPTION | COURT | CIVIL ACTION NO. | JUDGE |
|---|---|---|---|
| **Plaintiff:** Brandon Canup<br><br>**Defendants:** Bryan F. Aylstock; Bobby Bradford; Michael Burns; Cliff Roberts; Gregory Brown; Aylstock, Witkin, Kreis & Overholtz, PLC; Fleming Nolen & Jez LLP; Mostyn Law Firm PC | N.D. of Texas, Fort Worth Division | 4:25-cv-01255-Y | Judge Terry R. Means |

Dated: December 10, 2025

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock, Florida Bar No. 782634
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449
Email: baylstock@awkolaw.com

*Plaintiffs' Lead Counsel*

# Tab 27

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BRANDON CANUP | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | **Case No.**: 4:25-cv-01255 |
| | ) | |
| v. | ) | |
| | ) | |
| BRYAN F. AYLSTOCK, BOBBY | ) | |
| BRADFORD, MICHAEL BURNS, | ) | |
| CLIFF ROBERTS, GREGORY | ) | |
| BROWN, AYLSTOCK WITKIN KREIS | ) | |
| & OVERHOLTZ PLC, FLEMING | ) | |
| NOLEN & JEZ LLP and MOSTYN | ) | |
| LAW FIRM PC, | ) | |
| | ) | |
|    Defendants. | ) | |

## DEFENDANTS BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREISS & OVERHOLTZ PLLC, AND BOBBY BRADFORD'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

**COMES NOW**, Defendants, **BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREISS & OVERHOLTZ PLLC,** AND **BOBBY BRADFORD** ("Defendants"), **appearing specially** and file their *Motion to Dismiss* pursuant to Fed. R. Civ. P. Rule 12(b)(2);(3);(6) and in support thereof, state the following:

## INTRODUCTION

Despite being in its infancy, this purported legal malpractice matter already has an interesting history. First, the facts that give rise to this case stem from one of the largest mass torts cases ever handled by the Federal Court system – the 3M earplug litigation – with more than 350,000 individual claimants at its peak. Second, Bryan F. Aylstock, Bobby Bradford and the lawyers at Aylstock, Witkin, Kreis and Overholtz, PLLC, never represented Plaintiff, but rather were appointed as Lead Counsel for the MDL by United States District Judge M. Casey Rodgers on or about May 22, 2019.[1] There can be no dispute that Bryan F. Aylstock, Bobby Bradford and the lawyers at Aylstock, Witkin, Kreis and Overholtz, PLLC's only interactions with Plaintiff were on behalf of MDL Leadership at the request of the MDL Court. Finally, it is clear that Plaintiff's Complaint is really nothing more than a collateral attack on the 3M Combat Arms global settlement, the MDL Court's Orders, including Case Management Order No. 57 wherein Judge Rodgers created a specific framework for those litigants, like this Plaintiff, who opted not to participate in the Settlement Program as outlined in the Master Settlement Agreement, Common Benefit Order No. 3, Pretrial Order No. 9 Stipulated Order Governing Confidentiality and Privilege and the Orders granting withdrawal of Plaintiff's actual

---

[1] See Pretrial Order No. 7, Plaintiff Leadership Appointments, In Re: 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, May 22, 2019.

former counsel, Cliff Roberts, Gregory Brown and Fleming, Nolen & Jez. [2] This Court should dismiss the case in its entirety.

## MOTION TO DISMISS

1.      Aylstock, Witkin, Kreis & Overholtz, P.L.C. is a Florida professional limited liability company and is located in Pensacola, Florida. [DOCUMENT 1-1, § 2.2].

2.      Its "Principal Address" and "Mailing Address" are 17 East Main Street, Suite 200, Pensacola, FL 32502. [See Affidavit of Bryan Aylstock attached as Exhibit "A" to this Motion].

3.      Aylstock, Witkin, Kreis & Overholtz, PLLC does not have any law offices in Texas, nor do any of its lawyers have a Texas law license. [Id.]

4.      Bryan Frederick Aylstock is a licensed Florida lawyer and a Florida resident who may be served in Pensacola, Florida. [Id.; See also DOCUMENT 1-1, § 2.5].

5.      Bryan F. Aylstock is listed as a manager whose address is 17 East Main Street, Pensacola, FL 32502. [Id].

6.      Bobby J. Bradford is a licensed Florida lawyer and a Florida resident who may be served in Pensacola, Florida. [DOCUMENT 1-1, § 2.6].

---

[2] See Case Management Order No. 57, Case Management Order for Any Ongoing Litigation Against Defendants, In Re: 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, August 29, 2023.

5232141_1

7.    Both Bryan F. Aylstock and Bobby Bradford are Florida residents and members of Aylstock, Witkin, Kreis and Overholtz, PLLC. [Id].

8.    None of these Defendants have requested or solicited to legally represent the Plaintiff. [Id].

9.    None of these Defendants have represented or made an appearance for the Plaintiff in any Texas court whether it be state or federal. [Id].

10.    This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which shows Defendants were never counsel for Plaintiff.  Plaintiff's counsel was the "Texas Defendants" from this lawsuit until their withdrawal was granted and then David Gamble.

11.    This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which all pleadings filed on Plaintiff's behalf were filed by the "Texas Defendants" from this lawsuit until their withdrawal was granted and then by David Gamble.  All pleadings filed by 3M in Plaintiff's case from the 3M MDL were served on the "Texas Defendants" from this lawsuit until their withdrawal was granted and then David Gamble.  None were filed by on served upon Defendants.

12.    Defendants never spoke to Plaintiff other than at the March 13, 2024 Status Conference and Settlement Conference.

13.    This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which shows subsequent mediations, including the mediation

5232141_1

wherein Plaintiff voluntarily settled his case against 3M, were attended by Plaintiff's counsel, David Gamble, and not Defendants.

14. This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which shows the actual docket entries for the March 13, 2024 Status Conference and Settlement Conference list Defendants as appearing on behalf of 3M Plaintiff's Leadership and David Gamble appearing as Plaintiff's counsel.

15. This Court can take judicial notice of the transcript from the March 13, 2024 Status Conference wherein the MDL Court repeatedly stated Defendants were present on behalf of the 3M MDL Plaintiff's Leadership. The MDL Court requested Defendants' presence at the Status Conference.

16. This Court can take judicial notice of the transcript from the March 13, 2024 Status Conference wherein the MDL Court made it abundantly clear that whether Plaintiff and/or his counsel, David Gamble, chose to meet with Defendants was a voluntary decision.

17. The Plaintiff even categorizes the above entities and individuals as "Florida Defendants" as opposed to the "Texas Defendants." [DOCUMENT 1-1, § 2.10].

18. This Honorable Court can take judicial notice of the cities and counties within the jurisdiction of U.S. District Court for the Northern District of Florida, and Defendants request this Court to do so.

5

5232141_1

19.    The Plaintiff admits that the *In re: 3M Combat Arms Earplug Products Liability Litigation*, Cause No. 3:19-md-02885 ("MDL") was litigated in "Northern District of Florida for coordinated pretrial proceedings[.]" [DOCUMENT 1-1, § 5.1].

20.    On August 29, 2023, a global settlement agreement ("MSA") was reached "between 3M and Plaintiffs' Leadership in the MDL" in Florida. [DOCUMENT 1-1, § 5.4].

21.    Aylstock was appointed by the MDL Court to serve as "Lead Counsel" for the plaintiffs in the MDL, and the MDL Court set forth his duties (which included settlement discussion) in PTO No. 7 referenced above.

22.    The Plaintiff admits that he only retained "Texas Defendants Brown, FNJ, and Roberts" and David Gamble ("Mr. Gamble"). [DOCUMENT 1-1, § 5.6]; [DOCUMENT 1-1, § 5.6]. Further, the Plaintiff admits he never hired or retained the Defendants in this case.

23.    On January 21, 2024, Canup officially opted out of the MSA which was located in Florida. [DOCUMENT 1-1, § 5.7].

24.    "On February 5, 2024 Canup was ordered by the MDL Court to appear "in person, with counsel" at a status conference in Pensacola, Florida scheduled for March 13, 2024." [DOCUMENT 1-1, § 5.9].

25.    It is undisputed that the Plaintiff brought his counsel, Mr. Gamble to this MDL Court ordered hearing because he was his retained lawyer.

26.    The Plaintiff's case against the Defendants relates to the MDL Court ordered status conference and settlement conference that took place on March 13, 2024, in Pensacola, Florida, communications between Bradford and Plaintiff's lawyer, David Gamble at the MDL Court's request leading into the March 13, 2024 hearings and limited communications between Bradford and Plaintiff's lawyer, David Gamble, after the March 13, 2024 hearings.

27.    The entirety of Defendants involvement was at the request of the MDL Court on behalf of Plaintiffs' 3M Leadership.

28.    Plaintiff claims the Defendants "made a formal appearance in the MDL Court on Canup's behalf at the March 13, 2024, status conference." [DOCUMENT 1-1, § 5.10].

29.    The sole basis for this claim is a hearing transcript where the official court reporter for the Northern District of Florida in the caption of the transcript described defendants (as well as Gamble) as appearing for the "FOR THE PLAINTIFF." [DOCUMENT 1-1, § 5.10]. However, throughout the official court transcript of the proceeding itself, the MDL Court itself described defendants as appearing only on behalf of leadership, and were there at the request of the MDL Court to answer any questions about the global settlement of the claims within the MDL. [3]

---

[3] The March 13, 2024 Status Conference transcript is attached as Exhibit B.

7

30.    Plaintiff communicated exclusively through Mr. Gamble, his lawyer, during the court ordered hearing and communications with the Defendants. *See* [DOCUMENT 1-1, § 6.29(b)] ("through Gamble"); [DOCUMENT 1-1, § 6.47] (same); [DOCUMENT 1-1, § 6.50] (same).

31.    Plaintiff claims the Defendants gave him "individual legal advice" at a court ordered closed-door settlement conference (and in the presence of his lawyer Gamble) after the hearing on March 13, 2024. [DOCUMENT 1-1, § 5.11]. It goes without saying that this alleged act, **which did not happen**, occurred in Pensacola, Florida and not Texas.

32.    Because Mr. Gamble was his lawyer, Magistrate Judge Hope Cannon "led" the two to "a closed-door settlement conference." [DOCUMENT 1-1, § 5.11]. It is undisputed that Magistrate Judge Hope Cannon was the one who "conducted" this settlement conference, not the Defendants. [DOCUMENT 1-1, § 5.11].

33.    After the two were in the conference room in the United States District Court for the Northern District of Florida in Pensacola, Florida, "Judge Cannon brought in Aylstock, Bradford[.]" on behalf of Plaintiffs' MDL Leadership [DOCUMENT 1-1, § 5.11] and Exhibit B.

34.    The plain language of the Plaintiff's *Original Petition* proves that the events or omissions giving rise to the Plaintiff's alleged claims against these Defendants occurred in Florida.

## INCORPORATED MEMORANDUM OF LAW

### I. THIS HONORABLE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS.

The Federal Rules of Civil Procedure allow a defendant to assert a lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. Rule 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* However, this Honorable Court need not "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The U.S. Supreme Court has held that personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "Personal jurisdiction comes in two flavors: general and specific." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021).

### 1. THE PLAINTIFF HAS FAILED TO PROVE GENERAL PERSONAL JURISDICTION.

5232141_1

"A state court may exercise general jurisdiction only when a defendant is "essentially at home" in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant." *Id.* "Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." *Id.* However, general personal jurisdiction is only permitted when "a defendant has 'continuous and systematic general business contacts' with the forum state" *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). These contacts must be "substantial." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). "A nonresident defendant's contacts must 'demonstrate a business presence in Texas,' and the Fifth Circuit has emphasized the distinction between 'doing business *with* Texas ... [and] doing business in Texas.' " *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 616 (N.D. Tex. 2014) (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)) (emphasis in the original)

In other words, "[a] corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business." *Harris v. Black Clawson Co.*, 961 F.2d 547, 549 (5th Cir. 1992). "This circuit applies the 'total activity' test

to determine a corporation's principal place of business for diversity purposes." *Id.*

"This test includes both of the traditional tests for determining principal place of

business: the 'nerve center' test and the 'place of activities' test." *Id.* Under the "total

activity" test, the court considers

> the general rules of the two tests in light of the particular
> circumstances of a corporation's organization [and]
> balance[s] the facts [of the particular case before it] to
> determine ... the location of the corporation's principal
> place of business.

*Id.*

> [U]nder the "nerve center" test, the state in which the
> corporation has its nerve center, or "brain," is its principal
> place of business, and under the "place of activity" test,
> the state in which the corporation carries out its operations
> is its principal place of business.

*J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 404 (5th Cir. 1987).

This determination is important because "every corporation has one and only

one principal place of business." *J.A. Olson Co.*, 818 F.2d at 406. It is undisputed

that Aylstock, Witkin, Kreis & Overholtz, PLLC is registered with the Florida

Division of Corporations. Its "Principal Address" and "Mailing Address" are 17 East

Main Street, Suite 200, Pensacola, FL 32502. Aylstock, Witkin, Kreis & Overholtz,

PLLC does not have any law offices in Texas, nor do any of its lawyers have a

11

5232141_1

licensed Texas attorney.[4] Further, Bryan F. Aylstock is listed as a manager whose address is 17 East Main Street, Pensacola, FL 32502. Both Bryan F. Aylstock and Bobby Bradford are Florida residents. Clearly, all Defendants are Florida residents or are at home in Florida; thus, dismissal is proper. The Plaintiff has failed to prove, let alone plead necessary facts to satisfy this "high bar." *Johnson*, 21 F.4th at 323.

### 2. THE PLAINTIFF HAS FAILED TO SATISFY SPECIFIC PERSONAL JURISDICTION.

"A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.' " *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101, 109 (5th Cir. 2018).

The Fifth Circuit has "consolidated the personal jurisdiction inquiry into a convenient three-step analysis: '(1) whether the defendant ... purposely directed its

---

[4] *See Anness v. Gen. Elec. Co.*, 2014 WL 12580494, at *3 n.2 (N.D. Tex. June 5, 2014) (quoting *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 617 (N.D. Tex. 2014)) (noting facts that typically support general jurisdiction include "maintaining offices or property in Texas, stationing employees in Texas, maintaining bank accounts in Texas, or paying Texas taxes.").

5232141_1

activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.' " *Luv N' care, Ltd.*, 438 F.3d at 469. In other words, "specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). This principle means "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). As a result, any acts or contacts allegedly committed by the Defendants not related to the Plaintiff's claims against the Defendants must be ignored.

### 3. Dismissal is Proper Because General and Specific Personal Jurisdiction is Lacking.

Equipped only with conclusory allegations, the Plaintiff makes the claim that Defendants somehow are subject to personal jurisdiction in Texas, yet his own *Original Petition* proves otherwise. In simple terms, the Plaintiff states personal jurisdiction exists because of the following reasons. **First**, Plaintiff states that the Defendants "have purposefully directed activities toward Texas" [DOCUMENT 1-1, § 3.2] but without any explanation as to what activities those were. Without some

particular legal activity that Defendants allegedly performed in Texas, Plaintiff's claim that Defendants are subject to personal jurisdiction must fail.

**Second**, Plaintiff states that Defendants "provid[ed] legal services to a Texas resident" and "appear[ed] and purport[ed] to act on behalf of a Texas resident in litigation proceedings connected to Texas[.]"[DOCUMENT 1-1, § 3.2]. This statement directly conflicts with the Plaintiff's own *Original Petition*. Within his *Original Petition*, the Plaintiff alleges that the Defendants made an appearance in Pensacola, Florida on **March 13, 2024**, not in Texas [DOCUMENT 1-1, § 6.28]. Plaintiff's status as a Texas resident is not determinative of jurisdiction over these Defendants. See generally, *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

**Third**, Plaintiff states that Defendants "performed common benefit work in the underlying litigation entitling them to collect fees from thousands of Texas Residents[.]" [DOCUMENT 1-1, § 3.2].   At no point does Plaintiff allege that this common benefit work was performed in Texas, that he was charged for any common benefit work, nor that Defendants received any compensation as part of Plaintiff's case.  Nothing about performing this common benefit work could or should subject them to Texas jurisdiction as the Defendants were obligated to do so based upon their appointment as Lead Plaintiffs' Counsel in the 3M MDL.

**Fourth**, Plaintiff makes the blanket assertion that the Defendants "have purposefully availed themselves of the privileges and benefits of conducting

5232141_1

business in Texas[.]" [DOCUMENT 1-1, § 3.2]. However, Defendant does not have a single office in Texas, a single lawyer licensed in Texas, and did not litigate the MDL lawsuit in Texas, so Defendants have not received "the privileges and benefits of conducting business in Texas[.]" [DOCUMENT 1-1, § 3.2].

Notably, Fifth Circuit case law and precedent disagree with the Plaintiff's conclusory statement. The Plaintiff equates attempting to increase a class size for a lawsuit through national advertising with purposely availing itself to personal jurisdiction in each of the fifty states of the United States. "[A]dvertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction." *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987).

> Nor is Plaintiffs' allegation that Defendants Original and MTV broadcast or displayed Plaintiffs' designs sufficient to prove purposeful availment in Texas. In a similar case, the Fifth Circuit declined to exercise personal jurisdiction over a non-resident defendant on the basis of a nationwide television broadcast. The court reached its decision after concluding that even though the defendant had broadcast a television segment nationally, Texas had not been its "focal point."

*Miller v. Original Media Publ'g LLC*, 2013 WL 12109027, at *3 (W.D. Tex. Sept. 13, 2013) (citation omitted).

