# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

|  |  |
|---|---|
| In re Brandon Canup,<br><br>  Petitioner.<br><br>  v.<br><br>BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP, and MOSTYN LAW FIRM PC.<br><br>  Respondents. | Case No.: 26-11887-C |

## RESPONDENTS', GREGORY BROWN, CLIFF ROBERTS, and FLEMING NOLEN & JEZ LLP, RESPONSE IN OPPOSITION TO CANUP'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING MANDAMUS PROCEEDINGS

Respondents, GREGORY BROWN ("Brown"), CLIFF ROBERTS ("Roberts"), and FLEMING NOLEN & JEZ LLP (collectively "Respondents"), pursuant to Rule 27 of the Federal Rules of Appellate Procedure, by and through undersigned counsel, hereby file this Response in Opposition to Petitioner's, BRANDON CANUP ("Canup"), Motion to Stay District Court Proceedings Pending

Mandamus Proceeding [DE 7] ("Motion to Stay"), and in support thereof state as follows:

## SUMMARY OF ARGUMENT

On May 30, 2026, Canup filed a petition for writ of mandamus concerning the District Court's order denying Canup's motion to disqualify the district court judge. *See* Order at **Exhibit "1"** [DE 61]; Case No. 3:26-cv-3359-MCR-HTC. The District Court found no evidence of personal bias, extrajudicial knowledge, or any basis upon which a fully informed observer would reasonably question the Court's impartiality. *See id*. Canup has filed a Motion to Stay, seeking a stay of the district court proceedings pending the mandamus proceeding. *See id*.

This motion to stay should be denied, procedurally, because Canup has failed to obtain a ruling on his motion to stay before filing the instant motion before this Court. *See People First of Alabama v. Secretary of State for Alabama*, 815 Fed. Appx. 505 (11th Cir. 2020); see also, Rule 8, Federal Rules of Appellate Procedure.

In the alternative and on the merits, Canup's Motion should be denied because he cannot demonstrate a likelihood of success on the merits of the mandamus petition. Moreover, Canup cannot establish irreparable harm absent a stay. Further, delaying the litigation would substantially prejudice Respondents and other interested parties.

Canup's motion to stay should be denied and the petition dismissed.

## RELEVANT BACKGROUND AN PROCEDURAL HISTORY

1.    Canup filed a products liability action against 3M as part of the *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885, which was consolidated in the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1407. *See In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.).

2.    The Judicial Panel on Multidistrict Litigation centralized the litigation, creating what became the largest MDL in federal judicial history, involving approximately 400,000 plaintiffs represented by more than 500 law firms. *See id*.

3.    Judge Rodgers appointed Plaintiffs' Leadership Counsel to coordinate and manage discovery, motion practice, expert development, bellwether trials, and other common-benefit work on behalf of all plaintiffs in the MDL. *See id*.

4.    The MDL ultimately resulted in a negotiated global settlement valued at approximately $6 billion. *See id*.

5.    Following the settlement, Judge Rodgers held a hearing to outline the settlement terms and express appreciation to Plaintiffs' Leadership Counsel, defense counsel, court staff, and others for their contributions to the litigation. *See id*.

6.    Canup then decided to opt-out of the settlement benefits program, and retained new counsel. *See id*.

7.    On March 13, 2024, Judge Rodger's held a hearing in which she discussed the settlement program, all the benefits that had been conferred on all plaintiffs by leadership, as well as the risks of litigating an individual claim on remand. *See id*.

8.    Even after being fully informed, Canup was then given one final opportunity to participate in the global settlement, which he declined, as was his right to do. *See id*.

9.    Still, with the assistance of his new attorney, Canup then satisfied the MDL requirements to proceed with his individual opt-out case. *See id*.

10.    Canup later attended court-assisted mediation with his counsel, through which he negotiated his own settlement with 3M outside of the settlement program. *See id*.

11.    However, following Canup's settlement, Canup filed *Brandon Canup v. Brayn F Alystock, et al.*, Case No. 3:26-cv-03359-MCR-ZCB ("Underlying Litigation") in which he states that all respondents allegedly mishandled Canup's 3M Litigation. *See* Pl.'s First Amended Pet. ("Underlying Litigation") [DE 35] Case 3:26-cv-03359-MCR-ZCB.

12.    On April 14, 2026, Canup subsequently filed a Motion for Recusal and Disqualification [DE 37], seeking Judge Rodgers' removal from the underlying district court action. *See* Pl.'s Mot. for Recusal and Disqualification and Memorandum in Support ("Motion for Recusal") [DE 27] Case No. 3:26-cv-3359-MCR-HTC [DE 27].

13.    In support of the Motion for Recusal, Canup argued that:

a.    Defendants' alleged reliance on conduct occurring at the Court's request created disputed factual issues implicating Judge Rodgers' personal knowledge under 28 U.S.C. § 455(b)(1); and

b.    Statements made by Judge Rodgers during the MDL proceedings allegedly endorsed MDL leadership counsel and the adequacy of the representation provided to plaintiffs, including Canup.

*See id*.

14.    All Defendants at the time filed responses in opposition to Canup's Motion for Recusal and Disqualification. *See* DE 51 & 52; Case No. 3:26-cv-3359-MCR-HTC.

15.    On May 17, 2026, the Court entered an Order denying the Motion for Recusal and Disqualification, finding no evidence of personal bias, extrajudicial knowledge, or any basis upon which a fully informed observer would reasonably

question the Court's impartiality. *See* Order at **Ex. "1"** [DE 61]; Case No. 3:26-cv-3359-MCR-HTC.