15

5232141_1

"Advertising and marketing through national media is insufficient, as are isolated visits to a forum." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).[5]

Plaintiff has not provided a scintilla of evidence that these Defendants are subject to the jurisdiction of the Texas courts.  The legal services provided by these Defendants were as Lead Plaintiffs' Counsel for the 3M MDL litigaiton, were provided by Florida lawyers and the only interaction that these Defendants ever had with Plaintiff were after the MDL Court asked Defendants to appear on behalf of Plaintiffs' Leadership at the March 13, 2024 conferences. As a result, dismissal is proper.

## II.    TEXAS IS THE IMPROPER VENUE FOR PLAINTIFF'S CLAIMS.

Under Rule 12(b)(3), a party may move to dismiss or transfer a claim for improper venue. Fed. R. Civ. P. Rule 12(b)(3). "If venue is improper, the Court has broad discretion to dismiss the case or, in the interest of justice, transfer the case to any district where venue is proper." *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 606 (N.D. Tex. 2017). "This Court, in particular, has consistently held that the plaintiff bears the burden of sustaining venue in the district in which the suit was brought." *Id.* "Moreover, under both Rule 12(b)(1) and Rule

---

[5] *See, e.g., Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir. 2002) ("[A]dvertisements are insufficient to establish personal jurisdiction."); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ("An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law.").

12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). "[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). The Plaintiff has failed to meet this burden for the reasons stated in this motion and the case should be dismissed as to these Defendants.

## III.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Plaintiff has raised four claims against the Defendants which are (1) "Fraud by Non-Disclosure," (2) "Breach of Fiduciary Duty," (3) "Fraudulent Inducement," and (4) "Civil Conspiracy." [DOCUMENT 1-1, §§6.27-6.55; 6.56-6.66]. Notably, the Plaintiff's "Civil Conspiracy" is not a standalone tort; thus, it is dependent on the success of the other claims. "In Texas, 'civil conspiracy is a theory of vicarious liability and not an independent tort.'" *Curtis v. Cerner Corp.*, 621 B.R. 141, 181 (S.D. Tex. 2020) (quoting *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019)). As a result, we will address each claim with this information in mind.

5232141_1

### 1. THE PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR BREACH OF FIDUCIARY DUTY.

The Plaintiff states that this alleged breach was "fraudulent and/or malicious;" thus, the heightened pleading standard of Federal Rule of Civil Procedure Rule 9 applies. [DOCUMENT 1-1, § 6.45]. "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 215 (5th Cir. 2018). The Plaintiff cannot even prove the first element of this alleged claim. "A fiduciary relationship, of course, is a *sine qua non* of a breach of fiduciary duty claim." *Belliveau v. Barco, Inc.*, 987 F.3d 122, 132 (5th Cir. 2021). "Whether a fiduciary duty exists is a question of law." *Kiger v. Balestri*, 376 S.W.3d 287, 290 (Tex. App. 2012). "However, an attorney-client relationship must exist before a fiduciary duty arises." *Id.* "The existence of an attorney-client relationship is determined under state law." *Harrison v. United States*, 2019 WL 3719038, at *5 (N.D. Tex. June 28, 2019), *aff'd*, 2022 WL 873829 (5th Cir. Mar. 24, 2022) (quoting *Hopper v. Frank*, 16 F.3d 92, 95 (5th Cir. 1994)).

As outlined within, the Defendants were lead counsel for all Plaintiffs of the MDL, whereas Mr. Gamble represented the Plaintiff specifically. Despite admitting he withdrew from the [global settlement agreement ("MSA")] on **January 21, 2024,**

18

the Plaintiff claims the Defendants were his lawyer at the court ordered status conference on **March 13, 2024,** when he was told to bring the counsel of his choice. [DOCUMENT 1-1, § 5.7]. If he genuinely believed the Defendants to be his lawyers, the Plaintiff would not have communicated through Mr. Gamble, his lawyer. *See* [DOCUMENT 1-1, § 6.29(b)] ("through Gamble"); [DOCUMENT 1-1, § 6.47] (same); [DOCUMENT 1-1, § 6.50] (same). The objective facts prove that the Defendant did not have or breach a fiduciary duty to the Plaintiff.

The Fifth Circuit has held that a federal court must "examine the parties' statements and action under an objective standard rather than their subjective beliefs." *Harrison v. United States*, 2019 WL 3719038, at *6 (N.D. Tex. June 28, 2019), *aff'd*, 2022 WL 873829 (5th Cir. Mar. 24, 2022) (quoting *Tierra Tech de Mexico SA de CV v. Purvis Equip. Corp.*, 2016 WL 4062070, at *2 (N.D. Tex. July 29, 2016)). "Evidence that a client harbored a mistaken, subjective belief of a formed relationship is insufficient, standing alone, to establish that the attorney had a duty to represent the client: there 'must be some manifestation that both parties intended to create' the relationship." *King v. Lubbock ISD*, 2024 WL 3527965, at *7 (N.D. Tex. July 8, 2024) (quoting *Border Demolition & Env't, Inc. v. Pineda*, 535 S.W.3d 140, 152 (Tex. App. 2017). Viewing the facts objectively, it is clear that these Defendants were not Plaintiff's counsel and had no fiduciary relationship to Plaintiff. As a result, dismissal is proper.

19

## 2. THE PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR FRAUDULENT INDUCEMENT.

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997). The elements of fraudulent inducement are as follows:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) *the party acted in reliance on ... the representation*; and (6) the party suffered injury.

*Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 651 (5th Cir. 2018) (emphasis in the original).

The crux of the Plaintiff's argument is that he never received "full access to the MDL's common benefit work, including the master complaint and other litigation materials." [DOCUMENT 1-1, § 6.47]. Plaintiff merely pleads that the Defendants failed to provide this information and somehow that means the Defendants have committed a fraud. This proposition is not legally permissible. "Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Partners & Friends Holding Corp. v. Cottonwood Mins. L.L.C.*, 653 F. Supp. 3d 344, 350 (N.D. Tex. 2023), *aff'd*, 2023

5232141_1

WL 8649880 (5th Cir. Dec. 14, 2023) (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)). "Plaintiff's allegation that Defendant broke the alleged promise, alone, cannot support the inference that Defendant made the promise with no intent to keep it." *Balch v. JP Morgan Chase Bank, NA*, 2015 WL 1592386, at *4 (N.D. Tex. Apr. 8, 2015). This principle should be applied to a motion to dismiss. *See Wesdem, L.L.C. v. Illinois Tool Works, Inc.*, 70 F.4th 285 (5th Cir. 2023) (citing *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010)) (applying the guidance of *Spoljaric* at the 12(b)(6) stage). These Defendants were obligated under Court order to provide the common benefit information to those who either stayed in the settlement group or to counsel who appeared for those opting out of the settlement group after those lawyers consented to the Stipulated Order Governing Confidentiality and Privilege. [Pretrial Order No. 9 from the 3M MDL litigation, Doc. 442 in Case 3:19-md-2885]. Plaintiff's allegations are silent as to his effort or lack thereof to obtain the common benefit work. Additionally, Plaintiff admittedly voluntarily settled his case with 3M eliminating any injury causation. For the reasons above, dismissal is proper.

### 3. THE PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR FRAUD BY NON-DISCLOSURE.

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

5232141_1

"[F]or there to be actionable nondisclosure fraud, there **must** be a duty to disclose," which arises "when there is a fiduciary relationship." *Belliveau v. Barco, Inc.*, 987 F.3d 122, 132 (5th Cir. 2021) (emphasis added). "Whether such a duty to disclose exists in this case is 'entirely a question of law.' " *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 481 (5th Cir. 2000). "In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019). "Texas law recognizes a duty to disclose only where a fiduciary or confidential relationship exists." *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997).

> A fiduciary duty arises "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships." A confidential relationship is one in which the "parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest."

*Id.* (citations omitted).

"Texas law does not recognize a fiduciary relationship lightly, especially in the commercial context." *Belliveau v. Barco, Inc.*, 987 F.3d 122, 133 (5th Cir. 2021) (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017)). "Due to its extraordinary nature, the law does not recognize a fiduciary relationship lightly." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. 2008). It is well settled that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959

22

S.W.2d 171, 176-77 (Tex. 1997). In this case, no relationship exists, let alone a fiduciary one.

To support his claim that the Defendants acted as his lawyer on **March 13, 2024**, the Plaintiff points to a hearing transcript that states the Defendants were "For the Plaintiff." [DOCUMENT 1-1, § 5.11]. The Plaintiff claims that this "created **at least** an implied and **arguably** an express attorney client relationship with Canup." [DOCUMENT 1-1, § 6.39]. Dismissal is proper on this Count.

Plaintiff admits he hired and brought Mr. Gamble to Pensacola, Florida, to represent him at the **March 13, 2024,** hearing. Plaintiff's argument is not only contradictory but also illogical. He states he "officially opted out of the [global settlement agreement ("MSA")]" on **January 21, 2024**. [DOCUMENT 1-1, § 5.7]. The Plaintiff admits he even hired Mr. Gamble, so he could litigate his claim outside of the MSA. [DOCUMENT 1-1, § 5.6]. To permit him to do so, the MDL Court ordered that he appear in person in Pensacola, Florida, "with counsel[.]" [DOCUMENT 1-1, § 5.9]. As Mr. Gamble is/was his lawyer, the Plaintiff brought Mr. Gamble, his retained lawyer.

Despite being fully aware of this legal representation by Mr. Gamble, the Plaintiff now claims the Defendants were his lawyers, even though Mr. Gamble was present during the hearing and settlement conference. Because Mr. Gamble was his lawyer, Magistrate Judge Hope Cannon "led" the two (Plaintiff and Gamble) to "a

5232141_1

closed-door settlement conference." [DOCUMENT 1-1, § 5.11]. It is undisputed that Magistrate Judge Hope Cannon was the one who "conducted" this settlement conference, not the Defendants. [DOCUMENT 1-1, § 5.11]. After the two were in the conference room in Pensacola, Florida, "Judge Cannon brought in Aylstock, Bradford[.]" [DOCUMENT 1-1, § 5.11].

Additionally, this Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL and the transcript of the March 13, 2024 Status Conference in considering Defendants' Motion to Dismiss. The docket from Plaintiff's case and the transcript from the March 13, 2024 Status conference requires dismissal of this Count. The docket shows the following: 1) all pleadings filed on Plaintiff's behalf were filed by the "Texas Defendants" from this lawsuit until their withdrawal was granted and then by David Gamble. All pleadings filed by 3M in Plaintiff's case from the 3M MDL were served on the "Texas Defendants" from this lawsuit until their withdrawal was granted and then David Gamble. None were filed by on served upon Defendants; 2) Mediations after the March 13, 2024 settlement conference, including the mediation wherein Plaintiff voluntarily settled his case against 3M, were attended by Plaintiff's counsel, David Gamble, and not Defendants and 3) the actual docket entries for the March 13, 2024 Status Conference and Settlement Conference list Defendants as appearing on behalf of 3M Plaintiff's Leadership and David Gamble appearing as Plaintiff's counsel. The transcript of the March 13, 2024

24

5232141_1

Status Conference shows: 1) The MDL Court repeatedly stated Defendants were present on behalf of the 3M MDL Plaintiff's Leadership and that the MDL Court requested Defendants' presence at the Status Conference and 2) the MDL Court made it abundantly clear that whether Plaintiff and/or his counsel, David Gamble, chose to meet with Defendants was a voluntary decision.[6]

In addition to proving a duty to disclose, the Plaintiff must also prove the elements for this claim. To establish fraud by non-disclosure under Texas law, a plaintiff must prove:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury.

*CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 353 (5th Cir. 2021).

Plaintiff has failed to establish each of the above elements; thus, dismissal is proper.

---

[6] The status conference began with the Court welcoming Mr. Canup and his attorney Mr. Gamble, introducing herself, and then telling Mr. Canup: "Also in the courtroom today from plaintiffs' leadership there's Mr. Bryan Aylstock, Mr. Brad Bradford and Mr. Mike Burns." Exhibit B, Status Conference Transcript at 3:8-9. The MDL Court continued by explaining why she thought it was important to meet with those plaintiffs litigating their cases (like Mr. Canup) so that she could give her perspective of the litigation having overseen it for 5 years, stating: "Also, as you can see, leadership counsel from the plaintiffs' side is here if you have questions of them." *Id.* at 4:23-25. The MDL Court continued by explaining why she thought it was important to meet with those plaintiffs litigating their cases (like Mr. Canup) so that she could give her perspective of the litigation having overseen it for 5 years, stating: "Also, as you can see, leadership counsel from the plaintiffs' side is here if you have questions of them." *Id.* at 28:25-29:1. The MDL Court further said: " … If you would like an opportunity, you or Mr. Gamble, to talk with leadership counsel about some of what I've said about the settlement program, some of the more nuanced aspects of the settlement program, that's going to be available to you as an opportunity, if you'd like …". *Id.* at 33:19-23.

25

Additionally, the Defendants cannot have breached any fiduciary duty or confidentiality by discussing the Plaintiff's medical records in a court-ordered settlement conference. [DOCUMENT 1-1, § 5.11]. As a result, the Plaintiff's *Original Petition* is devoid of any facts supporting his claim; thus, dismissal is proper.

### 4. CIVIL CONSPIRACY.

Defendants adopt the argument from the Texas Defendants' Motion to Dismiss. [See Doc. 10, Page 10, FNJ Defendants' Motion to Dismiss filed on December 1, 2025.]

## IV. THE PLAINTIFF'S CLAIMS ARE BARRED BY THE ATTORNEY IMMUNITY DEFENSE.

"[A]ttorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.' " *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). "This principle is also described as the 'attorney immunity doctrine.'" *Jurek v. Kivell*, 2011 WL 1587375, at *4 n.3 (Tex. App. Apr. 21, 2011). "[A]n attorney owes no professional duty to a third party or non-client." *Banc One Cap. Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). This principle is "staunchly" protected. *Rainey v. Manufacturers & Traders Tr. Co.*, 2024 WL 3378406, at *2 (S.D. Tex. July 10, 2024). "Therefore, an attorney is not ordinarily liable to a third party for damages resulting from performance of professional services." *F.D.I.C. v. Howse*, 802 F. Supp. 1554, 1564 (S.D. Tex. 1992). "This is true even under circumstances where the attorney renders an opinion to his

5232141_1

client on which he knows a third party will rely." *Marshall v. Quinn-L Equities, Inc.*,

704 F. Supp. 1384, 1395 (N.D. Tex. 1988).

> Attorney immunity applies to all "actions taken in connection with representing a client in litigation," even wrongful conduct that is "part of the discharge of the lawyer's duties in representing his or her client," as long as it is not "entirely foreign to the duties of an attorney." For this analysis, the Supreme Court of Texas has repeatedly instructed courts to simply look to the general kind of conduct at issue and whether attorneys engage in that kind of conduct when discharging duties to a client.

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 767 (5th Cir. 2019).[7]

"Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies

this standard." *John Kleas Co. Inc. v. Prokop*, 2015 WL 1544797, at *6 (Tex. App.

Apr. 2, 2015).

> An attorney's duties that arise from the attorney-client relationship are owed only to the client, not to third persons, such as adverse parties. They have not retained the attorney and the attorney has not rendered them any services. No privity of contract exists between them and the attorney. They have no right of action against the attorney for any injuries they suffer because of the attorney's fault in performing duties owed only to the client.

*Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App. 1997).

---

[7] *See also Green v. JPMorgan Chase Bank, N.A.*, 2012 WL 12823700, at *9 (N.D. Tex. Aug. 30, 2012) ("This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit.").

5232141_1

The Plaintiff attempts to make this court ordered hearing and settlement the focus of his claim; yet, federal law does not agree with the Plaintiff. "Whether an attorney's conduct was in the scope of his representation of a client is a legal question." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 767 (5th Cir. 2019). "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.' " *Highland Cap. Mgmt., LP v. Looper Reed & McGraw, P.C.*, 2016 WL 164528, at *4 (Tex. App. Jan. 14, 2016). "In *Banc One*, we held as a matter of law that neither an expressed nor implied attorney-client relationship existed based on a single letter addressed to plaintiffs and purporting to give an opinion solely for their benefit." *First Nat. Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 807 (5th Cir. 1998) (citing *Kneipper*, 67 F.3d at 1198)). In other words, "[s]olicitation of information alone is not sufficient to establish an implied attorney-client relationship." *Swinford v. Coil Tubing Tech., Inc.*, 2022 WL 2327959, at *2 (S.D. Tex. June 16, 2022). "A contrary policy 'would dilute the vigor with which Texas attorneys represent their clients' and "would not be in the best interests of justice.' " *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App. 1997). The undisputed facts prove the Defendants were present at this court ordered hearing and settlement to represent the interest 3M Plaintiffs' Leadership. For the reason above, the Plaintiff

should not be permitted to recover "under any theory of recovery." *Reagan Nat. Advert. of Austin, Inc. v. Hazen*, 2008 WL 2938823, at *2 (Tex. App. July 29, 2008).

## V. MANY OF THE PLAINTIFF'S CLAIMED DAMAGES ARE NOT RECOVERABLE AND SHOULD BE DISMISSED.

In Subsection VII and XI, entitled "Damages" and "Prayer" respectively, requests a hodge-podge of damages, many of which are not recoverable, are nonsensical, or are otherwise improperly pleaded. [DOCUMENT 1-1, § 7.1-7.6]; [DOCUMENT 1-1, § 11.1-11.2].