16.    The Court further held that its prior comments regarding MDL leadership counsel and settlement negotiations were general observations about the conduct of the litigation and could not reasonably be construed as favoritism or endorsements of any particular attorney's representation. *See id*. at 8.

17.    The Court also concluded that its prior statements did not reflect the type of "deep-seated favoritism or antagonism" that would render fair judgment impossible. *See id*., *see also Liteky v. United States*, 510 U.S. 1149, 1150 (1994) (discussing § 455(a) and (b)(1)).

18.    The Court distinguished a prior matter, *Kelly v. Aylstock,* Case No. 3:25cv1947-TKW-ZCB (N.D. Fla.), in which Judge Rodgers recused herself, explaining that recusal there was warranted because leadership counsel also served as the plaintiff's retained counsel and the Court had commented directly on the quality of that representation—circumstances <u>not present in Canup's case</u>. *See id*. at 9; *see also Kelly v. Aylstock,* Case No. 3:25cv1947-TKW-ZCB (N.D. Fla.).

19.    Following the denial of his Motion for Recusal, Canup filed a Petition for Writ of Mandamus, seeking to compel Judge Rodgers' recusal from the case. *See* Pet. For Writ of Mandamus ("Canup's Writ"), USACA11 Case: 26-11887 [DE 1-2].

20.    Canup then filed the instant Motion to Stay Proceedings pending resolution of the mandamus petition. *See* Petitioner's Mot. to Stay [DE 7].

## MEMORANDUM OF LAW AND ARGUMENT

## I.    STANDARD OF LAW

"A stay is considered an '***extraordinary relief***' for which the moving party bears a 'heavy burden." *Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CV, 2019 WL 5296755, at *1 (S.D. Fla. Aug. 28, 2019), report and recommendation adopted sub nom (emphasis added); *Stansell v. Revolutionary Armed Forces of Columbia*, No. 19-20896-CIV, 2019 WL 5290906 (S.D. Fla. Aug. 30, 2019) (quoting *Winston-Salem/Forsyth County Bd. of Education v. Scott*, 404 U.S. 1221, 1231 (1971)).

A stay pending appeal is akin to a preliminary injunction. *See Matter of Forth-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). There are four factors the Court looks to in determining whether a stay is appropriate: (1) whether the stay applicant can make a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent entry of a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *see also Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). "A stay is not a matter of right even if irreparable injury might otherwise result" and the decision

to grant or deny a stay rests within the Court's sound discretion. *Nken*, 556 U.S. at 433-34 (citations omitted). Notably, the first two factors are the "most critical." *Id.* at 434.

As explained below, Canup's failure to meet his burden mandates a recommendation of denial. *See Stansell*, 2019 WL 5296755, at *1 (denying the movants' motion to stay because of their failure to meet the four factors).

## II.    CANUP HAS FAILED TO ADDRESS THE THRESHOLD REQUIREMENTS UNDER RULE 8 OF THE FEDERAL RULES OF APPELLATE PROCEDURE.

As an initial, and dispositive, threshold matter, Canup has failed to address, let alone establish, that he has satisfied the requirements set forth in Rule 8 of the Federal Rules of Appellate Procedure, which govern whether a motion to stay may even be considered by the Court. *See* Fed. R. App. P. 8. Specifically, Rule 8, in its pertinent parts, provides as follows:

> **(1) Initial Motion in the District Court.** A party must ordinarily move first in the district court for the following relief:
>
> **(A)** a stay of the judgment or order of a district court pending appeal;
>
> **...**
>
> **(2) Motion in the Court of Appeals; Conditions on Relief.** A motion for the relief mentioned in Rule 8(a)(1) may be made to the court of appeals or to one of its judges.
>
> **(A)** The motion must:
>
> > **(i)** show that moving first in the district court would be impracticable; or

**(ii)** state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action.

*Id*.

Here, Canup has not demonstrated compliance with the requirements of Rule 8, and as such, his Motion fails on procedural grounds alone. *See People First of Alabama*, 815 Fed. Appx. at footnote 6 (stating "nothing in this concurrence should be read to suggest that a state in a future case facing a similar timeframe may bypass first seeking a stay in the district court."). Canup recognizes he has filed a motion to stay proceedings in the underlying litigation pending resolution of his mandamus petition, as well as the instant Motion to Stay. *See* Petitioner's Mot. to Stay [DE 7] at 2. However, Canup does not allege that the district has denied his request for a stay. To the contrary, Canup's Motion to Stay in the District Court has not been ruled upon. In attempting to justify his request for a stay from the Eleventh Circuit, Canup contends that "[a]lthough a ruling on the pending threshold motions could assist this Court, the possible benefit of awaiting such a ruling is outweighed by the immediate and irreparable harm caused by continued proceedings before the judge whose recusal is the subject of this petition." *Id.*

Canup's Motion to Stay is entirely devoid of any discussion of, or attempt to satisfy, the requirements of Rule 8(a)(1)(A) or Rule 8(a)(2), which govern when a party may seek a stay from an appellate court in the first instance. *See People First*

*of Alabama*, 815 Fed. Appx. at footnote 6 (citing to *Ga. Muslim Voting Project v. Kemp*, No. 18-cv-4789, Doc. 33 (N.D. Ga. Oct. 25, 2018) (reflecting that the state of Georgia filed a motion to stay in the district court before bringing an emergency motion in our Court to stay the effect of the district court injunction requiring the state to provide notice to voters before rejecting ballots submitted by mail based on a perceived signature mismatch, even though the district court's injunction was entered just days before the election)). Accordingly, even before reaching the substantive deficiencies discussed below, Canup's Motion fails on procedural grounds.