### 1. "DAMAGES" AND "PRAYER" DAMAGES.

#### a. "Damages"

##### i. "Actual Damages"

"[C]ompensatory damages and actual damages mean the same thing." *F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012). Under the guise of labeling them as "Actual Damages," the Plaintiff seeks attorney fees and litigation costs as well as expenses which are not permitted. [DOCUMENT 1-1, § 7.2(a)-(d)]. "Under Texas law, [attorney's fees or other legal costs] are not damages." *Satterfield & Pontikes Constr., Inc. v. United States Fire Ins. Co.*, 898 F.3d 574, 576 n.2 (5th Cir. 2018). In other words, "attorney's fees and litigation expenses may not be recovered unless provided for by statute or by contract between the parties." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 807 (5th Cir. 2010). Because the Plaintiff fails to cite a contractual provision or statute awarding such damages, dismissal is proper.

5232141_1

### ii. "Inconvenience Damages"

While labeled "Inconvenience Damages," the Plaintiff is essentially seeking money to conduct legal research and prepare his legal arguments, which are not recoverable. [DOCUMENT 1-1, § 7.3]. "[A] pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Further, the Plaintiff's alleged "loss of time, disruption, and inconvenience" is not recoverable. "Under Texas law, fees and expenses incurred while prosecuting or defending a suit are not recoverable unless recovery is authorized by statute or contract." *Altholz v. Citimortgage, Inc.*, 2012 WL 12886979, at *11 (N.D. Tex. Dec. 13, 2012). "[I]t is settled that time lost is an expense of litigation for which recovery is not allowed." *Beasley v. Peters*, 870 S.W.2d 191, 196 (Tex. App. 1994). The Plaintiff has failed to cite to any contract, statute, or case law that he is entitled to this alleged damage; thus, dismissal is proper.

### iii. "Exemplary Damages"

Evidence justifying exemplary damages has not been proven or shown. [DOCUMENT 1-1, § 6.37]. "Texas law provides that an award for exemplary damages is justified only upon proving fraud, malice, or gross negligence by **clear and convincing evidence**." *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 683 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. West*, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) (citing Tex. Civ. Prac. & Rem. Code

30

5232141_1

Ann. § 41.003)) (emphasis added). The Plaintiff has not pleaded this standard; thus, dismissal is proper.

### iv. "Disgorgement"

The Plaintiff cannot have his cake and eat it too. He desires the documents discussed above and still wants the fees returned, while still stating fraud has occurred. This demand is not legally permitted; thus, dismissal is proper.

### v. "Interest and Costs"

As discussed above, the Plaintiff is not entitled to "litigation expenses;" thus, they should be dismissed.

### b. "Prayer"

### i. "Special" Damages.

The Plaintiff is seeking "special" damages; yet, fails to properly plead them. [DOCUMENT 1-1, § 11.2]. "If an item of special damage is claimed, it **must** be **specifically** stated." Fed. R. Civ. P. Rule 9(g) (emphasis added). As a result, dismissal is proper.

### REQUEST FOR RELIEF

For all the reasons above, dismissal of the Complaint is proper as the Plaintiff has failed to state a cause of action for which relief may be granted.

5232141_1

**Dated**:  January 12, 2026.

Respectfully Submitted,

*/s/ Gregory K. Rettig*
Gregory K. Rettig (172774)
Justin T. Keeton (1025509)
*Co-Counsel for Defendants Bryan F.
Aylstock, Bobby Bradford and Aylstock,
Witkin, Kreiss & Overholtz PLLC*

**FOR THE FIRM:**
**LLOYD, GRAY, WHITEHEAD & MONROE, P.C.**
125 W. Romana Street, Suite 330
Pensacola, Florida 32502
Telephone: (850) 777-3322
Facsimile: (850) 777-3290
Grettig@lgwmlaw.com
Jkeeton@lgwmlaw.com
Bgomez@lgwmlaw.com
Rsizemore@lgwmlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about January 12, 2026, a true and correct

copy of the foregoing was sent to counsel for all parties via email, US Mail and the

CM/ECF service.

Brandon Canup
4812 Hidden Oaks Ln
Arlington, TX 76017
*Pro Se Plaintiff*

*/s/ Gregory K. Rettig*
*Co-Counsel for Defendants Bryan F. Aylstock, and
Aylstock, Witkin, Kreiss & Overholtz PLLC*

32

5232141_1

# Tab 27-1

---

## AFFIDAVIT OF BRYAN F. AYLSTOCK

---

**STATE OF FLORIDA**                    )

**COUNTY OF ESCAMBIA**           )

Before me, the undersigned, a Notary Public in and for the aforesaid county and state, personally appeared Bryan F. Aylstock who, being by me first duly sworn, deposes and states as follows:

1. My name is Bryan F. Alystock, and I am over the age of eighteen (18) years. I reside in Santa Rosa County, Florida. I have personal knowledge of the facts contained in this Affidavit.

2. I am the Founding Partner at Aylstock, Witkin, Kreiss & Overholtz PLLC ("AWKO"). The vast majority of my legal career has been focused on the representation of individuals injured as a result of defective pharmaceutical drugs and medical devices. My efforts, dedication and commitment to such causes have resulted in my appointment to several leadership positions in nationwide multi-district litigations ("MDLs").

3. Because of that experience, I was appointed Plaintiffs' Lead Counsel in the *In Re: 3M Combat Arms Earplug Products Liability Litigation ("3M MDL")*.

4. Plaintiff in the instant matter, Brandon Canup, filed a lawsuit alleging legal malpractice and other related theories based upon my leadership position in the 3M MDL. Mr. Canup also sued AWKO partner Bobby Bradford and AWKO under the same allegations. Mr. Canup's lawsuit was initially filed in Texas state

court but was then removed to the Northern District of Texas by other Defendants in this matter.

5.  AWKO is a Florida professional limited liability corporation located in Pensacola, Florida. Both the principal and mailing addresses for AWKO are 17 East Main Street, Suite 200, Pensacola, Florida 32502.

6.  Aylstock, Witkin, Kreis & Overholtz, PLLC does not have any law offices in Texas, nor do any of its lawyers have a Texas law license.

7.  I am a licensed Florida lawyer and a resident of the state of Florida.

8.  In my capacity as manager of AWKO, my service address is listed as 17 East Main Street, Pensacola, Florida 32502.

9.  My partner, Bobby Bradford, is similarly a licensed Florida lawyer and a resident of the state of Florida.

10.  Neither myself, Mr. Bradford or AWKO were ever requested or solicited to legally represent Mr. Canup and never did legally represent Mr. Canup. In fact, at all times material to this matter, Mr. Canup appeared with his own counsel, David Gamble.

11.  The only interaction that I ever had with Mr. Canup was at a hearing in Pensacola, Florida convened by Judge Casey Rogers on March 13, 2204 where Mr. Bradford and I were requested by Judge Rodgers to appear on behalf of Plaintiffs' 3M MDL leadership to discuss the status of and possibility of settlement of certain parties who were opting out of the master settlement agreement including Mr. Canup.

2

5231496_1

12.    Mr. Bradford communicated with Mr. Canup's counsel, Mr. Gamble, on behalf of Plaintiffs' 3M MDL leadership at the MDL Court's request in advance of the March 13, 2024 hearing.

13.    Neither myself, Mr. Bradford, or AWKO ever appeared as counsel for Mr. Canup in state or federal court in Texas and have not otherwise availed ourselves of the courts in Texas so as to be subject to the jurisdiction of those courts.

**Further the Affiant saith not:**

Given under my hand, this the 12th day of January, 2026.

_____
BRYAN F. AYLSTOCK

**STATE OF FLORIDA**                )

**COUNTY OF ESCAMBIA**        )

I, the undersigned, a notary public in and for said County, in said State, hereby certify that Bryan F. Aylstock, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that being informed of the contents of such instrument, executed the same voluntarily on the day the same bears date.

Given under my hand, this the 12th day of January, 2026.

[SEAL]
CHRISTY C. FOREMAN
Notary Public - State of Florida
Commission # HH 612801
My Comm. Expires Mar 9, 2029
Bonded through National Notary Assn.

_____
NOTARY PUBLIC
My Commission Expires: 3/9/2029

5231496_1

# Tab 30

CERTIFIED A TRUE COPY
Jessica J. Lyublanovits, Clerk of Court
BY: _____
Deputy Clerk

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: 3M COMBAT ARMS EARPLUG
PRODUCTS LIABILITY LITIGATION                    MDL No. 2885

## TRANSFER ORDER

**Before the Panel:**[*]  Defendant Bryan F. Aylstock moves under 28 U.S.C. § 1407(c) to transfer an action pending in the Northern District of Texas and listed on Schedule A to the Northern District of Florida for inclusion in MDL No. 2885. Plaintiff Brandon Canup opposes the motion.

After considering the argument of counsel, we find that this action, though not typical of most MDL No. 2885 actions, involves common questions of fact with the actions transferred to MDL No. 2885. Transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We centralized actions in MDL No. 2885 arising out of allegations that defendants' Combat Arms earplugs were defective, causing plaintiffs to develop hearing loss and/or tinnitus. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d 1368 (J.P.M.L. 2019). Previously, plaintiff alleged he suffered injuries arising from the use of Combat Arms earplugs, filed suit against 3M Company and related entities directly in MDL No. 2885, and settled his claims. In the *Canup* complaint before the Panel, plaintiff brings claims against his former counsel in the MDL, who withdrew from representation;[1] and MDL No. 2885 court-appointed leadership counsel, including defendant Aylstock.[2] He alleges, *inter alia*, that (1) the leadership counsel defendants appeared at a March 2024 status conference on his behalf without his knowledge, reviewed his confidential medical records, gave him individual legal advice in a closed-door settlement conference, and pressured him to participate in the settlement; (2) the leadership counsel defendants denied him access to common benefit work product without his counsel signing a common benefit work participation agreement; and (3) all defendants conspired "to protect their financial interest at Canup's expense," by assuming "complementary roles under the framework of the [MDL No. 2885 global settlement] which tied their compensation to Plaintiff participation thresholds and withdrawal requirements." *Canup* Compl. at ¶¶ 6.57-6.60.

---

[*]  Judge David C. Norton took no part in the decision of this matter.

[1]  Fleming Nolen & Jez LLP; Gregory D. Brown; and Cliff Roberts.

[2]  Mr. Aylstock; Aystlock Witkin Kreis Overholtz PLC; Mostyn Law Firm PC; and Michael Burns (leadership counsel defendants).

FILED USDC FLND PN
APR 2 '26 PM 3:21



- 2 -

In opposing transfer, plaintiff argues that his claims do not involve factual issues common with those in MDL No. 2885. We disagree. We have found that "[a]ctions involving matters relating to a settlement reached in an MDL are appropriate for transfer to that MDL under 28 U.S.C. § 1407." *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, Transfer Order, MDL No. 2187 (J.P.M.L. Oct. 4, 2017), ECF No. 2315, at 1. *See also In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003) ("It is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407.") (*citing In re Patenaude*, 210 F.3d 135, 142–144 (3d Cir. 2000)). Here, plaintiff alleges misconduct on the part of, not only his attorneys in his MDL case, but also leadership counsel in the MDL, largely based upon conduct they argue was undertaken in their capacity as court-appointed leadership counsel.[3] Plaintiff challenges the transferee court's orders regarding the settlement and the MDL's case management, including orders regarding common benefit work and appointment of leadership counsel. Transfer, therefore, is appropriate.

Plaintiff further argues that his is a standalone case without opportunity for coordination. While the Panel's docket has been closed for several months, the MDL No. 2885 docket in the Northern District of Florida has remained open and active. In suggesting the Panel close its docket, the transferee judge recommended the termination be subject to the transferee court's "continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration of these cases." Order, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885 (N.D. Fla. Sept. 19, 2025), ECF No. 4171, at p. 1. Moreover, in consultation with the transferee judge, we recently reopened the Panel's docket to transfer a related case to the MDL.

Plaintiff also argues that transfer would be inconvenient to the *Canup* parties and witnesses. But the Panel repeatedly has held that, while it might inconvenience some parties, transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole. *See, e.g., In re IntraMTA Switched Access Charges Litig.*, 67 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014).

We decline plaintiff's request to defer our ruling pending a decision on his motion to remand to state court or defendants' motions to dismiss. The pendency of motions to dismiss and jurisdictional motions are not an impediment to Section 1407 transfer.[4] *See, e.g., In re Ford PowerShift Transmission Prods. Liab. Litig.*, 289 F. Supp. 3d 1350, 1352 (J.P.M.L. 2018); *In re Procter & Gamble Co. "Protect, Grow and Restore" Mktg. & Sales Pracs. Litig.*, 796 F. Supp. 3d 1373, 1374 (J.P.M.L. 2025). The parties can present these motions to the transferee judge.

---

[3] Plaintiff argues that whether the leadership counsel defendants were acting at the direction of the court is a merits issue that should not be decided by the Panel. We do not decide this issue, but we recognize that there is no better court to determine whether defendants acted at the transferee court's direction than the transferee court itself.

[4] Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion or motion to dismiss is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on the motion if it chooses to do so.

- 3 -

IT IS THEREFORE ORDERED that the action listed on Schedule A is transferred to the Northern District of Florida and, with the consent of that court, assigned to the Honorable M. Casey Rodgers for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Nathaniel M. Gorton          Matthew F. Kennelly
Roger T. Benitez             Dale A. Kimball
Madeline Cox Arleo

**IN RE: 3M COMBAT ARMS EARPLUG
PRODUCTS LIABILITY LITIGATION**                          MDL No. 2885

## SCHEDULE A

<u>Northern District of Texas</u>

CANUP v. AYLSTOCK, ET AL., C.A. No. 4:25-01255

# Tab 37

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

|  |  |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-HTC |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S MOTION FOR RECUSAL AND DISQUALIFICATION |
| *Defendants.* | |

## PLAINTIFF BRANDON CANUP'S MOTION FOR RECUSAL AND DISQUALIFICATION AND MEMORANDUM IN SUPPORT

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding pro se, respectfully moves for recusal and disqualification of Judge M. Casey Rodgers and Magistrate Judge Hope T. Cannon pursuant to 28 U.S.C. § 455(a), and pursuant to 28 U.S.C. § 455(b)(1) as to Judge Rodgers. In support, Canup states as follows:

As set forth more fully in the accompanying Memorandum of Law, Defendants assert as part of their defense that their conduct occurred at the request of the Court. Canup disputes that assertion. The existence, timing, and scope of any such request constitute disputed factual issues central to this action. Defendants' position necessarily relies on alleged communications occurring outside of the record, before any noticed proceeding, and without Canup's participation or notice. Because Defendants attribute their conduct directly to such an alleged off-record request, resolution of these issues would necessarily implicate matters within Judge Rodgers' personal extrajudicial knowledge, requiring disqualification under 28 U.S.C. § 455(b)(1).

Additionally, recusal and disqualification is warranted because statements made by Judge Rodgers during proceedings in the underlying litigation expressly endorsed MDL leadership


FILED USDC FLND PN
APR 14 '26 PM2:07

1

counsel, including Defendants named herein and the adequacy of representation provided to the plaintiff population as a whole, including Canup. Those statements bear directly on issues implicated in this action and create an appearance that Judge Rodgers has already formed views aligned with Defendants concerning the adequacy of representation and conduct of attorneys connected to MDL leadership, including Defendants named herein.

These concerns are further reinforced by Judge Rodgers' prior recusals, and the recusals of Magistrate Judge Hope T. Cannon, in materially similar actions involving Aylstock and AWKO alleging attorney misconduct connected to the 3M MDL. Those cases involved substantially similar allegations concerning the adequacy of representation and conduct of attorneys connected to MDL leadership, and both assigned judges declined to preside. Magistrate Judge Hope T. Cannon is likewise assigned to this matter, further reinforcing the appearance concerns described above.

Under these circumstances, a reasonable observer could question the impartiality of the assigned judges in this matter. Recusal and disqualification are therefore appropriate under 28 U.S.C. § 455(a) and § 455(b)(1). Canup incorporates the Memorandum in Support as if fully stated verbatim herein.

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that Judge M. Casey Rodgers and Magistrate Judge Hope T. Cannon recuse and be disqualified from this matter, that the case be reassigned to a different district judge and magistrate judge, and for such other relief to which he may be justly entitled.

Signed this 14th day of April, 2026.                    Respectfully submitted,

2

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## CERTIFICATE OF CONFERENCE

The moving party complied with the attorney-conference requirement of Local Rule 7.1(B). Canup attempted to confer in good faith by email to resolve the issue(s) set forth. Results of conference(s): FNJ and AWKO Defendants are opposed, therefore, this motion is submitted to the Court as opposed.

Brandon Canup

## CERTIFICATE OF SERVICE

On this 14th date of April 2026, the undersigned caused a true and correct copy of the foregoing instrument to be served on counsel of record for FNJ Defendants via US Mail pursuant to the Federal Rules of Civil Procedure and to counsel of record for AWKO Defendants via email as agreed to by the parties.

Brandon Canup

## PLAINTIFF BRANDON CANUP'S MOTION FOR RECUSAL AND DISQUALIFICATION AND MEMORANDUM IN SUPPORT

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding pro se, respectfully moves for recusal and disqualification of Judge M. Casey Rodgers and Magistrate Judge Hope T. Cannon pursuant to 28 U.S.C. § 455(a), and pursuant to 28 U.S.C. § 455(b)(1) as to Judge Rodgers. In support, Canup states as follows:

### I.    BACKGROUND

This action arises from alleged attorney misconduct directed specifically at Plaintiff Brandon Canup in connection with his underlying case in the 3M Combat Arms Earplug multidistrict litigation, *Canup v. 3M Company et al.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla.). This action was originally filed by Canup in Texas state court on October 27, 2025, against Defendants Bryan F. Aylstock ("Aylstock"), Bobby J. Bradford ("Bradford"), Michael A. Burns ("Burns"), Aylstock, Witkin, Kreis & Overholtz, PLC ("AWKO"), Mostyn Law Firm, P.C. ("Mostyn"), Gregory Brown ("Brown"), Cliff Roberts ("Roberts"), and Fleming, Nolen & Jez, LLP ("FNJ"), asserting multiple causes of action including fraud, breach of fiduciary duty, and civil conspiracy. *See* Dkt. 1, Ex. 1 ¶¶ 5.3–5.20, 6.1–6.66. On November 6, 2025, Brown removed the case to federal court in Texas, invoking diversity jurisdiction, among other asserted grounds, despite being a non-diverse Texas defendant, despite Mostyn—another Texas defendant—having already been properly joined and served, and without Mostyn joining in or consenting to removal.