## III.    CANUP'S MOTION TO STAY SHOULD BE DENIED AS CANUP FAILS TO MEET THE FOUR REQUISITE ELEMENTS SUPPORTING A STAY.

### A. <u>Canup's Writ of Mandamus is Not Likely to Succeed on the Merits.</u>

First and foremost, Canup's Writ of Mandamus is ***not*** likely to succeed on its merits, therefore, Canup's Motion to Stay should be denied for that reason alone. *Nken,* 556 U.S. at 426. By way of brief background, Canup's Writ of Mandamus is premised upon Judge Rodgers' order denying Canup's Motion for Recusal of Judge Rodgers, which Canup believes was warranted due to her involvement with the underlying proceeding, namely *In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-

HTC (N.D. Fla.). Canup contends there is "a [c]lear and [i]ndisputable [r]ight to [r]ecual [u]nder 28 U.S.C. § 455" because:

1) 28 U.S.C. § 455(b)(1) Requires Mandatory Disqualification Where the Presiding Judge Possesses Personal Knowledge of Disputed Evidentiary Facts;

-and-

2) Recusal is Required Under 28 U.S.C. § 455(a) Because an Objective Observer Could Reasonably Question Impartiality Under the Circumstances Presented Here.

*See* Canup's Writ at 8, 15.

However, recusal is not warranted for "imaginary reasons." *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001). Rather, Canup must establish that the "that the impropriety is clear and one which would be recognized by all objective, reasonable persons." *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999) (emphasis added).

### 1. **Canup's First Basis for Recusal Will Not Succeed on the Merits.**

As noted above, Canup's initial basis for recusal arises under 28 U.S.C. § 455(b)(1), which requires a judge to disqualify herself when she possesses personal knowledge of disputed evidentiary facts. *See* Canup's Writ at 8 [DE 1-1]. In determining whether an appearance of impropriety exists, courts consider "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)

(quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988)). Recusal is required under § 455(b)(1) only where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). However, as the district court has already explained, recusal on this basis is neither warranted nor appropriate in the underlying action. *See* Order at **Exh. "1."**

Canup argues that recusal is required under 28 U.S.C. § 455(b)(1) because Judge Rodgers allegedly possesses personal knowledge of disputed evidentiary facts. *See* Canup's Writ at 8; *see also* Canup's Mot. to Stay at 8-12. Specifically, Canup contends that Judge Rodgers is essentially a witness to relevant facts. Canup's Mot. to Stay at 8-12. Respectfully, however, Canup conflates judicial knowledge acquired by presiding over litigation with the type of "personal knowledge" contemplated by § 455(b)(1). *See* 28 U.S.C. § 455(b)(1). Although Judge Rodgers undoubtedly possesses judicial knowledge of the underlying MDL proceedings, that knowledge was acquired *solely* through her judicial role in the MDL and not through any extrajudicial source. *See generally* Order at **Exh. "1"**; *see also In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.).

Notably, in opposing transfer of this action, Canup advanced the alternative argument that his claims did not involve factual issues common to those at issue in

the MDL. *See* Canup's Mot. to Stay at 8-12. The Judicial Panel on Multidistrict Litigation rejected that contention, explaining that "[w]e have found that '[a]ctions involving matters relating [to] a settlement reached in an MDL are appropriate for transfer to that MDL under 28 U.S.C. § 1407.'" *See* Transfer Order at 1,2, **Exh. "2"** (quoting *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, Transfer Order at 1 (J.P.M.L. Oct. 4, 2017), ECF No. 2315), and citing *In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003) ("It is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407.").

Consistent with that precedent, the Panel determined that transfer was appropriate. *See id*. The Panel also recognized that the transferee court had recommended termination of the MDL subject to the Court's "continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration of these cases." *See id*. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885 (N.D. Fla. Sept. 19, 2025). Accordingly, the very basis for transfer confirms that Judge Rodgers' familiarity with the relevant issues derives from her judicial administration of the MDL, not from any personal or extrajudicial knowledge requiring recusal under § 455(b)(1).

Accordingly, because Canup is unlikely to succeed on his recusal claim under 28 U.S.C. § 455(b)(1), he cannot satisfy the first factor necessary to obtain a stay pending review of his petition for writ of mandamus.

**2. Canup's Second Basis for a Writ of Mandamus Will Also Not Succeed on the Merits.**

Canup's second basis for Writ of Mandamus is brought under 28 U.S.C. § 455(a), which states that a judge must recuse herself from any proceeding in which her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Determining whether there is an appearance of impropriety involves consideration of "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Patti*, 337 F.3d at 1321 (internal quotations omitted).

Here, Canup points to comments made by Judge Rodgers allegedly commending MDL leadership counsel, as evidence of partiality. *See* Canup's Mot. to Stay at 11. In essence, Canup argues that opinions formed by Judge Rodgers during the course of the MDL proceedings render her unable to adjudicate this matter impartially. *See id*. However, the cited remarks are, at most, expressions of opinion derived from information and observations acquired in her judicial capacity throughout the MDL litigation. See *United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir.1985) (stating disqualification under § 455(b) requires that a litigant present evidence of a "negative bias or prejudice [which] must be grounded in some personal

animus or malice that the judge harbors against him."). Canup neither alleges nor suggests that Judge Rodgers' views were based on any extrajudicial source.

Although Canup challenges certain comments made by Judge Rodgers regarding leadership counsel's performance in the MDL, he identifies no statements reflecting hostility, animus, or prejudice toward him. *See id*. Indeed, Canup does not allege that Judge Rodgers has exhibited any negative bias against him whatsoever. *See id*. Viewed objectively, the comments cited by Canup **do not** demonstrate the type of "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 1150. Rather, they reflect opinions formed in the ordinary course of judicial proceedings, which are insufficient to warrant recusal.