Shortly thereafter, on November 21, 2025, Canup filed a Motion to Remand challenging the removal. Brown and FNJ opposed that motion and it remains unresolved. On December 1, 2025, Brown and FNJ filed a 12(b)(6) motion to dismiss Canup's claims.

On December 10, 2025, Aylstock filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") seeking to transfer this action as a tag-along action to MDL No. 2885.

On December 12, 2025, Brown and FNJ also moved to stay the proceedings pending consideration of a potential transfer to MDL 2885. Aylstock, Bradford and AWKO later filed their own motion to dismiss on January 12, 2026. The Federal Court in Texas granted the motion to stay and administratively closed the case on January 23, 2026, pending a decision by the JPML.

On April 2, 2026, the JPML entered an order transferring this action to MDL No. 2885 in the Northern District of Florida where it was assigned to Judge Rodgers and docketed on April 3, 2026.

## II.    ARGUMENT AND AUTHORITY

### A. Legal Standard

Under 28 U.S.C. § 455(a), a judge must disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." The standard is objective and asks whether a reasonable person, fully informed of the relevant facts, would question the judge's impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61 (1988). The Eleventh Circuit has further explained that any doubts concerning a judge's impartiality must be resolved in favor of recusal. *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989).

Recusal is also required where a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Disqualification is appropriate where the judge's own actions or communications become relevant factual issues in the litigation. *United States v. Alabama*, 828 F.2d 1532, 1541 (11th Cir. 1987).

The inquiry is whether "an objective, disinterested, lay observer fully informed of the facts" would entertain significant doubt about impartiality. *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003).

### B. Argument

2

## 1. Defendants Attribute Their Conduct to a Request by the Court

Aylstock has submitted a sworn statement asserting that Aylstock, Bradford and AWKO's involvement with Canup occurred at the Court's request. Aylstock states:

> "The only interaction that I ever had with Mr. Canup was at a hearing in Pensacola, Florida convened by Judge Casey Rodgers on March 13, 2024 where Mr. Bradford and I were requested by Judge Rodgers to appear on behalf of Plaintiffs' 3M MDL leadership to discuss the status of and possibility of settlement of certain parties who were opting out of the master settlement agreement including Mr. Canup." *See* Ex. 1, Affidavit of Bryan F. Aylstock ¶ 11

Bryan Aylstock further states:

> "Mr. Bradford communicated with Mr. Canup's counsel, Mr. Gamble, on behalf of Plaintiffs' 3M MDL leadership at the MDL Court's request in advance of the March 13, 2024 hearing." *See* Ex. 1, Affidavit of Bryan F. Aylstock ¶ 12

These assertions attribute Aylstock, Bradford, and AWKO's conduct directly to a request by Judge Rodgers. Canup disputes these assertions. Canup was not provided notice of any hearing, order, or proceeding in which such a request was discussed, and Canup is not aware of any docket entry reflecting such a request. The docket in *Canup v. 3M Company et al.*, No. 8:20-cv-14021-MCR-HTC, reflects that the Court ordered Canup to appear at a status conference on March 13, 2024, but contains no entry referencing any request that Aylstock, Bradford, or AWKO appear or participate. *See* Ex. 2, Docket Report, *Canup v. 3M Co.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla.) (reflecting Order to appear and March 13, 2024 status conference).

Likewise, the Order requiring Canup to appear at the March 13, 2024 status conference directs only that Canup "must appear in person, with counsel (if any)," and does not reference any request that Aylstock, Bradford, or AWKO participate. *See* Ex. 3, Order, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla. Feb. 5, 2024).

The existence, timing, and scope of any such request are disputed issues of fact in this case, and Aylstock, Bradford, and AWKO rely on the alleged request as part of their defense.

3

Because Aylstock, Bradford, and AWKO attribute their conduct directly to an alleged extrajudicial request by Judge Rodgers, resolution of these disputed issues necessarily implicates alleged communications occurring outside of the record, before any noticed proceeding, and without Canup's participation or notice. Canup was not present for, and received no notice of, any such request from the Court. Accordingly, the existence, timing, and scope of the alleged request cannot be evaluated based on the record and instead implicate Judge Rodgers' personal extrajudicial knowledge of disputed evidentiary facts concerning the proceeding, requiring disqualification under 28 U.S.C. § 455(b)(1). *United States v. Kelly*, 888 F.2d 732, 744–45 (11th Cir. 1989).

### 2. Prior Statements Regarding MDL Leadership and Adequacy of Representation

During proceedings in the underlying MDL, Judge Rodgers made statements expressly praising MDL leadership counsel, which includes Aylstock, Bradford, Burns, AWKO and Mostyn, and endorsing the adequacy of representation provided to the plaintiff population as a whole, which includes Canup. These statements bear directly on issues implicated in this action and create an appearance of partiality under 28 U.S.C. § 455(a).

Specifically, Judge Rodgers stated:

> "[I]n my view the leadership teams on both sides really do exemplify the very best of the legal profession." *See* Ex. 4, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, Twenty-Third Case Mgmt. Conf. Tr. at 13:14–15 (N.D. Fla. Sept. 8, 2023), ECF No. 3862.

Judge Rodgers further stated:

> "And because we have so many individual plaintiffs, I want to speak to them in -- just for a second in saying that they have all been extremely well represented by the leadership counsel in this litigation on the plaintiff side. 3M, ably represented as well. But I want those 250,000-plus plaintiffs to know that they were represented very well." *Id.* at 13:15–21.

These statements go beyond neutral procedural observations. They are affirmative judicial evaluations of MDL leadership counsel and of the adequacy of the representation provided to plaintiffs as a group, including Canup. This action includes allegations concerning the conduct, role, and duties of attorneys operating within or connected to MDL leadership, including Aylstock, Bradford, Burns, AWKO and Mostyn.

Judge Rodgers' statement that the "250,000-plus plaintiffs ... were represented very well" is particularly significant. It is not merely praise for effort or professionalism, but a categorical conclusion that the plaintiff population as a whole, including Canup, received adequate representation. In this action, Defendants' position is that the relevant attorneys acted properly and that the representation provided in connection with the MDL and its settlement structure was adequate. Judge Rodgers' statement mirrors that position and expresses, in broad and unequivocal terms, the same conclusion on a subject materially intertwined with the claims and defenses here. A reasonable observer could therefore view that statement as aligning with Defendants' position and as reflecting a prejudgment of issues that this case places in dispute.

Judge Rodgers further stated:

> "Those who reject the settlement will learn hard lessons that Judge Miller and I already know, but that's for another day." *Id.* at 8:10–12.

Canup is among the plaintiffs who rejected the settlement referenced in that statement. This action includes claims arising from conduct directed at Canup who opted out of the settlement. This statement addresses a very small group of plaintiffs in the MDL that includes Canup and reflects negative conclusions that Judge Rodgers indicated had already been reached concerning them.

Taken together, Judge Rodgers' statements that MDL leadership "exemplif[ied] the best of the legal profession," and that "250,000-plus plaintiffs ... were represented very well," can

reasonably be understood as endorsing both the performance of MDL leadership counsel, including Aylstock, Bradford, Burns, AWKO and Mostyn, and the adequacy of the representation they provided. Because those same subjects are closely related to disputed issues in this case, those statements create an objective appearance that Judge Rodgers has already formed views aligned with Defendants on matters presented for adjudication here. See *Liteky v. United States*, 510 U.S. 540, 555–56 (1994); *Liljeberg*, 486 U.S. at 860–61.

### 3. Prior Recusal in Materially Similar Actions

The appearance concerns described above are reinforced by Judge Rodgers' and Magistrate Judge Cannon's prior recusals in materially similar actions involving Aylstock and AWKO and allegations arising from conduct connected to the 3M MDL. Because § 455(a) focuses on whether a reasonable observer would question impartiality, prior recusals in materially similar matters are relevant to the objective appearance analysis. See *Liljeberg*, 486 U.S. at 860; *Patti*, 337 F.3d at 1321.

In *Kelly v. Aylstock*, No. 3:25-cv-01649 (N.D. Fla.), the action was assigned to Judge Rodgers and involved claims against Aylstock and AWKO alleging attorney misconduct connected to representation in the 3M MDL. After assignment, Judge Rodgers entered an order stating:

"I hereby recuse myself from presiding over the above listed case." *See* Ex. 6, *Kelly v. Aylstock*, No. 3:25-cv-01649, Order (N.D. Fla. Sept. 16, 2025).

Magistrate Judge Hope T. Cannon also recused from that same action:

"I hereby recuse myself from handling any proceedings in the above-styled case." *See* Ex. 7, *Kelly v. Aylstock*, No. 3:25-cv-01649, Order (N.D. Fla. Sept. 17, 2025).

The plaintiff in that action voluntarily dismissed the lawsuit and subsequently refiled substantially similar claims against Aylstock and AWKO in *Kelly v. Aylstock*, No. 3:25-cv-01947

(N.D. Fla.), again alleging attorney misconduct arising from MDL-related conduct. That action was again assigned to Judge Rodgers. Judge Rodgers again recused:

"I hereby recuse myself from presiding over the above listed case." *See* Ex. 9, *Kelly v. Aylstock*, No. 3:25-cv-01947, Order (N.D. Fla. Oct. 15, 2025).

Magistrate Judge Cannon likewise recused in that second action:

"I hereby recuse myself from handling any proceedings in the above-styled case." *See* Ex. 10, *Kelly v. Aylstock*, No. 3:25-cv-01947, Order (N.D. Fla. Oct. 14, 2025).

The complaints in the *Kelly* actions alleged attorney misconduct arising from representation within the 3M MDL and challenged conduct by Aylstock and AWKO, who are named as Defendants in this action. For example, the complaint in *Kelly v. Aylstock*, No. 3:25-cv-01649 (N.D. Fla.), alleges that Aylstock and AWKO settled the plaintiff's claim without informed consent, failed to communicate regarding the individual merits of the claim, and entered into an aggregate settlement without evaluating the plaintiff's circumstances. *See* Ex. 5, Compl. ¶¶ 15–18, 50–54.

Likewise, the complaint in *Kelly v. Aylstock*, No. 3:25-cv-01947 (N.D. Fla.), asserts materially similar allegations, including that Aylstock and AWKO entered into an aggregate settlement without informed consent and failed to adequately evaluate individual claims arising from the 3M MDL. *See* Ex. 8, Compl. ¶¶ 15–18, 49–54.

These allegations materially overlap with the subject matter presented in this action, which likewise concerns conduct of attorneys connected to MDL leadership, adequacy of representation, and actions taken in connection with settlement of MDL claims.

These recusals are relevant to the objective appearance analysis under § 455(a). The Eleventh Circuit has explained that the appearance inquiry is context-dependent and requires

7

consideration of all circumstances bearing on perceived impartiality. *Patti*, 337 F.3d at 1321. Where a court has previously declined to preside over materially similar attorney-misconduct actions arising from the same MDL and involving the same Defendants, a reasonable observer could question impartiality when a substantially similar case is later assigned to the same judge. See *Liljeberg*, 486 U.S. at 860.

This history therefore reinforces the appearance concerns created by Judge Rodgers' prior statements regarding MDL leadership and the disputed factual issues involving the extrajudicial request allegedly made by Judge Rodgers. Magistrate Judge Hope T. Cannon likewise recused in the materially similar *Kelly* actions and is assigned to this matter, reinforcing the appearance concerns discussed above.

### 4. Appearance of Impartiality

Collectively, Aylstock, Bradford, and AWKO attribute their conduct to an alleged extrajudicial request by Judge Rodgers, the existence and scope of that alleged request are disputed issues, and resolution of those issues would implicate matters within Judge Rodgers' personal extrajudicial knowledge. Judge Rodgers also expressly praised MDL leadership counsel, stated that plaintiffs "were represented very well," and stated that leadership "exemplif[ied] the very best of the legal profession." Judge Rodgers further made statements concerning plaintiffs rejecting the settlement, and Canup is among those who rejected the global settlement. This action concerns the conduct and duties of attorneys connected to MDL leadership and the circumstances surrounding the alleged request attributed to Judge Rodgers. Magistrate Judge Hope T. Cannon is likewise assigned to this matter and previously recused in materially similar actions involving the same defendants, further reinforcing the appearance concerns.

Under these circumstances, a reasonable observer could question the impartiality of the assigned judges in this matter. Recusal is therefore appropriate under 28 U.S.C. § 455(a).

8

Additionally, because Judge Rodgers is alleged to possess personal extrajudicial knowledge of disputed evidentiary facts concerning the proceeding, disqualification is required under 28 U.S.C. § 455(b)(1).

## III.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that Judge M. Casey Rodgers and Magistrate Judge Hope T. Cannon recuse and be disqualified from this matter, that the case be reassigned to a different district judge and magistrate judge, and for such other relief to which he may be justly entitled.

Signed this 14th day of April, 2026.                    Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Memorandum contains 2,433 words, inclusive of headings, footnotes, and quotations.

Brandon Canup

Tab 37-4

# EXHIBIT 4

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 30 of 76
Case 3:19-md-02885-MCR-HTC   Document 3862   Filed 09/11/23   Page 1 of 87
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 138 of 202

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:   3M COMBAT ARMS EARPLUG           )   Case No: 3:19md2885
PRODUCTS LIABILITY LITIGATION             )
                                          )   Pensacola, Florida
                                          )   September 8, 2023
                                          )
                                          )   9:05 a.m.
                                          )

TWENTY-THIRD CASE MANAGEMENT CONFERENCE

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
(Pages 1 through 87)

APPEARANCES:

| | |
|---|---|
| (via Zoom) | The Honorable **JUDGE LAURIE MILLER**, Fourth Judicial District of Minnesota |
| (via Zoom) | The Honorable **GARY R. JONES** United States Magistrate Judge (ret.) |
| For the Plaintiffs: | Aylstock Witkin Kreis & Overholtz, PLLC by:  **BRYAN F. ALYSTOCK** 17 East Main Street Pensacola, Florida 32502 *balystock@awkolaw.com* |
| | Clark Love & Hutson, PLLC by:  **SHELLEY HUTSON** 400 Louisiana Street, Suite 1600 Houston, Texas 77002 *shutson@triallawfirm.com* |
| | Seeger Weiss, LLP by:  **CHRISTOPHER A. SEEGER** 55 Challenger Road, Sixth Floor Ridgefield Park, New Jersey 07660 *cseeger@seigerweiss.com* |

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 31 of 76
Case 3:19-md-02885-MCR-HTC    Document 3862    Filed 09/11/23    Page 2 of 87
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 139 of 202

APPEARANCES CONT'D:

For the Defendant:    Moore Hill & Westmoreland, PA
                      by:  **CHARLES F. BEALL, JR.**
                      350 West Cedar Street
                      100 Maritime Place
                      Pensacola, Florida 32502
                      *cbeall@mhw-law.com*


                      Jenner & Block, LLP
                      by:  **THOMAS J. PERRELLI** and
                           **JOANNA WRIGHT**
                      1099 New York Avenue NW
                      Suite 900
                      Washington, DC 20001-4412
                      *tperrelli@jenner.com*
                      *jwright@jenner.com*


                      White & Case, LLP
                      by:  **MICHAEL C. ANDOLINA**
                      111 South Wacker Drive
                      Suite 5100
                      Chicago, Illinois 60606-5055
                      *mandolina@whitecase.com*

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 32 of 76
Case 3:19-md-02885-MCR-HTC   Document 3862   Filed 09/11/23   Page 8 of 87
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 140 of 202

Court of Appeals.

And importantly, those who criticize the settlement, they have no knowledge of the extraordinary risk and extraordinary costs associated with continued litigation of any Combat Arms Earplug claim, much less the costs and the risk of litigating hundreds of thousands of claims; and to criticize it based simply on jury verdicts, theoretical ideals, or market vagaries is just simply not to understand this uniquely complex litigation at all.

Those who reject the settlement will learn hard lessons that Judge Miller and I already know, but that's for another day.  For those who embrace the settlement and recognize it for the success that it is, I say to you congratulations.  In just a moment, there will be presentations, as I said, about how to participate in the Settlement Program and also for what's in store in the coming months as far as the Settlement Program.

But before we get into that -- and I promise I'm almost done.  Lengthy remarks but it's been a lengthy, lengthy litigation.  I say that lightly -- I do want to acknowledge the extraordinary work of others who have been in the trenches also over the life of this litigation and whose contributions, while largely unsung, have been important to achieving the successful resolution that we celebrate here today.

First, I want to start with our court's incredible staff:  Our clerk's office under the leadership of our Clerk of

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 33 of 76
Case 3:19-md-02885-MCR-HTC   Document 3862   Filed 09/11/23   Page 13 of 87
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 141 of 202

negotiations were hard fought as well when they needed to be. But from what -- from that extreme of litigators to the negotiators and everyone in between, everyone was instrumental in arriving at this historic resolution.  Every document reviewed, every deposition taken, every motion filed, every oral argument made, every trial conducted -- you all develop the data points that were necessary to resolve the litigation.  You brought insight into the litigation, and then that was taken forward into the negotiations which resulted, again, what I think is a very fair and successful conclusion.