Judge Rodgers' Order denying Canup's Motion for Recusal determined that "[n]othing about this is in dispute or suggests any personal bias, extra-judicial knowledge, or a basis on which a fully informed observer would question my impartiality in the instant case." *See* Order at **Exh. "2"**; s*ee also* 28 U.S.C. § 455(a), (b)(1). Additionally, Judge Rodgers found that, although leadership counsel attended the March 13, 2024, hearing, and although Canup disputes the reason for their attendance, whether leadership counsel appeared at Judge Rodgers's request is not a disputed evidentiary fact in this litigation. *See* Order at 7, **Exh. "2."** Judge Rodgers further explained that the record is clear that, at each relevant hearing, she requested the presence of leadership counsel and counsel for 3M so they could address issues

concerning the settlement program. During March 13, 2024, hearing, counsel were afforded the opportunity to answer questions and provide remarks regarding the challenges of the MDL, the benefits of the settlement, and the litigation obligations moving forward. *See id*. As Judge Rodgers correctly concluded, neither the hearing itself nor any statements made during that proceeding provide a basis for recusal. *See id*.; *see also* 28 U.S.C. § 455(a).

As such, Canup has fails to establish a likelihood of success on the merits of Canup's Writ based on 28 U.S.C. § 455(a). Therefore, Canup's Motion to Stay must be denied.

### B.  Canup Will Not Be Irreparably Harmed if a Stay is Not Entered.

The second requirement Canup must establish is whether the applicant will be irreparably injured absent entry of a stay. *Nken*, 556 U.S. at 426. This Court has defined when injury as "irreparable," as described below:

> An injury is 'irreparable' only if it cannot be undone through monetary remedies. 'The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974)).

The mere possibility that a litigant might have to re-litigate a case is not a sufficiently compelling interest to warrant immediate review. *See Maloney v. Plunkett,* 854 F.2d 152, 154–55 (7th Cir.1988) ("[O]rdinarily the inconvenience, lost time, and sunk costs of such further proceedings as could have been avoided by correcting the trial judge's error are not considered the kind of irremediable harm that will satisfy the stringent requirements for issuing a writ of mandamus."); *see, e.g.*, *Allied Chemical Corp. v. Daiflon,* 449 U.S. 33, 36 (1980).

Here, Canup argues that his alleged irreparable harm is not merely the burden of litigation, but rather "the continuation of proceedings under circumstances where Canup contends that the presiding judge's impartiality may be reasonably questioned and where the scope and legal effect Defendants attribute to the judge's request bear directly on their merits defenses." *See* Canup's Mot. for Stay at 12. Based on that premise, Canup contends that the public will suffer irreparable harm of the type that 28 U.S.C. § 455 was enacted to prevent. *Id.* at 13. However, Judge Rodgers' involvement in the underlying litigation does not, by itself, create an appearance of bias, favoritism, or antagonism. *See Murray*, 253 F.3d at 1313 (stating that recusal is not warranted for "imaginary reasons."). Rather, Canup's argument rests on speculation that Judge Rodgers' prior involvement could influence her rulings in this matter. *See id*. Yet speculation is insufficient to establish either actual bias or the

appearance of impropriety, and as mentioned above, Canup is not likely to succeed on the merits of that argument. *See id*.

Moreover, even considering Canup's ancillary arguments, the circumstances do not support the finding of irreparable harm. If this Honorable Court ultimately determines that recusal is warranted, any potential harm can be addressed through appropriate judicial remedies. *Sampson*, 415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974) (stating that the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.). Specifically, if this Court later grants the requested Writ, the parties may be required to revisit issues previously decided. That possibility, however, does not constitute irreparable harm because it is capable of being remedied through the ordinary judicial process. Accordingly, there is no showing of irreparable harm, nor any demonstrated appearance of impropriety.

Here, the key word in this consideration is **<u>irreparable</u>**. *See id*. Canup has not established that, absent a stay, he will suffer irreparable harm. Thus, because any alleged harm is remediable through available legal processes, the irreparable-harm requirement has not been satisfied. Moreover, as the first two factors are the most critical, the Court may stop here and deny Canup's requested stay

### C. <u>A Stay of the District Court's Proceedings Will Injure All Parties Interested in the Proceedings.</u>

The third factor in the "stay" analysis examines whether granting a stay would substantially injure the other parties interested in the proceeding. *Nken*, 556 U.S. at 426. Courts have consistently recognized that a non-moving party may suffer prejudice where a stay is reasonably likely to result in a significant delay of the underlying litigation. *See Sehler v. Prospet Motrg., LLC*, 2013 WL 5184216, at *3 (finding that a projected four-to-six-month delay constituted a significant and prejudicial delay to the non-moving party); *see also Fisher v. United States*, No. 3:13-MC-08, 2013 WL 6074076, at *5 (E.D. Va. Nov. 18, 2013) (denying a motion to stay where the court could not determine the length of the delay and could not exclude the possibility of a substantial postponement).

Canup argues that a stay would merely "preserve the status quo" and would not "deprive Respondents of any defense, prevent Respondents from pursuing their pending motion once the stay is lifted, or alter any party's substantive rights." *See* Canup's Mot. for Stay at 15–16. That contention is wrong. Granting a stay would halt the underlying litigation for an indefinite period without any certainty as to when the stay would be lifted. As a result, pending dispositive motions that could potentially resolve the case in its entirety would remain unresolved until after an unknown delay. See *Phoenix Global Ventures, LLC v. Phoenix Hotel Associates, Ltd.*, 2004 WL 2734562, at *3 (S.D.N.Y. Nov. 29, 2004) ("Granting removing defendants a stay based solely on the possibility that the [appellate court] might

-19-

decide the appeal quickly would remove the heavy burden placed on the moving party in justifying a stay by eliminating the rigor of the four-factor analysis." (internal citations omitted)).