No one will be surprised to hear me say that I pushed counsel very hard.  I'm sure there will be snickers about that. But most everyone rose to the occasion like the professionals that you are, and in my view the leadership teams on both sides really do exemplify the very best of the legal profession.  And because we have so many individual plaintiffs, I want to speak to them in -- just for a second in saying that they have all been extremely well represented by the leadership counsel in this litigation on the plaintiff side.  3M, ably represented as well.  But I want those 250,000-plus plaintiffs to know that they were represented very well.

Now, there's one more unsung party whose contributions to the resolution of this may not be fully appreciated by everyone, and that individual is Michael Roman. Michael Roman is 3M's chef executive officer and its chairman of

Tab 37-5

# EXHIBIT 5

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 35 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 1 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 144 of 202

# EXHIBIT A

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**

**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**CIVIL DIVISION**

RICKY DEAN KELLY,
3772 Merk's Place,
Leland, NC 28451,
Pro Se

**Plaintiff,**

v.

BRYAN F. AYLSTOCK,
AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC,
17 East Main Street,
Suite 200,
Pensacola, Florida 32502,

**Defendants.**

**Case No.:**
**Division:**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**JURY DEMAND ENDORSED HEREIN**

**I. INTRODUCTION**

1. Ricky D. Kelly, a decorated Iraq war veteran, served our nation with honor only to suffer severe hearing damage due to defective earplugs designed to protect him. Trusting

1

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 37 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 3 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 146 of 202

in the justice system, he sought legal redress, hiring Aylstock Witkin Kreiss & Overholtz PLLC (AWKO) to champion his cause. Instead of advocacy, Mr. Kelly encountered neglect and deception. AWKO, led by Bryan Aylstock, settled Mr. Kelly's deeply personal claim without his informed consent, crucial discussions, or even basic courtesy of communication, betraying the very essence of fiduciary duty and legal representation.

2. Repeatedly, Mr. Kelly reached out, seeking clarity and reassurance about his case, only to be met with silence or empty promises. This pattern of disregard culminated in a settlement that disregarded Mr. Kelly's rights and interests, decided unilaterally and under terms that served the firm, not the client. Mr. Kelly's trust was not just ignored but exploited, turning his quest for justice into a struggle against those he believed were on his side.

## II. JURISDICTION

3. Subject Matter Jurisdiction: This Court has subject matter jurisdiction over the claims presented in this complaint pursuant to the laws of the State of Florida, as the matters in controversy arise under the statutes and common law of Florida. The Florida Circuit Court is vested with the authority to adjudicate cases involving such legal claims and disputes as set forth in the complaint.

4. Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because the defendant(s) reside in, conduct business in, or have committed actionable events within Escambia County, Florida. Furthermore, the events or omissions giving rise to the claims occurred within Escambia County, thereby establishing sufficient contacts with this jurisdiction to permit the Court to exercise personal jurisdiction in accordance with the principles of due process under the laws of the State of Florida.

## III. PARTIES

5. Plaintiff - Ricky Dean Kelly is an individual with his domicile at 3772 Merk's Place, Leland, North Carolina, 28451.

6. Defendant - Bryan F. Aylstock is an individual with his domicile in Pensacola, Florida. Mr. Aylstock is being sued in his individual capacity.

7. Defendant - Aylstock, Witkin, Kreiss & Overholtz PLLC is a law firm organized and existing under the laws of the State of Florida with its principal place of business located

2

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 38 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 4 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 147 of 202

at 17 East Main Street, Suite 200, Pensacola, Florida, 32502. The firm is a citizen of Florida for jurisdictional purposes.

## IV. GENERAL ALLEGATIONS

8.  On August 29, 2019, Plaintiff Ricky D. Kelly, a decorated Iraq War veteran, entered into a contractual relationship with the law firm Aylstock, Witkin, Kreis & Overholtz, PLLC (hereafter referred to as "AWKO"), to represent him in a lawsuit regarding defective 3M earplugs which allegedly caused him severe hearing damage and tinnitus.

9.  Plaintiff was contacted by a female employee at AWKO. She insisted that the contract needed to be signed that day and assured Plaintiff that his attorney would subsequently contact him to discuss his case and answer any questions regarding the contingency contract. She also promised plaintiff to forward him a copy once it was fully executed.

10.  Despite these assurances, Plaintiff never received a fully executed copy of the contract. Plaintiff was never contacted by his attorney to discuss the specifics of his case or the details of his contract until months after Defendant agreed to the aggregate settlement.

11.  Throughout the subsequent years leading up to August 29th 2023, Plaintiff made multiple attempts to communicate with AWKO to discuss his case and obtain updates specific to his situation. Each attempt was met with generic responses stating that the updates were general MDL updates and not specific to his case. Plaintiff was always informed that we are unable to provide any information on your individual case.

12.  During this period, Plaintiff made contact with AWKO to verify the firm had everything needed for his case in emails dated May 20th 2022, June 24th 2022 and July 18th 2023. Defendant did not respond to any of the emails.

13.  On June 21, 2022, Plaintiff's case was filed in the North Florida Federal Court under civil action number 7:20-cv-36595.

14.  Despite repeated inquiries and requests for information, Plaintiff received no substantive responses from AWKO or information specific to his case from August 29th 2019 through August 29th 2023, the date the Defendant agreed to the aggregate settlement.

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 39 of 76
Case 3:25-cv-01649-TKW-ZCB   Document 1-1   Filed 09/16/25   Page 5 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 148 of 202

15. On August 29, 2023, without Plaintiff's informed consent or any prior discussions regarding any specifics of his case or his possible settlement options, Bryan Aylstock of AWKO unilaterally entered into an aggregate settlement that included Plaintiff's claims.

16. Defendant settled the lawsuit at the time when the MDL Court was making preparations to remand cases to their respective districts for trial. Defendant settled the case for six billion which was not in the best interest of the Plaintiff despite one year earlier on a public radio station, Mr. Aylstock stated that 3M's exposure to this lawsuit was north of one trillion.

17. Plaintiff discovered the settlement of his case after the fact, and learned that his case had been settled without a proper evaluation of its merits or his specific circumstances, and crucially, without his informed consent. Defendant failed to provide plaintiff with any of the required disclosures required when settling claims of multiple clients.

18. Subsequent communications from AWKO, including emails from Bryan Aylstock and Julie Orshell, acknowledged that they had not discussed the specifics or complexities of Plaintiff's case with him prior to the settlement.

19. On September 13th 2023, Plaintiff received an email from an employee named Julie Orshell at AWKO. Her email stated that we cannot speculate on possible values of your case, despite Defendant settling his case on August 29th, 2023.

20. On September 13th 2023 Julie Orshell from AWKO, in a phone conversation, and under false pretenses, misled plaintiff by assuring him that his attorney would not withdraw from representing him if he chose to proceed with an additional lawsuit concerning the Iran Terror case, which influenced plaintiff's decision to sign the additional contingency contract.

21. On January 8, 2024, Bryan Aylstock admitted in an email to Plaintiff that they had not yet reviewed all pertinent medical records or discussed the complexities of Plaintiff's case, despite having already settled the case months prior.

23. Plaintiff continued to request a copy of his contingency contract 13 times between September 1, 2023, and October 24, 2023, which AWKO failed to provide until it was too late for Plaintiff to seek alternative legal representation due to the submission of the identification report to the court.

4

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 40 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 6 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 149 of 202

24. Defendant further restricted Plaintiff's option to obtain alternative council due to the restrictions of lawyers right to practice clause that defendant negotiated into the aggregate settlement agreement violating rule 4-5.6(b) of the Florida rules of professional conduct

25. During this time Plaintiff became aware that defendant failed to provide a three day right to withdraw from the contingency contract and failing to provide plaintiff with a statement of clients rights as required by the Florida rules of professional conduct 4-1.5.

26. Defendant, Bryan Aylstock, serving dual roles as plaintiff's attorney and serving as the primary attorney for the MDL Plaintiff Steering Committee, Mr. Aylstock negotiated terms in the aggregate settlement that placed his interests and those of the MDL settlement above those of his client, Mr. Kelly.

27. The aggregate settlement negotiated by Mr. Aylstock included terms that were not in the best interest of Plaintiff, such as restrictions on lawyer's right to practice, violating Florida Rule 4-5.6(b)

28. Defendant agreed to a clause in the settlement that says he must recommend this settlement to 100% of his clients in further proof Defendant's self-dealing to obtain a global settlement, while declining to understand and address Plaintiff's case.

29. Defendant negotiated other coercive clauses that pressured clients into settling by threatening withdrawal of Defendant's legal representation, placing burdens on Plaintiff's decision to settle a matter.

30. Defendant negotiated additional terms to place his interests above those of his client such as allowing himself to cease any further development of clients cases as of the settlement date and withdraw from his clients cases requiring all clients to comply with CMO 57 which requires extensive work and involves most of the pre trial work that the Defendants are paid to complete and still receive their full contingency fee of 40%.

31. Defendant, Mr. Aylstock, made several false and misleading statements from January 2024 through March 2024. Including that settling was in the Plaintiffs best interest, despite Defendant remaining uniformed of Plaintiff's case.

32. Plaintiff received an offer of settlement on November 17, 2023 from AWKO for $10,000. The email recommended that Plaintiff accept the settlement. Mr. Aylstock and others at the firm made repeated requests for Mr. Kelly to join settlement stating it was in his best interest. Defendant made these recommendations without evaluating Mr. Kelly's claims.

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 41 of 76
Case 3:25-cv-01649-TKW-ZCB   Document 1-1   Filed 09/16/25   Page 7 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 150 of 202

33. On February 19th, 2024 at 5:45 pm, Plaintiff was abruptly requested by AWKO to provide extensive documentation for a lost wages claim by the end of the day, an unreasonable demand given the timeframe and the age of the required documents, resulting in Plaintiff having to forego his lost wages claim. This was the first request from AWKO for lost wages documents.

33. On March 14th 2024 Defendant Bryan Aylstock revealed confidential information regarding Plaintiff's son's death and the link between Plaintiff's case to a 3M Earplug attorney named Charles Beall, without Plaintiff's consent. Disclosing information detrimental to Plaintiffs case.

34. Defendant failed to have a discussion with Mr. Kelly, as promised, on March 14th 2024 after the hearing in Pensacola to finally discuss his case in detail and his son's potential case against 3M and the relation to Mr. Kelly's case and the death of his son.

35. Defendant failed to discuss this situation in detail with the Plaintiff after repeated requests. Mr. Aylstock was hyper active in pressuring Plaintiff to join settlement and less motivated to understand Plaintiffs case details.

36. Plaintiff's son passed away in 2016, he was a member of the military and suffered hearing damage, and Plaintiff as his father, attempted to inquire about a potential case against 3M for his son's hearing problems he developed while wearing the earplugs and suffered until his passing in 2016.

37. Defendant made a false statement in his answer to Plaintiffs bar complaint, stating Mr. Kelly's son never wore the earplugs and that his son died of an overdose, which shows a inconsiderate lack of regard for Plaintiff's case.

38. In addition, Defendant would never provide the chance for the Plaintiff to explain the connection between his Plaintiffs case and his son's death, a connection the Plaintiff believes attributed to the death of his son.

39. Mr. Aylstock threat to withdraw from Kelly's representation had a coercion aspect that impinges on the clients right to accept or reject a settlement. Rule 4-1.2(a) of the Florida rules states Lawyer must abide by clients decision concerning the objectives of representation and abide by the clients decision to settle a matter.

6

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 42 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 8 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 151 of 202

40. While pressuring Plaintiff to settle, Plaintiff requested Defendant to explain what "confidential exhibit number 10" meant in the settlement agreement by phone, by Email and in person on many occasions. Mr. Aylstock refused to provide an answer.

41. On March 22nd 2024, the date of the Federal Judges order requiring defendant to continue his representation of Mr. Kelly until the completion of the CMO 57 process, instead, Mr. Aylstock withdrew on that day from representing Plaintiff, directly contravening the court's order and severely impacting Plaintiffs legal rights and interests.

42. Defendant withdrew against a Federal Judge court order and at a time Plaintiff had court ordered requirements due within days of his withdrawal, causing material adverse effects on Plaintiff's case, also violating Florida rule 4-1.16.

43. On October 16th 2024, Plaintiff received a letter from AWKO stating that this letter is to inform you that your case has been dismissed. Plaintiff received this letter seven months after the defendant withdrew, further displaying AWKO's botched handling of Plaintiff's case.

44. Plaintiff filed a complaint with the Florida Bar detailing these issues, emphasizing the lack of communication, failure to obtain informed consent, and other breaches of fiduciary duty by AWKO and specifically, Bryan Aylstock.

45. Documentation supporting Plaintiff's claims includes emails, phone call records, and a detailed complaint filed with the Florida Bar, which outlines the alleged professional misconduct and violations of the rules of professional conduct by AWKO and Bryan Aylstock.

46. This sequence of events and lack of proper legal representation and consultation has led Plaintiff to suffer significant losses, not only in potential compensation for his injuries but also in legal rights and proper representation.


**V. CAUSES OF ACTION**


**COUNT ONE - BREACH OF FIDUCIARY DUTY**

47. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

7

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 43 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 9 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 152 of 202

48. In Florida, a claim for breach of fiduciary duty requires the plaintiff to establish the existence of a fiduciary relationship between the plaintiff and defendant, the defendant's breach of duties arising under that fiduciary relationship, and damages proximately caused by the breach.

49. A fiduciary relationship existed between Plaintiff, Ricky D. Kelly, and Defendant, Aylstock, Witkin, Kreiss & Overholtz PLLC, and specifically with Defendant Bryan Aylstock, as evidenced by the legal representation agreement entered into on August 29, 2019, wherein Defendants agreed to represent Plaintiff in litigation concerning defective 3M earplugs that resulted in Plaintiff's severe hearing damage and tinnitus.

50. Defendants breached their fiduciary duties by entering into an aggregate settlement without Plaintiff's informed consent or knowledge, as required under Florida Rule of Professional Conduct 4-1.8(g). Defendants negotiated and agreed to this settlement dated August 29th 2023, without obtaining or evaluating Plaintiffs complete medical records or discussing the complexities of his case with him, as admitted by Defendant Bryan Aylstock in an email dated January 8th 2024.

51. Defendants breached their fiduciary duties by failing to obtain Plaintiff's informed consent in a writing signed by him after full disclosure of the existence and nature of all claims involved including informing each Plaintiff of the material terms of the settlement, obtaining all Plaintiff's informed consent, participation of each person in the settlement and the amount each Plaintiff will receive before the settlement offer is made or accepted.

52. Defendant further breached their fiduciary duties by placing their best interest in the MDL and a global settlement ahead of the Plaintiff best interests causing an attorney/client conflict of interest.

53. Defendants' breaches of their fiduciary duties were the direct and proximate cause of damages to Plaintiff. Defendants settled Plaintiff's claims without a proper evaluation of the case, thereby undervaluing Plaintiff's claims and coercing him into a settlement that was not in his best interest.

54. This settlement was detrimental to Plaintiff and was negotiated under conditions that placed undue pressure on Plaintiff to settle, as evidenced by the terms of the aggregate settlement, the amount of the settlement was significantly lower than the actual value of Plaintiff's claims.

55. As a result of Defendants' breaches of fiduciary duty, Plaintiff suffered damages including but not limited to loss of potential compensation that could have been

8

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 44 of 76
Case 3:25-cv-01649-TKW-ZCB   Document 1-1   Filed 09/16/25   Page 10 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 153 of 202

recovered had his case been properly evaluated and pursued individually as Plaintiff requested throughout the litigation, before a settlement offer was accepted, eliminating any chance for Plaintiff to negotiate an equitable pre-trial settlement. Defendants caused emotional distress, and other consequential damages due to the mishandling of his legal representation.

56. Plaintiff seeks relief for Defendants' breach of fiduciary duty, including disgorgement of fees collected by Defendants, a full accounting of the aggregate settlement, and damages as proven at trial.

**COUNT TWO - FRAUD**

57. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

58. In Florida, a claim for fraud requires the plaintiff to establish: (a) a false statement concerning a material fact; (b) the representor's knowledge that the representation is false; (c) an intention that the representation should induce another to act on it; and (d) consequent injury by the party acting in reliance on the representation.

59. Defendant Bryan Aylstock, through his law firm AWKO, made false statements to Plaintiff concerning the handling and settlement of Plaintiff's claims related to the defective 3M earplugs, which are material facts.

60. Defendant knew these representations were false when made. This is evidenced by Defendant's email dated January 8, 2024, where Mr. Aylstock admitted to Plaintiff that they had not connected to go through all of Plaintiff's audiograms and the complexities of his case, despite previously entering into a settlement agreement.

61. Defendant intended for Plaintiff to rely on these false representations as evidenced by the firm's repeated assurances to Plaintiff that his case was being handled appropriately, and that his attorney would contact him to discuss his case, which never occurred.

62. Plaintiff relied on these false statements by remaining with AWKO under the belief that his case was being actively and appropriately managed and that he would be consulted before any settlement was reached.

63. As a direct and proximate result of the reliance on Defendant's false statements, Plaintiff suffered damages including but not limited to entering into an aggregate settlement that was not in his best interest, the loss of opportunity to pursue individual

9

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 45 of 76
Case 3:25-cv-01649-TKW-ZCB   Document 1-1   Filed 09/16/25   Page 11 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 154 of 202

legal claims more favorable to him, and emotional distress from the mishandling of his case.

64. Defendant also made false statement of a material fact in his response to Plaintiff's bar complaint, claiming the case was settled based on the individual assessments of each client's case, which was contrary to the information in Defendant's own emails admitting lack of knowledge about Plaintiff's specific case details.

65. Defendant knew the statement was false when made as evidenced in the emails from Aylstock on January 8th 2024 and Orshell on September 13th 2023.