A stay would **<u>not</u>** preserve the status quo. This case has not progressed beyond the pleading stage into discovery; rather, the threshold issue remains whether Canup has asserted a legally viable claim at all. Delaying resolution of that issue would substantially prejudice Respondents by preventing them from obtaining a timely ruling on their pending motions and by prolonging litigation that may ultimately prove meritless.

Despite Canup's assertion that Respondents would suffer no injury, the opposite is true. An indefinite stay would impose significant prejudice upon Respondents by forcing them to remain subject to unresolved allegations while awaiting a ruling on the petition for writ over an unknown period of time. Such prejudice is particularly acute where Respondents are attorneys whose professional reputations are necessarily subject to public scrutiny. Rather than preserving the status quo, a stay would prolong uncertainty, delay the adjudication of potentially dispositive issues, and unfairly burden Respondents while the litigation remains in limbo. Accordingly, Canup has failed to meet the third element of a stay.

### D. <u>Canup Has Not Established that Public Interest Weighs in Favor of a Stay.</u>

The final element required for a stay is whether the public interest weighs in favor of granting such relief. *Nken*, 556 U.S. at 426; *see also Hand*, 888 F.3d at 1207. Canup contends there is a strong public interest in ensuring that judicial proceedings are conducted before a judge whose impartiality cannot reasonably be questioned. Canup's Mot. at 17. In support of this position, Canup argues that the public interest underlying 28 U.S.C. § 455 is to preserve public confidence in the judiciary and to avoid the possibility that proceedings may need to be revisited if recusal relief is ultimately granted. *Id.* at 18. However, the mere filing of a motion for recusal, and a subsequent petition for writ of mandamus seeking said recusal does not establish that the public interest favors a stay. Accepting Canup's position would effectively mean that every mandamus petition premised on judicial recusal would warrant an automatic stay based solely on the asserted interest in ensuring that proceedings are conducted before an impartial judge. *See id*. at 17. Such a rule would be unsupported and would invite routine delays whenever a party challenges a judge's continued participation in a case.

Moreover, Canup's related reliance on judicial economy is similarly unpersuasive. Under Canup's reasoning, any appeal or extraordinary writ filed during active litigation would justify a stay to avoid the possibility of additional expenditures of time and resources. Again, this would mean that any writ would be require an automatic stay of district court proceedings. Judicial economy, however,

must be balanced against the need for the orderly and efficient progression of litigation. Accordingly, Canup has failed to satisfy the fourth factor necessary to warrant a stay of proceedings pending appeal. Because Canup has not demonstrated that the public interest weighs in favor of a stay, the Motion to Stay should be denied.

## IV.    CONCLUSION

Simply put, Canup has failed to satisfy any of the elements required to justify a stay. *Nken*, 556 U.S. at 426; *Hand*, 888 F.3d at 1207. Accordingly, a stay is not warranted in this case and should be denied for the reasons set forth above.

WHEREFORE, Respondents, GREGORY BROWN, CLIFF ROBERTS, and FLEMING NOLEN & JEZ LLP, respectfully request this Honorable Court enter an Ordering denying Petitioner's, BRANDON CANUP, Motion to Stay District Court Proceedings Pending Mandamus Proceeding ("Motion to Stay") [DE 7] as well as any other relief deems just and appropriate in light of the foregoing.

[CERTIFICATES ON THE FOLLOWING PAGE(S)]

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document is compliant with the type-volume limit of Fed R. App. P. 27(d) because, excluding the parts of the document exempted by Fed R. App. P. 32(f), this document contains four thousand seven hundred and ninety-four (4,794) out of the five thousand and two hundred 5,200 words permitted. This document also complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. (32(a)(6) because this document has been prepared in a Microsoft Word version 2606 in type style Time New Roman, font size 14.

Dated: July 6, 2026

COLE, SCOTT & KISSANE, P.A.
Appellate Counsel for *GREGORY BROWN CLIFF ROBERTS*, and *FLEMING NOLEN & JEZ LLP*
600 N. Pine Island Rd., Suite 500
Plantation, Florida 3334
Telephone (954) 703-3702
Facsimile (954) 703-3701
Primary e-mail:
michael.rosenberg@csklegal.com

By:  *s/ Michael A. Rosenberg*
MICHAEL A. ROSENBERG
Florida Bar No. 95721

[CERTIFICATE OF SERVICE ON THE FOLLOWING PAGE]

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of July 2026, in compliance with Rule 25

of the Fed. R. App. P., a copy of the foregoing is being served upon all counsel of

record by through the Court's electronic-filing system.

COLE, SCOTT & KISSANE, P.A.
Appellate Counsel for *GREGORY BROWN CLIFF ROBERTS*, and *FLEMING NOLEN & JEZ LLP*
600 N. Pine Island Rd., Suite 500
Plantation, Florida 3334
Telephone (954) 703-3702
Facsimile (954) 703-3701
Primary e-mail:
michael.rosenberg@csklegal.com


By:  *s/ Michael A. Rosenberg*
     MICHAEL A. ROSENBERG
     Florida Bar No. 95721

# EXHIBIT "1"

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**BRANDON CANUP,**

     **Plaintiff,**

**v.**                          **CASE NO. 3:26cv3359-MCR-ZCB**

**BRYAN F AYLSTOCK, et al.,**

     **Defendants.**

_____/

**<u>ORDER</u>**

Plaintiff Brandon Canup has filed a Motion for Recusal and Disqualification pursuant to 28 U.S.C. § 455(a), (b)(1), ECF No. 37, which Defendants oppose, ECF Nos. 51, 52. Having fully reviewed the arguments, I find no grounds to justify recusal.