66. Defendant intended the Florida Bar to act upon his statement in an attempt to avoid accountability.

67. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

68. Defendants made deceptive statements that Plaintiff must sign the settlement by the final registration day or Plaintiff would not be allowed to join settlement afterwards. This was a false statement of material fact.

69. Defendants knew the statement was false and intended plaintiff act upon it.

70. Defendant misled Plaintiff by offering to drop all of his fees if Plaintiff agreed to settle in an apparent attempt to benefit with a kind gesture, all the while, failing to inform Plaintiff that he negotiated that clause in the settlement that does not allow Defendant to receive funds from Plaintiff who refuse to join settlement by the final registration day.

71. Defendant knew this was false when the statement was made. Defendant intended on Plaintiff to act upon it. The statement is a false statement of a material fact.

72. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

73. Plaintiff was coerced into signing additional legal agreements under false pretenses, including a contingency contract for an unrelated legal matter, based on assurances from Defendant's firm that his attorney would not withdraw from his 3M case.

74. This was a false statement of a material fact. Defendant knew the statement was false and intended Plaintiff to act upon it.

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 46 of 76
Case 3:25-cv-01649-TKW-ZCB   Document 1-1   Filed 09/16/25   Page 12 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 155 of 202

75. Plaintiff acted upon the fraudulent statement and signed the contingency contract. Shortly after the defendant withdrew from the Plaintiff's 3m case, he withdrew from the Iran terror suit.

76. The Defendants fraudulent statement lead Plaintiff to sign an agreement allowing AWKO to represent Plaintiff in the Iran Terror Lawsuit. Plaintiff was damaged to the extent he could not find replacement council for his particular injuries because the firms he contacted had stopped adding new clients and was unable to pursue his claims for his injuries relating to an IED blast in Iraq.

77. AWKO's deceptive actions halted Plaintiff's efforts to hold Iran accountable for permanent injuries for which he was awarded the Purple Heart. Previous cases proved to be very favorable to prior veterans.

78. Defendant's actions and those of his law firm AWKO deprived Plaintiff of his right to make informed decisions regarding his legal representation and settlement options, directly resulting from their fraudulent conduct.

**COUNT THREE - LEGAL MALPRACTICE/NEGLIGENCE**

79. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

80. The duty of care required of a legal professional in Florida mandates that an attorney must act with the level of care, skill, and diligence, which is recognized as acceptable and appropriate by reasonably prudent similar attorneys under similar circumstances.

81. Defendant, Aylstock Witkin Kreiss & Overholt PLLC, and specifically Attorney Bryan Aylstock, owed a duty of care to Plaintiff, Ricky D. Kelly, to competently represent and advise him regarding his claims related to defective 3M earplugs, which caused him severe hearing damage and tinnitus.

82. Defendant failed to obtain Plaintiffs informed consent regarding his representation involving multiple clients. Conflicts of interest are present involving payments to Plaintiff's with no medical documentation or proof of injury and fraud currently being investigated on payments of settlement funds to foreign citizens.

83. Defendant breached his duties when he failed to provide Plaintiff with a copy of his contingency contract at a critical time specifically between September 1st 2023 through

11

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 47 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 13 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 156 of 202

October 21st 2023, eradicating any chance to obtain another professional opinion and the possibility of replacing his representation.

84. Defendant also brushed aside multiple requests for answers to questions about the settlement agreement, including withholding information on confidential exhibit 10, while pressuring Plaintiff to sign settlement.

85. Defendant breached his duty by failing to communicate with Plaintiff about significant aspects of his case, including but not limited to the evaluation of Plaintiff's individual claim, and the strategy for pursuing Plaintiff's legal rights.

86. Defendant also failed to provide Plaintiff with a copy of the executed representation agreement and did not discuss the terms or implications of the common representation with Plaintiff, which are critical for informed consent under Florida law.

87. Defendant's abrupt withdrawal, in defiance of a court order, directly forced Plaintiff into the settlement of his claims under terms that were not authorized or agreed upon by Plaintiff, thereby denying Plaintiff the opportunity to fully pursue his legal claims against 3M for the damages he suffered due to the defective earplugs.

88. Defendants misguided and unauthorized statements about Plaintiff's case to the 3M attorney and the fact that Mr. Aylstock would never discuss his son's potential claim for hearing problems he suffered while he was alive or discuss with Plaintiff the impacts of his Tinnitus that had a direct connection to and was a considerable factor that related to the death of Plaintiff's son, Patrick C. Kelly in April 2016.

89. Defendants negligence was a direct cause Plaintiff could not pursue the claims of his son or the claims related to the loss of his son.

90. Defendant refused to answer questions about the settlement agreement after Plaintiff made multiple attempts to understand the settlement contract to make an informed decision.

91. Defendant's failure to perform a full evaluation of Plaintiff's case, to communicate the status and strategy of the case, constitutes negligence.

92. Defendant's misrepresentations to Plaintiff regarding the handling of his case and the settlement process, as well as the failure to follow through on promises made regarding communication and case evaluation, further evidence Defendant's negligence and breach of duty.

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 48 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 1-1    Filed 09/16/25    Page 14 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 157 of 202

93. Defendant's actions and inactions have caused Plaintiff significant harm, necessitating this action for legal malpractice and negligence to recover the damages suffered due to Defendant's professional obvious negligence.

## VI. DEMAND

WHEREFORE, Plaintiff Ricky D. Kelly respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant Aylstock Witkin Kreiss & Overholt PLLC from engaging in any further aggregate settlements without the informed consent of all represented clients, as required under Florida Rule of Professional Conduct 4-1.8(g);

D. Order a full accounting and disgorgement of all fees improperly obtained by Defendant through the aggregate settlement process, ensuring transparency and adherence to ethical standards;

E. Award Plaintiff actual damages in an amount of 1.1 million, reflecting the true value of his claims had they been individually evaluated and pursued.

F. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under the law, including but not limited to those provided under Florida Statutes and the applicable Rules of Professional Conduct;

G. Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of litigation, ensuring full compensation for the legal services required to rectify the harm caused by Defendant's actions;

H. Award Plaintiff such other relief that the Court deems just and appropriate under the circumstances to fully address the extent of the harm suffered and to prevent future occurrences of similar misconduct.

## JURY DEMAND:

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 49 of 76
Case 3:25-cv-01649-TKW-ZCB   Document 1-1   Filed 09/16/25   Page 15 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 158 of 202

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted,


Ricky D. Kelly
3772 Merk's place
Leland NC 28451

Pro-Se

14

# Tab 37-6

# EXHIBIT 6

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 51 of 76
Case 3:25-cv-01649-TKW-ZCB    Document 3    Filed 09/16/25    Page 1 of 1
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 161 of 202

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

RICKY DEAN KELLY,

     Plaintiff,

v.

BRYAN F. AYLSTOCK and
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC,

     Defendants.

CASE NO. 3:25cv1649-MCR/HTC

## ORDER

I hereby recuse myself from presiding over the above listed case.

**DONE AND ORDERED** this 16th day of December 2025.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# Tab 37-8

# EXHIBIT 8

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 55 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 1 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 164 of 202

# EXHIBIT A

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 56 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 2 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 165 of 202

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT

IN AND FOR ESCAMBIA COUNTY, FLORIDA

CIVIL DIVISION

RICKY DEAN KELLY,
3772 Merk's Place,
Leland, NC 28451,
Pro Se

**Plaintiff,**

v.

BRYAN F. AYLSTOCK,
AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC,
17 East Main Street,
Suite 200,
Pensacola, Florida 32502,

**Defendants.**

**Case No.:**
**Division:** Civil

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**JURY DEMAND ENDORSED HEREIN**

**I. INTRODUCTION**

1. Ricky D. Kelly, a decorated Iraq war veteran, served our nation with honor only to suffer severe hearing damage due to defective earplugs designed to protect him. Trusting

1

Case 3:26-cv-03358-MCR-HTC   Document 37   Filed 04/14/26   Page 57 of 76
Case 3:25-cv-01947-TKW-ZCB   Document 1-1   Filed 10/14/25   Page 3 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 166 of 202

in the justice system, he sought legal redress, hiring Aylstock Witkin Kreiss & Overholtz PLLC (AWKO) to champion his cause. Instead of advocacy, Mr. Kelly encountered neglect and deception. AWKO, led by Bryan Aylstock, settled Mr. Kelly's deeply personal claim without his informed consent, crucial discussions, or even basic courtesy of communication, betraying the very essence of fiduciary duty and legal representation.

2. Repeatedly, Mr. Kelly reached out, seeking clarity and reassurance about his case, only to be met with silence or empty promises. This pattern of disregard culminated in a settlement that disregarded Mr. Kelly's rights and interests, decided unilaterally and under terms that served the firm, not the client. Mr. Kelly's trust was not just ignored but exploited, turning his quest for justice into a struggle against those he believed were on his side.

## II. JURISDICTION

3. Subject Matter Jurisdiction: This Court has subject matter jurisdiction over the claims presented in this complaint pursuant to the laws of the State of Florida, as the matters in controversy arise under the statutes and common law of Florida. The Florida Circuit Court is vested with the authority to adjudicate cases involving such legal claims and disputes as set forth in the complaint.

4. Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because the defendant(s) reside in, conduct business in, or have committed actionable events within Escambia County, Florida. Furthermore, the events or omissions giving rise to the claims occurred within Escambia County, thereby establishing sufficient contacts with this jurisdiction to permit the Court to exercise personal jurisdiction in accordance with the principles of due process under the laws of the State of Florida.

## III. PARTIES

5. Plaintiff - Ricky Dean Kelly is an individual with his domicile at 3772 Merk's Place, Leland, North Carolina, 28451.

6. Defendant - Bryan F. Aylstock is an individual with his domicile in Pensacola, Florida. Mr. Aylstock is being sued in his individual capacity.

7. Defendant - Aylstock, Witkin, Kreiss & Overholtz PLLC is a law firm organized and existing under the laws of the State of Florida with its principal place of business located

2

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 58 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 4 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 167 of 202

at 17 East Main Street, Suite 200, Pensacola, Florida, 32502. The firm is a citizen of Florida for jurisdictional purposes.

## IV. GENERAL ALLEGATIONS

8. On August 29, 2019, Plaintiff Ricky D. Kelly, a decorated Iraq War veteran, entered into a contractual relationship with the law firm Aylstock, Witkin, Kreis & Overholtz, PLLC (hereafter referred to as "AWKO"), to represent him in a lawsuit regarding defective 3M earplugs which a caused him severe hearing damage and tinnitus.

9. Plaintiff was contacted by a female employee at AWKO on August 29th 2019. She insisted that the contract needed to be signed that day and assured Plaintiff that his attorney would subsequently contact him to discuss his case and answer any questions regarding the contingency contract. She also promised plaintiff to forward him a copy once it was fully executed.

10. Despite these assurances, Plaintiff never received a fully executed copy of the contract and Plaintiff was never contacted by his attorney to discuss the specifics of his case or the details of his contract until months after Defendant agreed to the aggregate settlement. As of present, Plaintiff has never been provided the opportunity to fully detail his case to Defendant.

11. Throughout the subsequent years leading up to August 29th 2023, Plaintiff made multiple attempts to communicate with AWKO to discuss his case and obtain updates specific to his situation. Every attempt was met with generic responses stating the updates were general MDL updates and not specific to his case. Plaintiff was informed that AWKO were unable to provide any information specific to your individual case.

12. During the same period, Plaintiff made contact with AWKO to verify the firm had everything needed for his case in emails dated May 20th 2022, June 24th 2022 and July 18th 2023. Defendant failed to respond to any of those emails.

13. On June 21, 2022, Plaintiff's case was filed in the North Florida Federal Court under civil action number 7:20-cv-36595.

14. Despite repeated inquiries and requests for information, Plaintiff received no substantive responses from AWKO or information specific to his case from August 29th 2019 through August 29th 2023.

3

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 59 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 5 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 168 of 202

15. On August 29, 2023, without Plaintiff's informed consent or any prior discussions with Plaintiff regarding any specifics of his case or his possible settlement options, Bryan Aylstock of AWKO unilaterally entered into an aggregate settlement that included Plaintiff's claims.

16. Defendant settled the lawsuit at the time when the MDL Court was making preparations to remand cases to their respective districts for trial. In the last minute before these cases were to be remanded, Defendant settled the case for six billion which was not in the best interest of the Plaintiff despite one year earlier on a public radio station, Mr. Aylstock stated that 3M's exposure to this lawsuit was north of one trillion. Placing his interests above Plaintiff in making the settlement, Mr. Aylstock ignored the welfare of his client.

17. Plaintiff discovered the settlement of his case after the fact, and learned that his case had been settled without a proper evaluation of its merits or his specific circumstances, and crucially, without his informed consent. Defendant failed to provide plaintiff with any of the disclosures required when settling claims of multiple clients.

18. Subsequent communications from AWKO, including emails from Bryan Aylstock and Julie Orshell, acknowledged that they had not discussed the specifics or complexities of Plaintiff's case with him prior to the settlement.

19. On September 13th 2023, Plaintiff received an email from an employee named Julie Orshell at AWKO. Her email stated that we can't speculate on possible values of your case, despite Defendant settling his case on August 29th, 2023.

20. On September 13th 2023 Julie Orshell from AWKO, in a phone conversation, and under false pretenses, misled plaintiff by assuring him that his attorney would not withdraw from representing him in the 3M case after opting out if he chose to proceed with an additional lawsuit concerning the Iran Terror case, which influenced plaintiff's decision to sign the additional contingency contract.

21. On January 8, 2024, Bryan Aylstock admitted in an email to Plaintiff that they had not yet reviewed all pertinent medical records or discussed the complexities of Plaintiff's case, despite having already settled the case months prior.

23. Plaintiff continued to request a copy of his contingency contract 13 times between September 1, 2023, and October 24, 2023, which AWKO failed to provide until it was too late for Plaintiff to seek alternative legal representation due to the submission of the identification report to the court.

4

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 60 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 6 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 169 of 202

24. Defendant further restricted Plaintiff's option to obtain alternative council due to the restrictions on lawyers right to practice clause that defendant negotiated into the aggregate settlement agreement violating rule 4-5.6(b) of the Florida rules of professional conduct

25. In 2024, Plaintiff became aware that defendant failed to provide a three day right to withdraw from the contingency contract and failed to provide plaintiff with a statement of clients rights as required by the Florida rules of professional conduct 4-1.5.

26. Defendant, Bryan Aylstock, serving dual roles as plaintiff's attorney and serving as the primary attorney for the MDL Plaintiff Steering Committee. Mr. Aylstock failed to inform plaintiff of his dual roles, which Plaintiff believes caused a conflict of interest. Mr. Aylstock negotiated terms in the aggregate settlement that placed his interests and those of the MDL settlement above those of his client, Mr. Kelly.

27. Had Mr.Aylstock followed his basic duties to inform his client about the aggregate settlement and its terms before he agreed to settle, Plaintiff would have informed Mr. Aylstock that his consent would not be given and this settlement would have not proceeded.

28. Defendant negotiated a clause in the settlement agreement that states he must recommend this settlement to 100% of his clients. This agreement was made before Mr. Aylstock knew the details and possible values of Plaintiffs case.

29. Defendant negotiated other coercive clauses that pressured clients into settling by threatening withdrawal of Defendant's legal representation, placing burdens on Plaintiff's decision to settle a matter.

30. Defendant negotiated additional terms in the settlement that place his interests above those of his client such as allowing himself to cease any further development of clients cases as of the settlement date and withdraw from his clients cases requiring all clients to comply with CMO 57 which requires extensive work and involves most of the pre trial work that the Defendants are paid to complete and still receive their full contingency fee of 40%.

31. Defendant, Mr. Aylstock, made several false and misleading statements from January 2024 through March 2024. Including that settling was in the Plaintiffs best interest, despite Defendant remaining uniformed of Plaintiff's case.

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 61 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 7 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 170 of 202

32. Plaintiff received an offer of settlement on November 17, 2023 from AWKO for $10,000. The email recommended that Plaintiff accept the settlement. Mr. Aylstock and others at the firm made repeated requests for Mr. Kelly to join settlement stating it was in his best interest. Defendant made these recommendations without evaluating Mr. Kelly's claims.

33. On February 19th, 2024 at 5:45 pm, Plaintiff was abruptly requested by AWKO to provide extensive documentation for a lost wages claim by the end of the day, an unreasonable demand given the timeframe and the age of the required documents, resulting in Plaintiff having to forego his lost wages claim. This was the first request from AWKO for lost wages documents.

33. On March 14th 2024 Defendant Bryan Aylstock revealed confidential information regarding Plaintiff's son's death and the link between Plaintiff's case to a 3M Earplug attorney named Charles Beall, without Plaintiff's consent. Disclosing information detrimental to Plaintiffs case.

34. Defendant failed to have a discussion with Mr. Kelly, as promised, on March 14th 2024 after the hearing in Pensacola to finally discuss his case in detail and his son's potential case against 3M and the relation to Mr. Kelly's case and the death of his son.

35. Defendant failed to discuss this situation in detail with the Plaintiff after repeated requests. Mr. Aylstock was hyper active in pressuring Plaintiff to join settlement and less motivated to understand Plaintiffs case details.

36. Plaintiff's son passed away in 2016, he was a member of the military and suffered hearing damage, and Plaintiff as his father, attempted to inquire about a potential case against 3M for his son's hearing problems he developed while wearing the earplugs and suffered from until his passing in 2016.

37. Defendant made a false statement in his answer to Plaintiffs bar complaint, stating Mr. Kelly's son never wore the earplugs and that his son died of an overdose. Both statements are false.