By way of background, Canup filed a products liability action against the 3M Company that was part of a multidistrict litigation ("MDL") proceeding consolidated in this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to 28 U.S.C. § 1407. *See In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.). This was by far the largest MDL in the federal judiciary's history. Weighing in at 400,000 plaintiffs represented by some 500 different law firms, this behemoth comprised one-third of the judiciary's entire civil docket for more than two years.

At the outset of the litigation, I appointed leadership counsel for the universe of plaintiffs, to shepherd all cases through the coordinated MDL proceedings. Leadership counsel expended enormous resources and extraordinary efforts on behalf of all plaintiffs, including conducting extremely complex discovery involving not only the defendants but also the Department of Defense, the Department of Justice, and the Veterans Administration; retaining and deposing dozens of experts on topics ranging from the science of hearing and sound to the design and testing of hearing devices to military rules and regulations to military weaponry and ballistics, and beyond; engaging in complex motion practice; successfully fighting a bankruptcy along the way; and trying 16 bellwether cases in a period of 14 months. These efforts were conducted on behalf of all plaintiffs and all plaintiffs benefited when leadership successfully negotiated a $6 billion global settlement. Shortly after the settlement was reached, I held a hearing to outline the settlement terms and thank everyone involved for their outstanding service in the litigation—plaintiffs' leadership counsel, defense counsel, my staff, clerk's office staff, and others. *In re 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885-MCR-HTC, Master Docket, ECF No. 3862 (Transcript) (N.D. Fla. Sept. 8, 2023).

Defendant Gregory Brown of Fleming Nolen & Jez LLP ("FNJ") represented Canup in his member case until the global settlement was reached and Canup elected

CASE NO: 3:26cv3359-MCR-ZCB

not to participate in the settlement benefits program, at which time Brown withdrew.

After opting out of the global settlement, Canup retained new counsel, David

Gamble.  I required every opt-out plaintiff to attend an in-person hearing before

continuing to litigate their individual case, at which I discussed the settlement

program and its benefits as well as the risks of going forward individually, provided

a final opportunity for the plaintiff to participate in the settlement program, and

verified that the plaintiff was fully informed before proceeding further.  Canup was

no exception.  He and Gamble attended such a hearing on March 13, 2024.  Also in

attendance were counsel for 3M and three court-appointed MDL plaintiffs'

leadership attorneys, namely Defendants Bryan Aylstock and Bobby Bradford of

Aylstock Witkin Kreis & Overholtz PLLC (the "Aylstock Defendants") and Michael

Burns of Mostyn Law.

At Canup's hearing, as was my practice, I discussed the settlement program,

all the benefits that had been conferred on all plaintiffs by leadership, as well as the

risks of litigating an individual claim on remand.  Leadership counsel were present

to offer details about the settlement program and answer questions.  I made certain

that Canup was fully informed, and I made clear that whether he chose to participate

or opt out of the settlement was his decision.  Canup was then given one final

opportunity to participate in the global settlement, which he declined, as was his

CASE NO: 3:26cv3359-MCR-ZCB

right to do.  Still, with the assistance of his new attorney, Gamble, he then satisfied the MDL requirements to proceed with his individual opt-out case.  He later attended court-assisted mediation with his counsel, through which he negotiated his own settlement with 3M outside of the settlement program.

Canup then filed the instant *pro se* suit in Texas state court against his original MDL attorneys and the MDL leadership counsel who attended the March 13, 2024 hearing, alleging claims of professional negligence, fraud, breach of fiduciary duty, and civil conspiracy arising out of their conduct in the MDL.  Brown removed the case to federal court, and the Aylstock Defendants filed a motion with the JPML, requesting that the case be transferred to this Court as a tag-along case in the MDL.[1] After an opportunity for briefing, the JPML granted the request and transferred the case to this Court on April 2, 2026.  The JPML concluded that Canup's case involves common questions of fact with the MDL, that this Court (the transferee court) retained jurisdiction over miscellaneous issues necessary to complete the administration of the MDL cases, and that Canup's claims against his counsel arise

---

[1] After the global settlement was reached, the undersigned retained jurisdiction over the settlement administration, enforcement of orders, and all miscellaneous issues related to the MDL.  The JPML has since reopened the MDL on the transfer of additional actions.

CASE NO: 3:26cv3359-MCR-ZCB

out of the settlement program and related orders regarding case management, common benefit, and the appointment of leadership counsel in the MDL.

Canup seeks my disqualification under 28 U.S.C. § 455(a) and (b)(1). Under § 455(a), a judge must recuse herself from any proceeding in which her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Determining whether there is an appearance of impropriety involves consideration of "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotations omitted) (noting also that any doubts should be resolved in favor of recusal). Recusal is mandatory under subsection (b) if the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Canup argues that bias, an appearance of impropriety, and extra-judicial communications/knowledge require my disqualification. I disagree. He points first to the fact that leadership counsel were present at a hearing held on March 13, 2024, and suggests impropriety because the request for leadership to attend does not appear

CASE NO: 3:26cv3359-MCR-ZCB

on the public docket in advance of the hearing.[2]  Canup also suggests that the reason leadership was present and whether the undersigned requested their presence is a disputed fact in this litigation.  Neither assertion is correct.  The record clearly reflects that all 160 opt-out plaintiffs were required to attend a hearing, and that at each hearing held, I requested leadership counsel to be present, along with 3M's counsel, for the individual plaintiff's (in this case Canup's) benefit—so that the individual plaintiff could hear the pros and cons of settling or continuing to litigate and ask any questions before making a final decision on whether to participate in the settlement program.  This purpose was outlined in the order setting each hearing, including Canup's.[3]  And, as shown in the hearing transcript from Canup's March 13, 2024 hearing, I explained on the record that I felt it would be important to afford him one final opportunity to participate in the settlement, to ask me any questions, and also to have leadership counsel from both sides present to answer questions.