38. In addition, Defendant would never provide the chance for the Plaintiff to explain the connection between his Plaintiffs case and his son's death, a connection the Plaintiff believes attributed to the death of his son.

39. Mr. Aylstock threat to withdraw from Kelly's representation had a coercion aspect that impinges on the clients right to accept or reject a settlement. Rule 4-1.2(a) of the

6

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 62 of 76
Case 3:25-cv-01947-TKW-ZCB   Document 1-1   Filed 10/14/25   Page 8 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 171 of 202

Florida rules states Lawyer must abide by clients decision concerning the objectives of representation and abide by the clients decision to settle a matter.

40. While pressuring Plaintiff to settle, Plaintiff requested Defendant to explain what "confidential exhibit number 10" meant in the settlement agreement by phone, by Email and in person on many occasions. Mr. Aylstock refused to provide an answer.

41. On March 22nd 2024, the date of the Federal Judges order requiring defendant to continue his representation of Mr. Kelly until the completion of the CMO 57 process, instead, Mr. Aylstock withdrew on that day from representing Plaintiff, directly contravening the court's order and severely impacting Plaintiffs legal rights and interests.

42. Defendant withdrew against a Federal Judge court order and at a time Plaintiff had court ordered requirements due within days of his withdrawal, causing material adverse effects on Plaintiff's case.

43. On October 16th 2024, Plaintiff received a letter from AWKO stating that this letter is to inform you that your case has been dismissed. Plaintiff received this letter seven months after the defendant withdrew, further displaying AWKO's negligence in the handling of Plaintiff's case.

44. Plaintiff filed a complaint with the Florida Bar detailing these issues, emphasizing the lack of communication, failure to obtain informed consent, and other breaches of fiduciary duty by AWKO and specifically, Bryan Aylstock.

45. Documentation supporting Plaintiff's claims includes emails, phone call records, and a detailed complaint filed with the Florida Bar, which outlines the alleged professional misconduct and violations of the rules of professional conduct by AWKO and Bryan Aylstock.

46. This sequence of events and lack of proper legal representation and consultation has led Plaintiff to suffer significant losses, not only in potential compensation for his injuries but also in legal rights and proper representation.

## V. CAUSES OF ACTION

## COUNT ONE - BREACH OF FIDUCIARY DUTY

Case 3:26-cv-03358-MCR-HTC    Document 37-1    Filed 04/14/26    Page 63 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 9 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 172 of 202

47. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

48. In Florida, a claim for breach of fiduciary duty requires the plaintiff to establish the existence of a fiduciary relationship between the plaintiff and defendant, the defendant's breach of duties arising under that fiduciary relationship, and damages proximately caused by the breach.

49. A fiduciary relationship existed between Plaintiff, Ricky D. Kelly, and Defendant, Aylstock, Witkin, Kreiss & Overholtz PLLC, and specifically with Defendant Bryan Aylstock, as evidenced by the legal representation agreement entered into on August 29, 2019, wherein Defendants agreed to represent Plaintiff in litigation concerning defective 3M earplugs that resulted in Plaintiff's severe hearing damage and tinnitus.

50. Defendants breached their fiduciary duties by entering into an aggregate settlement without Plaintiff's informed consent or knowledge, as required under Florida Rule of Professional Conduct 4-1.8(g). Defendants negotiated and agreed to this settlement dated August 29th 2023, without obtaining or evaluating Plaintiffs complete medical records or discussing the complexities of his case with him, as admitted by Defendant Bryan Aylstock in an email dated January 8th 2024.

51. Defendants breached their fiduciary duties by failing to obtain Plaintiff's informed consent in a writing signed by him after full disclosure of the existence and nature of all claims involved including informing each Plaintiff of the material terms of the settlement, obtaining all Plaintiff's informed consent, participation of each person in the settlement and the amount each Plaintiff will receive before the settlement offer is made or accepted.

52. Defendant further breached their fiduciary duties by placing their best interest in the MDL and a global settlement ahead of the Plaintiff best interests causing an attorney/ client conflict of interest.

53. Defendants' breaches of their fiduciary duties were the direct and proximate cause of damages to Plaintiff. Defendants settled Plaintiff's claims without a proper evaluation of the case, thereby undervaluing Plaintiff's claims and coercing him into a settlement that was not in his best interest.

54. This settlement was detrimental to Plaintiff and was negotiated under conditions that placed undue pressure on Plaintiff to settle, as evidenced by the terms of the aggregate settlement, the amount of the settlement was significantly lower than the actual value of Plaintiff's claims.

8

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 64 of 76
Case 3:25-cv-01947-TKW-ZCB   Document 1-1   Filed 10/14/25   Page 10 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 173 of 202

55. As a result of Defendants' breaches of fiduciary duty, Plaintiff suffered damages including but not limited to loss of potential compensation that could have been recovered had his case been properly evaluated and pursued individually as Plaintiff requested throughout the litigation, before a settlement offer was accepted, eliminating any chance for Plaintiff to negotiate an equitable pre-trial settlement. Defendants caused emotional distress, and other consequential damages due to the mishandling of his legal representation.

56. Plaintiff seeks relief for Defendants' breach of fiduciary duty, including disgorgement of fees collected by Defendants, a full accounting of the aggregate settlement, and damages as proven at trial.

## COUNT TWO - FRAUD

57. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

58. In Florida, a claim for fraud requires the plaintiff to establish: (a) a false statement concerning a material fact; (b) the representor's knowledge that the representation is false; (c) an intention that the representation should induce another to act on it; and (d) consequent injury by the party acting in reliance on the representation.

59. Defendant Bryan Aylstock, through his law firm AWKO, made false statements to Plaintiff concerning the handling and settlement of Plaintiff's claims related to the defective 3M earplugs, which are material facts.

60. Defendant knew these representations were false when made. This is evidenced by Defendant's email dated January 8, 2024, where Mr. Aylstock admitted to Plaintiff that they had not connected to go through all of Plaintiff's audiograms and the complexities of his case, despite previously entering into a settlement agreement.

61. Defendant intended for Plaintiff to rely on these false representations as evidenced by the firm's repeated assurances to Plaintiff that his case was being handled appropriately, and that his attorney would contact him to discuss his case, which never occurred.

62. Plaintiff relied on these false statements by remaining with AWKO under the belief that his case was being actively and appropriately managed and that he would be consulted before any settlement was reached.

Case 3:26-cv-03359-MCR-HTC     Document 37     Filed 04/14/26     Page 65 of 76
Case 3:25-cv-01947-TKW-ZCB     Document 1-1     Filed 10/14/25     Page 11 of 15
USCA11 Case: 26-11887     Document: 5-1     Date Filed: 06/05/2026     Page: 174 of 202

63. As a direct and proximate result of the reliance on Defendant's false statements, Plaintiff suffered damages including but not limited to entering into an aggregate settlement that was not in his best interest, the loss of opportunity to pursue individual legal claims more favorable to him, and emotional distress from the mishandling of his case.

64. Defendant also made false statement of a material fact in his response to Plaintiff's bar complaint, claiming the case was settled based on the individual assessments of each client's case, which was contrary to the information in Defendant's own emails admitting lack of knowledge about Plaintiff's specific case details.

65. Defendant knew the statement was false when made as evidenced in the emails from Aylstock on January 8th 2024 and Orshell on September 13th 2023.

66. Defendant intended the Florida Bar to act upon his statement in an attempt to avoid accountability. Defendant intended the Plaintiff to act upon the settlement agreement.

67. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

68. Defendants made deceptive statements that Plaintiff must sign the settlement by the final registration day or Plaintiff would not be allowed to join settlement afterwards. This was a false statement of material fact.

69. Defendants knew the statement was false and intended plaintiff act upon it.

70. Defendant misled Plaintiff by offering to drop all of his fees if Plaintiff agreed to settle in an apparent attempt to benefit with a kind gesture, all the while, failing to inform Plaintiff that he negotiated that clause in the settlement that does not allow Defendant to receive funds from Plaintiff who refuse to join settlement by the final registration day.

71. Defendant knew this was false when the statement was made. Defendant intended on Plaintiff to act upon it. The statement is a false statement of a material fact.

72. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

73. Plaintiff was coerced into signing additional legal agreements under false pretenses, including a contingency contract for an unrelated legal matter, based on assurances from

10

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 66 of 76
Case 3:25-cv-01947-TKW-ZCB   Document 1-1   Filed 10/14/25   Page 12 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 175 of 202

Defendant's firm that his attorney would not withdraw from his 3Mcase if plaintiff chose to opt out of the settlement agreement.

74. This was a false statement of a material fact. Defendant knew the statement was false and intended Plaintiff to act upon it.

75. Plaintiff acted upon the fraudulent statement and signed the contingency contract. Shortly after the defendant withdrew from the Plaintiff's 3m case, he withdrew from the Iran terror suit.

76. The Defendants fraudulent statement lead Plaintiff to sign an agreement allowing AWKO to represent Plaintiff in the Iran Terror Lawsuit. Plaintiff was damaged to the extent he could not find replacement council for his particular injuries because the firms he contacted had stopped adding new clients and was unable to pursue his claims for his injuries relating to an IED blast in Iraq.

77. AWKO's deceptive actions halted Plaintiff's efforts to hold Iran accountable for permanent injuries for which he was awarded the Purple Heart. Previous cases proved to be very favorable to prior veterans.

78. Defendant's actions and those of his law firm AWKO deprived Plaintiff of his right to make informed decisions regarding his legal representation and settlement options, directly resulting from their fraudulent conduct.

## COUNT THREE - LEGAL MALPRACTICE/NEGLIGENCE

79. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

80. The duty of care required of a legal professional in Florida mandates that an attorney must act with the level of care, skill, and diligence, which is recognized as acceptable and appropriate by reasonably prudent similar attorneys under similar circumstances.

81. Defendant, Aylstock Witkin Kreiss & Overholt PLLC, and specifically Attorney Bryan Aylstock, owed a duty of care to Plaintiff, Ricky D. Kelly, to competently represent and advise him regarding his claims related to defective 3M earplugs, which caused him severe hearing damage and tinnitus.

82. Defendant failed to obtain Plaintiffs informed consent regarding his representation involving multiple clients. Conflicts of interest are present involving payments to

11

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 67 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 13 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 176 of 202

Plaintiff's with no medical documentation or proof of injury and fraud currently being investigated on payments of settlement funds to foreign citizens.

83. Defendant breached his duties when he failed to provide Plaintiff with a copy of his contingency contract at a critical time specifically between September 1st 2023 through October 21st 2023, eradicating any chance to obtain another professional opinion and the possibility of replacing his representation.

84. Defendant also brushed aside multiple requests for answers to questions about the settlement agreement, including withholding information on confidential exhibit 10, while pressuring Plaintiff to sign settlement.

85. Defendant breached his duty by failing to communicate with Plaintiff about significant aspects of his case, including but not limited to the evaluation of Plaintiff's individual claim, and the strategy for pursuing Plaintiff's legal rights.

86. Defendant also failed to provide Plaintiff with a copy of the executed representation agreement and did not discuss the terms or implications of the common representation with Plaintiff, which are critical for informed consent under Florida law.

87. Defendant's abrupt withdrawal, in defiance of a court order, directly forced Plaintiff into the settlement of his claims under terms that were not authorized or agreed upon by Plaintiff, thereby denying Plaintiff the opportunity to fully pursue his legal claims against 3M for the damages he suffered due to the defective earplugs.

88. Defendant disclosed information about plaintiffs case to the 3M attorney without consent of plaintiff. Mr. Aylstock would never discuss his son's potential claim for hearing problems he suffered from while he was alive or discuss with Plaintiff the impacts of his Tinnitus that had a direct connection to and was a considerable factor that related to the death of Plaintiff's son, Patrick C. Kelly in April 2016.

89. Defendants negligence was a direct cause Plaintiff could not pursue the claims of his sons hearing loss or the plaintiff's tinnitus claims related to the loss of his son.

90. Defendant refused to answer questions about the aggregate settlement agreement after Plaintiff made multiple attempts by phone and emails to understand the settlement contract to make an informed decision.

91. Defendant's failure to perform a full evaluation of Plaintiff's case, to communicate the status and strategy of the case, constitutes negligence.

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 68 of 76
Case 3:25-cv-01947-TKW-ZCB   Document 1-1   Filed 10/14/25   Page 14 of 15
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 177 of 202

92. Defendant's misrepresentations to Plaintiff regarding the handling of his case and the settlement process, as well as the failure to follow through on promises made regarding communication and case evaluation, further evidence Defendant's negligence and breach of duty.

93. Defendant's actions and inactions have caused Plaintiff significant harm, necessitating this action for legal malpractice and negligence to recover the damages suffered due to Defendant's professional negligence.

## VI. DEMAND

WHEREFORE, Plaintiff Ricky D. Kelly respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant Aylstock Witkin Kreiss & Overholt PLLC from engaging in any further aggregate settlements without the informed consent of all represented clients, as required under Florida Rule of Professional Conduct 4-1.8(g);

D. Order a full accounting and disgorgement of all fees improperly obtained by Defendant through the aggregate settlement process, ensuring transparency and adherence to ethical standards;

E. Award Plaintiff damages in an amount to be determined at trial, reflecting the true value of his claims had they been individually evaluated and pursued.

F. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under the law, including but not limited to those provided under Florida Statutes and the applicable Rules of Professional Conduct;

G. Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of litigation, ensuring full compensation for the legal services required to rectify the harm caused by Defendant's actions;

Case 3:26-cv-03359-MCR-HTC    Document 37    Filed 04/14/26    Page 69 of 76
Case 3:25-cv-01947-TKW-ZCB    Document 1-1    Filed 10/14/25    Page 15 of 15
USCA11 Case: 26-11887    Document: 5-1    Date Filed: 06/05/2026    Page: 178 of 202

H. Award Plaintiff such other relief that the Court deems just and appropriate under the circumstances to fully address the extent of the harm suffered and to prevent future occurrences of similar misconduct.

**JURY DEMAND:**

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted,

Ricky D. Kelly

3772 Merk's place

Leland NC 28451

Pro-Se

14

# Tab 37-9

# EXHIBIT 9

Case 3:26-cv-03359-MCR-HTC   Document 37   Filed 04/14/26   Page 71 of 76
Case 3:25-cv-01947-TKW-ZCB   Document 6   Filed 10/15/25   Page 1 of 1
USCA11 Case: 26-11887   Document: 5-1   Date Filed: 06/05/2026   Page: 181 of 202

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

RICKY DEAN KELLY,

     Plaintiff,

v.

     CASE NO. 3:25cv1947-MCR/ZCB

BRYAN F. AYLSTOCK and
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC,

     Defendants.

## ORDER

I hereby recuse myself from presiding over the above listed case.

**DONE AND ORDERED** this 15th day of October 2025.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# Tab 46

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP | ) |
| | ) |
| Plaintiff, | ) |
| | |
| | **Case No.**: 3:26-CV-03359 MCR-ZCB |
| | ) |
| v. | ) |
| | ) |
| BRYAN F. AYLSTOCK, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ PLLC, AND BOBBY BRADFORD'S RESPONSE TO
PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT**

Defendants, **BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ PLLC,** AND **BOBBY BRADFORD** ("AWKO Defendants"), file
their *Response to Plaintiff's Motion to File First Amended Complaint* and in support
thereof, state the following:

## FACTUAL BACKGROUND

On October 27, 2025, Plaintiff filed his *Original Petition* in state court in
Texas. That case was removed by one of the co-Defendants, Gregory Brown on

November 6, 2025 [Doc.1]. On December 1, 2025, Gregory Brown filed his Motion

to Dismiss [Doc. 10]. Despite never properly being served, the AWKO Defendants

filed their *Motion to Dismiss Plaintiffs' Complaint* on January 12, 2026 [Doc.27].

This action was transferred to this Court by authority of the Judicial Panel on

Multidistrict Litigation on April 2, 2026. [Doc. 33]. On April 6, 2026, the Plaintiff

filed his *Motion for Leave to File First Amended Complaint and Memorandum in

Support* [Doc. 34] and his *First Amended Complaint*. [Doc. 35]. This Court

requested that Defendants file their response to Plaintiff's motion. [Doc. 36].

## THE AWKO DEFENDANTS' RESPONSE

Plaintiff does not have a right to amend his complaint as a matter of course

under Federal Rule of Civil Procedure 15(a)(1) because the time to do so—within

21 days after service of a motion to dismiss — has expired. Defendant Brown filed

his Motion to Dismiss on December 1, 2025 so that time frame expired no later than

December 23, 2025. See Fed. R. Civ. P. 15(a)(1)(A)–(B).

Accordingly, Plaintiff may amend his complaint only with the AWKO

Defendants' written consent or the Court's leave under Federal Rule of Civil

Procedure 15(a)(2). It appears that Plaintiff made an attempt to comply with the

conferral requirement of N.D. Fla. Local Rule 7.1(B), which requires a movant to

confer with opposing counsel in a good-faith effort to resolve the issues raised by

5319597_1

the motion.  Plaintiff contacted the undersigned counsel via email on Sunday, April 5, 2026 to request our position as to whether the AWKO Defendants would consent to the amendment, The following morning, Monday, April 6, 2026, undersigned counsel requested further information on the proposed amendment but was advised by Plaintiff that another Defendant had already objected so he had filed the Motion. As a result, the AWKO Defendants had no opportunity to consent to the motion prior to its filing.[1]

More importantly, Plaintiff's proposed First Amended Complaint contains the exact same causes of action as his original Complaint and the new and edited allegations do nothing more than repackage the same deficient causes of action and fail to remedy the fundamental legal defects in the original pleading.  The proposed allegations still fail to state a claim as a matter of law and thus are futile.