---

[2] Canup's argument is grounded in statements within the affidavit of Defendant Bryan Aylstock, submitted with a now-moot motion to dismiss, stating that Aylstock and Bradford attended a hearing on March 13, 2024, on behalf of leadership, as "requested by Judge Rodgers," and that Bradford communicated with Canup's counsel, Gamble, in advance of the hearing on behalf of leadership and "at the MDL Court's request."  ECF No. 27–1 (Aylstock Affidavit).

[3] While the order setting the March 13, 2024 hearing did not expressly state that leadership counsel must be present, it did require Canup and his attorney to appear and be prepared to discuss not only his continued obligations for litigating a claim but also the benefits of participating in the settlement program.  Member Case No. 8:20cv14021-MCR-HTC, ECF No. 6 (Order, Feb. 5, 2024).

CASE NO: 3:26cv3359-MCR-ZCB

Member Case No. 8:20cv14021-MCR-HTC, ECF No. 59 at 4.  At the hearing, plaintiffs' leadership counsel and 3M's counsel were invited to make remarks about the challenges of the MDL, the benefits of the settlement, and the litigation obligations and obstacles going forward.  Nothing about this is in dispute or suggests any personal bias, extra-judicial knowledge, or a basis on which a fully informed observer would question my impartiality in the instant case.  *See* 28 U.S.C. § 455(a), (b)(1).  While judges should err on the side of recusal if potential conflicts exist, recusal is not warranted for "imaginary reasons."  *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001).

Canup also argues that I made prior statements to all plaintiffs, including him, about the adequacy of representation provided by leadership counsel that a neutral observer would see as reflecting a prejudgment of issues in dispute in this case.  Again, I disagree.  The record reflects that after the global settlement was reached, I made general comments on the record commending the professionalism and efforts of the MDL leadership on both sides and thanking them for their hard work that ultimately resolved the MDL in a global settlement.  I also assured all plaintiffs that they had been well represented by leadership counsel, who had vigorously pursued

CASE NO: 3:26cv3359-MCR-ZCB

a fair resolution for plaintiffs as a whole.[4]  Contrary to Canup's suggestion, these were general comments about how leadership on both sides of the aisle conducted the MDL and the settlement negotiations and could not be viewed as favoritism or as a comment on the performance of every retained attorney.

As the Supreme Court has stated, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (discussing § 455(a) and (b)(1)).  My prior comments do not display the type of deep-seated favoritism that "would make fair judgment impossible," *id*., or that could raise a "significant doubt" about my impartiality, *Patti*, 337 F.3d at 1321.  And I have no bias or personal knowledge of any disputed facts in this case—the only facts within my knowledge are those learned through the course of the MDL, which is not a basis for bias or recusal.

---

[4] I stated that "in my view, the leadership teams on both sides really do exemplify the very best of the legal profession" and that the 250,000 plaintiffs were "represented very well." *In re 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885-MCR-HTC, ECF No. 3862 at 13 (Hearing Tr. Sept. 8, 2023).  Over fifty attorneys participated in plaintiff leadership roles. Again, at its height, the MDL involved 500 law firms with over 400,000 plaintiffs.

CASE NO: 3:26cv3359-MCR-ZCB

Canup's final argument is that because I recused myself in another "materially similar" case, this bolsters his argument for recusal here. But the case Canup references, *Kelly v. Aylstock*, Case No. 3:25cv1947-TKW-ZCB (N.D. Fla.), is not "materially similar." Kelly's suit alleges professional negligence by Bryan Aylstock in his capacity as Kelly's retained attorney in the MDL. This is a material difference from the instant case. Not one of the leadership attorneys Canup sues in this suit was retained to represent him in the MDL. Moreover, in *Kelly*, when Aylstock (his retained attorney) moved to withdraw, Kelly objected, and I held an *ex parte* hearing. *See Kelly v. 3M,* Member Case No. 7:20-cv-36595-MCR-GRJ, ECF No. 15 (N.D. Fla. Mar. 13, 2024). In the subsequent order granting the motion to withdraw, which is filed under seal, I explained the basis for withdrawal (a fundamental disagreement with counsel) and made comments directly about Aylstock's handling of Kelly's case. Because my remarks commenting on the quality of representation by Kelly's retained counsel could have been viewed as prejudgment of an issue that would be presented in Kelly's professional negligence case, I recused. By contrast, my comments on the record commending the efforts and professionalism of leadership counsel as a whole during the MDL are entirely different and do not reflect any prejudgment on my part about leadership counsel's conduct toward any particular litigant who might have retained them. I recused myself in *Kelly* not out of any

CASE NO: 3:26cv3359-MCR-ZCB

personal bias or extra-judicial knowledge of facts but because leadership counsel

served also as Kelly's retained counsel and, most importantly, I had commented

directly on the quality of that representation.  That simply is not the case here.

Accordingly, Canup's Motion for Recusal and Disqualification, ECF No. 37,

is **DENIED**.