Nevertheless, because of the early stage of litigation and with this being Plaintiff's first amendment to his complaint, AWKO Defendants do not oppose the motion for leave to amend..[2]

---

[1] Plaintiff failed to comply with the requirement of N.D. Fla. Local Rule 7.1(C), which requires a movant to file a certification of good faith conferral, but the AWKO Defendants are prepared to respond to Plaintiff's proposed First Amended Complaint.

[2] AWKO Defendants will promptly file a Motion to Dismiss Plaintiff's First Amended Complaint. That motion will fully address the uncorrectable deficiencies in Plaintiff's pleading and set forth in detail why dismissal as a matter of law is required.  AWKO Defendants also note that if the Court grants Plaintiff's Motion, it should have the effect of mooting the AWKO Defendants' previously filed Motion to Dismiss [Doc. 27].

5319597_1

WHREFORE, the AWKO Defendants do not oppose Plaintiff's Motion for Leave to Amend and request fourteen (14) days for the AWKO Defendants to substantively respond to Plaintiff's First Amended Complaint.

**Dated**:  April 21, 2026.

Respectfully Submitted,

/s/ Gregory K. Rettig
Gregory K. Rettig (172774)
Justin T. Keeton (1025509)
*Counsel for Defendants Bryan F. Aylstock, Bobby Bradford and Aylstock, Witkin, Kreiss & Overholtz PLLC*

**FOR THE FIRM:**
**LLOYD, GRAY, WHITEHEAD & MONROE, P.C.**
125 W. Romana Street, Suite 330
Pensacola, Florida 32502
Telephone: (850) 777-3322
Facsimile: (850) 777-3290
Grettig@lgwmlaw.com
Jkeeton@lgwmlaw.com
Lglover@lgwmlaw.com
Egates@lgwmlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about April 21, 2026, a true and correct copy of the foregoing was sent to counsel for all parties via email, US Mail and/or the CM/ECF service.

Brandon Canup
4812 Hidden Oaks Ln
Arlington, TX 76017

5319597_1

canup.brandon@gmail.com
*Pro Se Plaintiff*

/s/Jonathan Vine

**Jonathan Vine**
**Florida Bar No.: 10966**
*Counsel for Defendants Georgy*
*Brown and Fleming Nolen & Jes LLP*


**COLE, SCOTT & KISSANE, P.A.**
**222 Lakeview Avenue, Suite 500**
**West Palm Beach, FL 33401**
**Telephone (561) 383-9200**
**Facsimile (561) 683-8977**
**Jonathan.Vine@csklegal.com**


/s/ Gregory K. Rettig
*Counsel for Defendants Bryan F. Aylstock,*
*and Aylstock, Witkin, Kreiss & Overholtz*
*PLLC*

5319597_1

# Tab 51

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO.: 3:26-cv-3359-MCR-HTC

BRANDON CANUP,

    *Plaintiff*,

v.

BRYAN F. AYLSTOCK, BOBBY
BRADFORD, MICHAEL BURNS,
CLIFF ROBERTS, GREGORY
BROWN, AYLSTOCK WITKIN KREIS
& OVERHOLTZ PLC, FLEMING
NOLEN & JEZ LLP, and MOSTYN LAW
FIRM PC,

    *Defendants*.

_____/

## FNJ DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECUSAL AND DISQUALIFICATION

Defendants, Gregory Brown and Fleming Nolen & Jez LLP (collectively "FNJ Defendants"), respectfully file this Response in Opposition to Plaintiff's, Brandon Canup's ("Canup"), Motion for Recusal and Disqualification (the "Motion") [DE 37] filed on April 14, 2026, with supporting Memorandum of Law, and as grounds therefore states as follows:

[PAGE INTENTIONALLY LEFT BLANK—CONTINUE TO NEXT PAGE]

Case No. 3:26-cv-3359

## BACKGROUND AND SUMMARY OF RESPONSE

This lawsuit involves an alleged legal malpractice lawsuit arising from the *In re: 3M Combat Arms Earplugs Litigation* (the "MDL"), a multi-district litigation proceeding involving claims by service members and veterans against 3M Company ("3M") based upon allegations that its Combat Arms Earplugs were defective. Canup, an MDL claimant, was initially represented by FNJ Defendants. Ultimately, in 2023, after several bellwether trials, 3M entered into a Master Settlement Agreement ("MSA") to resolve the claims in the MDL, which involved the creation of a benefits program out of which eligible claimants would be paid.

Importantly, the MSA obligated every attorney representing a claimant who had filed a case in the MDL to recommend their clients agree to the MSA and register in the benefits program thereunder and withdraw from representing claimants that chose to opt out of the program. Canup rejected the MSA and FNJ Defendants withdrew as his counsel, as they were obligated to do.  Canup later retained new counsel to pursue his claims against 3M. After his efforts to assert new hearing loss claims against 3M was denied, he settled his claims with 3M.

Canup then filed this legal malpractice action on October 27, 2025, in the 67th Judicial District Court of Tarrant County, Texas.  FNJ Defendants promptly removed the action to the U.S. District Court for the Northern District of Texas and moved to dismiss Canup's claims pursuant to Federal Rules of Civil Procedure

2

Case No. 3:26-cv-3359

12(b)(6) and (b)(9).  Separately, Defendant Bryan F. Aylstock moved under 28 U.S.C. § 1407(c) to transfer that action to this Court for inclusion in the MDL. The Judicial Panel on Multidistrict Litigation granted that motion on April 2, 2026. *See* Transfer Order [DE 30].

Canup has now filed the instant Motion seeking the recusal and disqualification of Judge M. Casey Rodgers and Magistrate Judge Hope to Cannon pursuant to 28 U.S.C. § 455(a), and simultaneously seeking the disqualification of Judge Rodgers pursuant to 28 U.S.C. § 455(b)(1).  Of note, Judge Hope Cannon has already recused herself.  Accordingly, this Response will only address the requested recusal and disqualification of Judge Rodgers under 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(1).

## MEMORANDUM OF LAW AND ARGUMENT

### I.    Legal Standard

28 U.S.C. Code § 455(a) provides that: "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  *Id.*  Separately, 28 U.S.C. Code § 455(b)(1) provides that a district judge shall also himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  *Id.*  As explained herein, both sections are subject to an objective standard.  The Tenth Circuit has explained that the statute "'must not

3

be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" *Id*. (quoting Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir.1986) (further quotation omitted)). If the issue of disqualification is "a close one," the judge must recuse. *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002). That said, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Id.* (*quoting Nichols,* 71 F.3d at 351).

## II.    Recusal Under 28 U.S.C. Code § 455(a).

As mentioned above, 28 U.S.C. Code § 455(a) provides that: "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.*   This statute embodies an objective standard. *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988).   Under such standard, the test is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality. *Id.*

A judge's rulings and expressions of opinion generally fail to justify recusal. The Eleventh Circuit has explained that "adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt." *Byrne v. Nezhat,*

4

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

261 F.3d 1075, 1103 (11th Cir.2001). Notably, the Supreme Court explicitly stated in *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966): "[t]he alleged bias and prejudice to be disqualifying **must stem from an extrajudicial source** ... **other than what the judge learned from his participation in the case**." *Id.* Although *Grinnell* was decided prior to the enactment of the 1974 amendments which create the current version of § 455(a), in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court extended the "extrajudicial source" doctrine from *Grinnell* to recusal under § 455(a). In *Liteky,* a criminal defendant moved to disqualify the judge prior to his second trial on the grounds that, during the earlier trial, the judge displayed "impatience, disregard for the defense and animosity" toward the defendant. *Id.* at 542, 114 S.Ct. 1147. The *Liteky* Court rejected the contention that recusal was required, stating:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* (internal citations omitted).

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

Additionally, as it pertains to commentary by a judge, far more egregious comments than those comments at issue here, wherein Judge Rodgers merely praised the leadership counsel in the largest MDL to date, have not warranted recusal. Indeed, "judicial remarks ... . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless these remarks "re-veal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. at 555. To that same end, "expressions of impatience, dissatisfaction, annoyance, and even anger," do not establish bias or impartiality. *Id*. at 555–56. Nor do "[a] judge's ordinary efforts at courtroom administration[]." *Id. United States v. Dana Calley* 24-133440, DE 53-1 (11th Cir. April 6, 2026) (citing *Liteky*). *See also, United States v. Amedeo* 487 F.3d 823 (11th Cir. 2007) (finding that "[n]othing in the record demonstrates that the district court had developed a *personal* or *extrajudicial* bias against Amedeo" and reiterating that "**opinions held by judges as a result of what they learned in earlier proceedings**" do *not* **constitute bias or prejudice.**").[1]

---

[1] Similarly, in the context of comments regarding attorneys, the Fourth Circuit found no basis for recusal where a district court judge had called an attorney a "son-of-a-b***h" and a "wise-a** lawyer." *In re Beard*, 811 F.2d 818, 830 (4th Cir.1987). The First Circuit also found no question about a judge's ability to rule impartially where he had called an attorney an "untrustworthy manipulator" and described their conduct as "dirty work," because such an attitude toward the attorney, explained the Court, did not reasonably call into question the judge's ability to rule impartially as to the attorney's client. *In re Cooper*, 821 F.2d 833, 841 (1st Cir.1987).

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

Here, Canup references comments by Judge Rodgers allegedly praising the leadership counsel in the MDL (the Florida Defendants), as a basis for impartiality. Thus, Canup specifically asserts that it is Judge Rodgers' opinions ***formed during the prior proceeding*** which render her impartial. These comments, however, at best, constitute mere expressions of opinion based upon information learned by Judge Rodgers throughout the MDL litigation. Canup does not assert or imply that Judge Rodgers will be impartial due to knowledge or opinions formed via extrajudicial sources. Additionally, although Canup takes issue with certain positive remarks made by Judge Rodgers regarding leadership counsel's work in the MDL litigation, Canup has not identified any negative commentary, let alone antagonism, <u>towards</u> Canup. Indeed, Canup has not alleged that there has been any negative bias against Canup. Thus, objectively, the comments referenced by Canup do not display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* As such, FNJ Defendants disagree with Canup's position and assert that the requisite standard for recusal under 28 U.S.C. Code § 455(a) has not been met.

## III. Recusal Under 28 U.S.C. Code § 455(b)(1).

Under Section 455(b)(1) recusal of a judge is required "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" which is "proved by compelling evidence." *Hook v. McDade,* 89 F.3d 350, 355 (7th Cir.1996). Disqualification

7

Case No. 3:26-cv-3359

under § 455(b) requires that a litigant present evidence of a "negative bias or prejudice [which] must be grounded in some personal animus or malice that the judge harbors against him." *United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir.1985).  The standard for finding actual bias is also objective; "it is with reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person' that the objective standard is currently established." *In re Sanders*, 540 B.R. 911, 919 (Bankr. S.D. Fla. 2015) (quoting *Andrade v. Chojnacki,* 338 F.3d 448, 458 (5th Cir.2003)).

Recusal under § 455(b) requires a showing of bias or partiality as to a party. *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987) ("[T]he only claim of bias to be considered is that against a party.") (citing *United States v. Burt,* 765 F.2d 1364, 1368 (9th Cir.1985); *Gilbert v. City of Little Rock, Ark.,* 722 F.2d 1390, 1398 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984).  The Federal Circuit has found that "[t]o warrant recusal, bias or prejudice must be directed against a party and bias exhibited against an attorney will only merit recusal when it results in **material and identifiable harm** to that party's case." *Baldwin Hardware Corp. v. FrankSu Enterprise Corp.,* 78 F.3d 550, 557–58 (Fed.Cir.), *cert. denied,* 519 U.S. 949, 117 S.Ct. 360, 136 L.Ed.2d 251 (1996).

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

Respectfully, Canup has conflated Judge Rodgers' knowledge as Judge in the MDL litigation with "personal knowledge." While Judge Rodgers may have knowledge of the underlying MDL litigation, as acknowledged within Canup's own Motion, Judge Rodgers' knowledge stems from her position as Judge in the underlying MDL case.

Interestingly, in opposing the transfer of this action, Plaintiff raised an alternative argument, i.e. that his claims **did not** involve factual issues common to those in the MDL litigation. The Panel disagreed, specifically stating in the Transfer Order: "We have found that '[a]ctions involving matters relating a settlement reached in an MDL are appropriate for transfer to that MDL under 28 U.S.C. § 1407.'" Transfer Order at 2 (quoting *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.,* Transfer Order MDL No. 2187 (J.P.M.L. Oct. 4, 2017), ECF No 2315, at 1) (citing *In re Managed Care Litig.,* 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003) ("It is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407"). Accordingly, the Panel found that transfer was appropriate, likewise noting that the transferee Court recommended that termination of the MDL be subject to the Court's "continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

administration of these cases." Order, *In Re 3M Combat Arms Earplug Prods. Liab. Litig.,* MDL No. 2885 (N.D. Fla. Sept. 19, 2025).

Furthermore, in transferring this action, the Panel considered Canup's argument that transfer was inappropriate because the alleged misconduct against leadership counsel was undertaken in their capacity as court-appointed leadership counsel. Within the Transfer Order, the Panel noted as follows:

> Plaintiff argues that whether the leadership counsel defendants were acting at the direction of the court is a merits issue that should not be decided by the Panel. W**e do not decide this issue, but we recognize that there is no better court to determine whether defendants acted at the transferee court's direction than the transferee court itself**.

Transfer Order [DE 30] (emphasis added).

In effect, Canup's Motion for Recusal is yet another attempt to oppose the transfer of this action. Canup appears to conflate "personal knowledge" with judicial knowledge, requesting recusal and disqualification simply based upon Judge Rodgers' prior involvement as Judge in the underlying case and her potential opinions formed on the attorneys during the MDL litigation. Canup's position, however, runs contrary to well established precedent cited above, wherein Courts retain jurisdiction over settlement matters at the conclusion of cases. Under Canup's logic, litigation arising out a settlement would require recusal of the judge involved in the underlying litigation based upon the judge's "extrajudicial knowledge."

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

Canup's position, respectfully, is incorrect. Per Canup's own Motion, Judge Rodgers does not have extrajudicial knowledge; there is no allegation within Canup's Motion to support such a position.  As such, Canup has not alleged facts to meet the requisite standard to justify recusal. Additionally, it would serve the interests of justice and judicial economy for this action to be addressed within the MDL, as part of the MDL Court's continuing jurisdiction over the settlement of the MDL actions. Accordingly, FNJ Defendants oppose Canup's Motion for Recusal.

Lastly, it also bears noting that Canup's request should be deemed untimely and waived.  Canup did not lodge any objection in the MDL case regarding leadership counsel, FNJ Defendants, or, most importantly, Judge Rodgers.  A motion to recuse under section 455(a) must be timely filed. *See Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (motion to recuse under both 28 U.S.C. §§ 144 and 455(a) was untimely) cert. denied, 470 U.S. 1028, 105 S. Ct. 1396, 84 L. Ed. 2d 785 (1985); *see also Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1414 (8th Cir. 1983) (section 455(a) has a timeliness requirement); *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir. 1983) (same), cert. denied, 464 U.S. 1050, 104 S. Ct. 729, 79 L. Ed. 2d 189 (1984); *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1164 n. 3 (5th Cir. 1982) (same), cert. denied, 464 U.S. 814, 104 S. Ct. 69, 78 L. Ed. 2d 83 (1983); *In re International Business Machines Corp.*, 618 F.2d 923, 932 (2d Cir. 1980) (same). Accordingly, as the comments by Judge Rodgers which Canup takes

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

issue with occurred **almost three (3) years ago**, in September 2023, and Canup did not seek recusal until April 2026, Canup's motion is untimely.

WHEREFORE, Defendants, GREGORY BROWN AND FLEMING NOLEN & JEZ LLP**,** respectfully request that this Honorable Court deny Plaintiff's, BRANDON CANUP, Motion for Leave to File First Amended Complaint [DE 34] and that this Honorable Court provide such other relief as it deems just and proper, inclusive of any potential attorneys' fees permitted under the applicable agreement referenced by Plaintiff in the operative Complaint.

[CERTIFICATE ON THE FOLLOWING PAGE]

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Case No. 3:26-cv-3359

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1(F)</u>

I hereby certify that the above Response in Opposition, excluding the case style, signature block, and any certificate of service, contains 2615 Words, in compliance with Local Rule 7.1(F), and does not exceed eight thousand (8,000) words.

By:  *s/Jonathan Vine*
      JONATHAN VINE
      Florida Bar No. 10966

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of May 2026, a copy of the foregoing is being served upon all counsel of record by CM/ECF.

COLE, SCOTT & KISSANE, P.A.
Counsel for Defendants, ……
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone (561) 383-9200
Facsimile (561) 683-8977
Jonathan.Vine@csklegal.com

By:  *s/Jonathan Vine*
      JONATHAN VINE
      Florida Bar No. 10966

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

## Certificate Of Service

I HEREBY CERTIFY that I filed both volumes of this Appendix to Petition for Writ of Mandamus using the court's electronic-filing system and that a copy of both volumes of the Appendix were furnished pursuant to Federal Rules of Appellate Procedure 21 and 25(d) via email on this 5th day of June 2026 to the following:

Hon. M. Casey Rodgers
District Judge of the United States District Court,
Northern District of Florida
flnd_rodgers@flnd.uscourts.gov

Gregory K. Rettig
Counsel for Defendants Bryan Aylstock,
Bobby Bradford and Aylstock, Witkin, Kreis &
Overholtz, PLC
grettig@lgwmlaw.com

Jonathan Vine
Counsel for Defendants Gregory Brown,
Cliff Roberts and Fleming, Nolen & Jez, LLP
jonathan.vine@csklegal.com

Benjamin Stevenson
Counsel for Defendant
Mostyn Law Firm, PC
bjs@stevenson-legal.com

/s/ Brandon Canup

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

***pro se***