**DONE AND ORDERED** this 17th day of May 2026.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO: 3:26cv3359-MCR-ZCB

# EXHIBIT "2"

CERTIFIED A TRUE COPY
Jessica J. Lyublanovits, Clerk of Court

BY: _____
Deputy Clerk

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: 3M COMBAT ARMS EARPLUG
PRODUCTS LIABILITY LITIGATION                    MDL No. 2885

## TRANSFER ORDER

**Before the Panel:**[*]  Defendant Bryan F. Aylstock moves under 28 U.S.C. § 1407(c) to transfer an action pending in the Northern District of Texas and listed on Schedule A to the Northern District of Florida for inclusion in MDL No. 2885. Plaintiff Brandon Canup opposes the motion.

After considering the argument of counsel, we find that this action, though not typical of most MDL No. 2885 actions, involves common questions of fact with the actions transferred to MDL No. 2885. Transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We centralized actions in MDL No. 2885 arising out of allegations that defendants' Combat Arms earplugs were defective, causing plaintiffs to develop hearing loss and/or tinnitus. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d 1368 (J.P.M.L. 2019). Previously, plaintiff alleged he suffered injuries arising from the use of Combat Arms earplugs, filed suit against 3M Company and related entities directly in MDL No. 2885, and settled his claims. In the *Canup* complaint before the Panel, plaintiff brings claims against his former counsel in the MDL, who withdrew from representation;[1] and MDL No. 2885 court-appointed leadership counsel, including defendant Aylstock.[2] He alleges, *inter alia*, that (1) the leadership counsel defendants appeared at a March 2024 status conference on his behalf without his knowledge, reviewed his confidential medical records, gave him individual legal advice in a closed-door settlement conference, and pressured him to participate in the settlement; (2) the leadership counsel defendants denied him access to common benefit work product without his counsel signing a common benefit work participation agreement; and (3) all defendants conspired "to protect their financial interest at Canup's expense," by assuming "complementary roles under the framework of the [MDL No. 2885 global settlement] which tied their compensation to Plaintiff participation thresholds and withdrawal requirements." *Canup* Compl. at ¶¶ 6.57-6.60.

---

[*]   Judge David C. Norton took no part in the decision of this matter.

[1]   Fleming Nolen & Jez LLP; Gregory D. Brown; and Cliff Roberts.

[2]   Mr. Aylstock; Aystlock Witkin Kreis Overholtz PLC; Mostyn Law Firm PC; and Michael Burns (leadership counsel defendants).

FILED USDC FLND PN
APR 2 '26 PM3:21


- 2 -

In opposing transfer, plaintiff argues that his claims do not involve factual issues common with those in MDL No. 2885. We disagree. We have found that "[a]ctions involving matters relating to a settlement reached in an MDL are appropriate for transfer to that MDL under 28 U.S.C. § 1407." *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, Transfer Order, MDL No. 2187 (J.P.M.L. Oct. 4, 2017), ECF No. 2315, at 1. *See also In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003) ("It is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407.") (*citing In re Patenaude*, 210 F.3d 135, 142–144 (3d Cir. 2000)). Here, plaintiff alleges misconduct on the part of, not only his attorneys in his MDL case, but also leadership counsel in the MDL, largely based upon conduct they argue was undertaken in their capacity as court-appointed leadership counsel.[3] Plaintiff challenges the transferee court's orders regarding the settlement and the MDL's case management, including orders regarding common benefit work and appointment of leadership counsel. Transfer, therefore, is appropriate.

Plaintiff further argues that his is a standalone case without opportunity for coordination. While the Panel's docket has been closed for several months, the MDL No. 2885 docket in the Northern District of Florida has remained open and active. In suggesting the Panel close its docket, the transferee judge recommended the termination be subject to the transferee court's "continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration of these cases." Order, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885 (N.D. Fla. Sept. 19, 2025), ECF No. 4171, at p. 1. Moreover, in consultation with the transferee judge, we recently reopened the Panel's docket to transfer a related case to the MDL.

Plaintiff also argues that transfer would be inconvenient to the *Canup* parties and witnesses. But the Panel repeatedly has held that, while it might inconvenience some parties, transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole. *See, e.g., In re IntraMTA Switched Access Charges Litig.*, 67 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014).

We decline plaintiff's request to defer our ruling pending a decision on his motion to remand to state court or defendants' motions to dismiss. The pendency of motions to dismiss and jurisdictional motions are not an impediment to Section 1407 transfer.[4] *See, e.g., In re Ford PowerShift Transmission Prods. Liab. Litig.*, 289 F. Supp. 3d 1350, 1352 (J.P.M.L. 2018); *In re Procter & Gamble Co. "Protect, Grow and Restore" Mktg. & Sales Pracs. Litig.*, 796 F. Supp. 3d 1373, 1374 (J.P.M.L. 2025). The parties can present these motions to the transferee judge.

---

[3]    Plaintiff argues that whether the leadership counsel defendants were acting at the direction of the court is a merits issue that should not be decided by the Panel. We do not decide this issue, but we recognize that there is no better court to determine whether defendants acted at the transferee court's direction than the transferee court itself.

[4]    Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion or motion to dismiss is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on the motion if it chooses to do so.

- 3 -

IT IS THEREFORE ORDERED that the action listed on Schedule A is transferred to the Northern District of Florida and, with the consent of that court, assigned to the Honorable M. Casey Rodgers for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Nathaniel M. Gorton          Matthew F. Kennelly
Roger T. Benitez             Dale A. Kimball
Madeline Cox Arleo

**IN RE: 3M COMBAT ARMS EARPLUG
PRODUCTS LIABILITY LITIGATION**                         MDL No. 2885

## SCHEDULE A

<u>Northern District of Texas</u>

CANUP v. AYLSTOCK, ET AL., C.A. No. 4:25-01255